### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------------------X
GOVERNMENT EMPLOYEES                    :
INSURANCE COMPANY                       :
5260 Western Avenue                     :
Chevy Chase Maryland 20815,             :
                                        :
         Plaintiff,                     :
                                        :
         - against -                    :        Civil Action No. _____
                                        :
FRANCISCO RIVAS                         :
HILDA RIVAS,                            :
                                        :
         Defendants.                    :
-----------------------------------------------------------X
```

### COMPLAINT

Government Employees Insurance Company ("GEICO") alleges for its complaint against Francisco Rivas and Hilda Rivas (collectively, the "Rivases"), as follows:

### INTRODUCTION

1.    This lawsuit involves a dispute arising out of an automobile accident on July 27, 1987.

2.    As described below, the Athridges have filed several lawsuits resulting from the automobile accident, some of which are still being litigated.  GEICO has defended the Rivases in these lawsuits and has satisfied all of its obligations under the GEICO Policy with respect to those lawsuits.

3.    An actual controversy exists between GEICO and the Rivases concerning whether GEICO has fulfilled its obligations and the extent of available insurance coverage for the underlying litigation.

1

## PARTIES

4.    GEICO is a corporation incorporated under Maryland law with its principal place of business in Maryland.

5.    The Rivases are citizens of the District of Columbia.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## BACKGROUND

8.    While out of the country in July 1987, the Rivases had asked Jorge Iglesias ("Jorge"), the son of Hilda Rivas' cousin, to check their house and mow the lawn while they were away.

9.    On July 27, 1987, while visiting to mow the lawn, Jorge impulsively decided to take the Rivases' automobile, a Volkswagen Jetta, for a joyride.

10.    While driving the automobile, Jorge injured Thomas P. Athridge, Jr. ("Tommy").

## GEICO'S INSURANCE POLICY

11.    GEICO issued policy number 65485241 to Francisco Rivas for automobile coverage that was in effect from November 25, 1986 to November 25, 1987 (the "GEICO Policy").  A copy of forms A-50 (M-84), A-54-DC (2-86), A-395 (2-86), and A-452 (2-86) NS that are a part of the GEICO Policy are attached as Exhibit A.

12.    As relevant here, the limits of coverage under the GEICO Policy are $100,000 per person for bodily injury liability.

13.    The GEICO Policy contains the following provisions, among others:

**LOSSES WE WILL PAY FOR YOU**

Under Section I, we will pay damages which an insured becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and

2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**

\*          \*          \*

3. All interest accruing after entry of a judgment until we have paid, tendered or deposited in court that part of the judgment not exceeding the limit of our liability.

\*          \*          \*

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES**

The following conditions apply to Section I;

\*          \*          \*

3.    ASSISTANCE AND COOPERATION OF THE INSURED

The insured will cooperate and assist us, if requested:

(a) in the investigation of the occurrence;

(b) in making settlements;

(c) in the conduct of suits;

\*          \*          \*

(e) at trials and hearings;

(f)  in securing and giving evidence;

\*       \*       \*

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

\*       \*       \*

**SECTION V**
**General Conditions**

\*       \*       \*

4.      ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent.  \* \* \*

## UNDERLYING LITIGATION

14.      As described below, Tommy and his father, Thomas P. Athridge, collectively, "the Athridges," pursued claims related to the accident in various lawsuits against Jorge, Jorge's parents, the Rivases, the Restaurant, and Aetna Casualty and Surety Company ("Aetna"), which had issued an insurance policy to Jorge's father for automobile coverage.

15.      On May 4, 1989, the Athridges filed a suit in the United States District Court for the District of Columbia (the "District Court") naming as defendants Jorge, Francisco Rivas, and the Restaurant.  Subsequently, the Athridges filed complaints in the District Court naming as defendants Aetna, Hilda Rivas, and Jorge's parents.  All of these lawsuits were ultimately consolidated.

16.      While the underlying litigation was pending, GEICO filed a complaint in the District of Columbia Superior Court (the "Superior Court") naming as defendants Francisco Rivas, the Restaurant, and Jorge.  In its suit, GEICO sought a declaratory judgment that Jorge's use of the Jetta was without the owner's permission, and therefore, GEICO was not liable for any underlying judgment.

17.    GEICO eventually filed a motion for summary judgment on the issue of non-coverage of Jorge, which the District Court granted on June 6, 1990.

18.    The underlying litigation continued and, eventually, the District Court granted summary judgment in favor of all defendants, except for Jorge.

19.    On November 8, 1996, after a bench trial, the District Court found Jorge liable for negligence and awarded the Athridges $5,510,010.78. Jorge then declared bankruptcy.

20.    After the November 8, 1996 ruling, the Athridges appealed the District Court's grant of summary judgment for the Rivases, Jorge's parents, and Aetna.

21.    The United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") affirmed summary judgment in favor of Jorge's parents and Aetna. However, the D.C. Circuit reversed the grant of summary judgment for the Rivases and remanded the case so the Athridges could pursue their claims.

22.    After the remand, the Rivases filed a motion for summary judgment, which the District Court granted.

23.    On appeal, the D.C. Circuit reversed and remanded the case because of a genuine issue of material fact. It held that the District Court was obliged to submit the case to a jury because the evidence was insufficient to justify a judgment as a matter of law for either side.

24.    The case was then tried to a jury on the issue of liability. The parties stipulated that, if found liable, the Rivases would be bound by the November 8, 1996 decision establishing damages at $5,510,010.78 (the "Underlying Judgment"). On January 12, 2005, the jury returned a verdict against the Rivases.

25.    After the District Court denied certain post-trial motions, the Rivases' appealed.

26.    The appeal was based on numerous reasons why the trial court's decision should be reversed.  Regarding the claim based on the District of Columbia Motor Vehicle Safety Responsibility Act, the Rivases argued that the statutory presumption of consent was fully rebutted with uncontradicted evidence.  With respect to the negligence claim, the Rivases contended that the Athridges failed to prove that they were negligent or that the alleged negligence proximately caused Tommy's injuries.

27.    The appellate oral argument took place on May 11, 2007.

## UNDERLYING SETTLEMENT

28.    On August 16, 2007, while the appeal was pending, the Rivases' counsel informed GEICO that the Rivases and the Athridges were attempting to finalize a settlement and that the Rivases intend to file suit against GEICO.

29.    On August 28, 2007, the Rivases' counsel forwarded a copy of "the current draft of a potential settlement agreement between" the Rivases and the Athridges.

30.    On September 7, 2007, the Rivases and the Athridges filed a joint motion to voluntarily dismiss the appeal.  That D.C. Circuit granted the motion on September 24, 2007.

31.    GEICO did not approve of the Rivases dismissing the appeal, which prevents the D.C. Circuit from addressing the numerous persuasive reasons advanced by the Rivases why the trial court's decision should be reversed.

32.    To date, GEICO has not been provided a copy of the settlement agreement between the Rivases and the Athridges.

## GEICO'S ACTIONS

33.     From the outset, GEICO has provided a full defense to the Rivases in the underlying lawsuits brought by the Athridges, including appeals at the D.C. Circuit.  In so doing, GEICO has paid hundreds of thousands of dollars in defense costs.

34.     Throughout the underlying litigation, GEICO has reminded the Rivases that they only had $100,000 in policy limits, advised them of the risk of a judgment exceeding that amount, and stated that they could retain personal counsel to protect their interests.

35.     The Rivases chose to not retain personal counsel until recently.

36.     In addition, GEICO made clear on numerous occasions that its $100,000 in limits were available to settle the case against the Rivases.

37.     The Athridges never accepted GEICO's offers to settle.

38.     There was never an opportunity to settle the Athridges' claims against the Rivases within policy limits.

39.     The Athridges did not, at any time, indicate that they would settle within policy limits.

40.     The Athridges did not, at any time, offer to settle within policy limits.

41.     On numerous occasions, GEICO had asked the Rivases if they would make any contribution in settlement negotiations in addition to the $100,000 that GEICO had consistently offered.

42.     The Rivases chose to not make any contribution in settlement negotiations with GEICO and the Athridges.

43.     In fact, at a mediation on April 26, 2002, Hilda Rivas asked GEICO to not pay anything given her view that the Rivases were not liable.

44.    After the District Court denied the Rivases' post-trial motions, GEICO offered to deposit $100,000 with the court, without any conditions.  On April 7, 2006, the court rejected GEICO's request.

45.    On May 5, 2006, GEICO sent to the Athridges' counsel a check for $137,851.63, representing $100,000 based on the applicable policy limit and $37,851.63 in post-judgment interest that may have accrued.  GEICO did not place any conditions on the Athridges' ability to cash the check.

## COUNT I – DECLARATORY JUDGMENT

46.    GEICO incorporates herein the allegations contained in paragraphs 1 through 45 of this Complaint.

47.    GEICO has complied with all of its duties and obligations under GEICO's Policy.

## COUNT II – DECLARATORY JUDGMENT

48.    GEICO incorporates herein the allegations contained in paragraphs 1 through 47 of this Complaint.

49.    Coverage under GEICO's Policy is barred or limited based on the Rivases' failure to mitigate damages by choosing to voluntarily dismiss the pending appeal.

50.    Coverage under GEICO's Policy is barred or limited based on the Rivases making voluntary payments by settling for an unreasonable amount.

51.    Coverage under GEICO's Policy is barred or limited to the extent that the Rivases have not complied with the assignment provision in GEICO's Policy.

**WHEREFORE**, GEICO requests that:

1.     This Court enter judgment declaring the following:

- GEICO has complied with all of its duties and obligations under GEICO's Policy.

- Coverage under GEICO's Policy is barred or limited based on the Rivases' failure to mitigate damages by choosing to voluntarily dismiss the pending appeal.

- Coverage under GEICO's Policy is barred or limited based on the Rivases making voluntary payments by settling for an unreasonable amount.

- Coverage under GEICO's Policy is barred or limited to the extent that the Rivases have not complied with the assignment provision in GEICO's Policy.

2.     GEICO be awarded attorneys' fees and costs.

3.     GEICO be awarded such other relief as the court deems just and proper.

Date:  September 28, 2007

_Syed Ahmad_
_____
Walter J. Andrews (No. 366637)
Syed S. Ahmad (No. 493571)
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(703) 714-7400 (telephone)
(703) 918-4050 (facsimile)

*Counsel for Government Employees Insurance Company*

# EXHIBIT A

*Protecting Yourself and Your Family Begins With Understanding Your Policy...*

Dear Policyholder,

You'll find this policy contract is different from others you may have seen.

The sentences are much shorter. The language is clearer. It's printed in a larger type size. And, most important, it's easier to read and understand.

Our new policy still gives you the same combination of quality protection and country-wide service that GEICO has always provided our policyholders.

But your policy is now written and printed to help you better understand the coverages contained in this contract.

And since this is a contract, I urge you to read it all right away so you will understand all its features.

If you have to file a claim, refer to the enclosed brochure -- YOUR GUIDE TO GEICO AUTO CLAIMS SERVICE.

This handy GUIDE has step-by-step instructions on how to report a claim and a complete listing of our nationwide net-work of claims center numbers.

And remember -- GEICO is as close as the nearest phone whenever and wherever you need our help.

With best regards,

*John J. Byrne*

John J. Byrne
Chairman of the Board



# YOUR POLICY INDEX . . . . .

Page

### SECTION I
### Liability Coverages
### Your Protection Against Claims From Others

Definition of Terms............................................... 1
Losses We Will Pay For You................................ 3
Additional Payments We Will Make For You. 3
    Legal Expenses and Court Costs
    Bail and Appeal Bonds
    First Aid Expenses
Exclusions: When These Coverages
Do Not Apply.......................................................... 4
Persons Insured: Who Is Covered...................... 6
Financial Responsibility Laws............................ 7
Out of State Insurance......................................... 7
Limits of Our Liability For a Loss...................... 7
When You Have "Other Insurance" For a Loss 8
Conditions............................................................... 8
    Notice: Reporting Your Loss
        If Suit is Brought Against You
    Two or More Automobiles Insured Under
        This Policy
    Your Assistance and Cooperation
    Action Against Us
    Subrogation

### SECTION II
### Automobile Medical Payments Coverage
### Protection For You and Your Passengers for
### Medical Expenses

Definition of Terms.............................................. 10
Payments We Will Make...................................... 10
    To Whom and When This Coverage Applies
Exclusions: When This Coverage
Does Not Apply...................................................... 11
Limits of Our Liability For a Loss...................... 13
When You Have "Other Insurance"
For a Loss............................................................... 13
Conditions............................................................... 13
    Notice: Reporting Your Loss
    Two or More Automobiles Insured Under
        This Policy
    Action Against Us
    Medical Reports

A-50 (M-84)

Page

### SECTION III
### Physical Damage Coverages
### Your Protection for Loss of or Damage to
### Your Car

Definitions of Terms............................................ 14
Comprehensive Coverage.................................... 16
Collision Coverage............................................... 17
Towing and Labor Coverage.............................. 17
Additional Payments We Will Make For You .17
    Car Rental If Your Car is Stolen
Exclusions: When These Coverages
Do Not Apply.......................................................... 18
Limits of Our Liability For a Loss......................
When You Have "Other Insurance"
For a Loss............................................................... 19
Conditions............................................................... 20
    Notice: Reporting Your Loss
    Two or More Automobiles Insured Under
        This Policy
    Your Assistance and Cooperation
    Action Against Us
    Your Duties in Event of Loss
    Appraisal of Amount of Loss
    Payment of Loss
    Subrogation

### SECTION IV
### Uninsured Motorists Coverage
### Your Protection for Injuries Caused by
### Uninsured and Hit and Run Motorists

Definition of Terms..............................................
Losses We Pay....................................................... 25
Exclusions: When These Coverages
Do Not Apply.......................................................... 25
Limits of Our Liability For a Loss...................... 26
When You Have "Other Insurance"
For a Loss............................................................... 27
Arbitration: Resolving a Disagreement........... 28
Trust Agreement: Our Right of Recovery..... 29
Conditions............................................................... 29
    Notice: Reporting Your Loss
    Your Assistance and Cooperation
    Action Against Us
    Proof of Claim—Medical Reports
    Who Receives "Payments of Losses"

Page

**SECTION V**
**General Conditions**

**The Following Apply to All Coverages in
This Policy**

Policy Period—Territory: When and Where.    31
  You Have Coverage
Premium: How Adjustments Are Made.......    31
Changes to Your Policy.................................32
Assignment of Your Interest in This Policy....32
  to Others
Cancellation of the Policy: .........................    32
  By You
  By Us
  By Us Is Limited
Renewal of Your Policy...............................    33
Other Insurance.........................................    34
Dividend Provision.....................................    34
Declarations: Your Agreements....................    34
State Statutes: Conformity With
  Statutes.................................................35

We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:

**SECTION I**
**Liability Coverages**

**Your Protection Against Claims
From Others
Bodily Injury Liability
Property Damage Liability**



**DEFINITIONS:**

The words italicized in Section I of this policy are defined below. Whenever "he," "his," "him" or "himself" appears in this policy, you may read "she," "hers," or "herself."

**1.** *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

**2.** *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

**3.** *"Farm auto"* means a truck type vehicle with a load capacity of 2000 or less, not used for commercial purposes other than farming.

**4.** *"Insured"* means a person or organization described under "persons insured."

**5.** *"Non-owned auto"* means an automobile or *trailer* not owned by or furnished for the regular use of either you or a *relative*, other than a *temporary substitute auto*.

Page 1

6. *"Owned auto"* means
(a) a vehicle described in this policy for which a premium charge is shown for these coverages;
(b) a *trailer* owned by *you*;
(c) a *private passenger, farm or utility auto*, ownership of which *you* acquire during the policy period, if
(i) it replaces an owned auto as defined in (a) above; or
(ii) we insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask *us* to add it to the policy no more than 30 days later;
(d) a *temporary substitute auto.*

7. *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto.

8. *"Relative"* means a person related to *you* who resides in *your* household.

9. *"Temporary substitute auto"* means an automobile or trailer, not owned by *you*, temporarily used with the permission of owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *"Trailer"* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger, farm* or *utility auto.*

11. *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU

Under Section I, we will pay damages which an insured becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and

2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered law suit.

3. All interest accruing after entry of a judgment until we have paid, tendered or deposited in court that part of the judgment not exceeding the limit of our liability.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

Page 2                                    Page 3

**5.** Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

**6.** Costs incurred by any *insured* for first aid to others at the time of an accident involving an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

**8.** All reasonable costs, incurred by an *insured* at our request.

## EXCLUSIONS:

### When Section I Does Not Apply

We will not defend any suit for damage if one or more of the exclusions listed below applies.

**1.** *Bodily Injury* to any *insured* is not covered.

**2.** Section I does not apply to any vehicle used to carry passenger or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**3.** *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.

**4.** We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

**5.** *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

**6.** *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.

Page 4

---

*However, bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

**7.** We do not cover *bodily injury* to a fellow employee of an *insured* (other than *you*) injured in the course of his employment if the *bodily injury* arises from the use of an auto in the business of his employer.

**8.** We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.

**9.** A *non-owned auto* while maintained or used by a person while he is employed or otherwise engaged in any *auto business* is not covered.

However, coverage does apply to a *non-owned private passenger auto* used by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *insured*.

**10.** We do not cover damage to:
  (a) property owned, operated or transported by an *insured*; or
  (b) property rented to or in charge of an *insured* other than a residence or private garage.

**11.** We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

**12.** We do not cover:
  (a) the United States of America or any of its Agencies;
  (b) the District of Columbia or any of its Agencies;

Page 5

(c) any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act;

(d) any person, including *you*, if protection is afforded under the Public Law 86-654 (District of Columbia Employees Non-Liability Act).

## PERSONS INSURED
### Who Is Covered

*Section I applies to the following as insureds with regard to an owned auto:*

1. you and *your relatives*;

2. any other person using the auto with your permission. The actual use must be within the scope of that permission;

3. any other person or organization for his or its liability because of acts or omissions of an insured under 1 or 2 above.

*Section I applies to the following with regard to a non-owned auto:*

1. you and *your relatives* when using a *private passenger auto or trailer.* Such use must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an insured under 1 above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insured* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The insured agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of your state, the we agree to increase your coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

**3.** The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

However, this policy applies only as excess insurance over other valid and collectible insurance applicable to a *temporary substitute* or *non-owned auto.*

## CONDITIONS

The following conditions apply to Section I;

**1.   NOTICE**
As soon as possible after an occurrence, written notice must be given to us or our authorized agent stating:
   (a) the identity of the *insured*;
   (b) the time, place and details of the occurrence;
   (c) the names and addresses of the injured, and of any witnesses; and
   (d) the names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

**2. TWO OR MORE AUTOS**
When this policy covers two or more autos, the policy terms apply separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.   ASSISTANCE AND COOPERATION OF THE** *INSURED*
The *insured* will cooperate and assist us, if requested:
   (a) in the investigation of the occurrence;
   (b) in making settlements;
   (c) in the conduct of suits; and
   (d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage; and
   (e) at trials and hearings;
   (f) in securing and giving evidence; the and
   (g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**4.   ACTION AGAINST US**
No suit will lie against us:
   (a) unless the *insured* has fully complied with all the policy's terms and conditions, and
   (b) until the amount of the *insured's* obligation to pay has been finally determined, either
      (i) by a final judgment against the *insured* after actual trial; or
      (ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

## 5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

## SECTION II

**Auto Medical Payments Protection For *You* and *Your* Passengers or Medical Expenses**

## DEFINITIONS

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

## PAYMENTS WE WILL MAKE

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. *you* and each *relative* who sustains *bodily injury* caused by accident:
   (a) while *occupying* the *owned auto;* or
   (b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or

   (c) when struck as a pedestrian by an auto or *trailer.*

2. any other person who sustains *bodily injury* caused by accident while *occupying:*
   (a) the *owned auto* while being used by *you,* a resident of *your* household, or other persons with *your* permission; or
   (b) a *non-owned auto* if the *bodily injury* results from:
      (i) its operation or occupancy by *you* or when it is operated for *you* by your private chauffeur or domestic servant;
      (ii) or the operation or occupancy of a *private passenger auto* or *trailer* by a *relative.*

Coverage under (b) (i) and (b) (ii) above applies only when the operator or occupant of the *non-owned auto* has, or reasonably believes he has, the permission of the owner to use the auto. The use must be within the scope of that permission.

## EXCLUSIONS:

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by

    (a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or

    (b) a vehicle operated on rails or crawler-treads

4. There is no coverage for a person (other than *you* or a *relative*):

    (a) when *occupying* a *non-owned auto* used for hire; or

    (b) resulting from his maintenance or use of a *non-owned auto* when:

        (i) employed or otherwise engaged in the *auto business;* or

        (ii) when engaged in any business or occupation.

He is covered for *bodily injury* resulting from the operation or *occupancy* of a *private passenger auto* by you or by your private chauffeur or domestic servant, or of a *trailer* used with it or with a *non-owned auto.*

5. There is no coverage for persons employed in the *auto business,* if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

6. There is no coverage for *bodily injury* sustained due to *war.*

7. The United States of America or any of its Agencies are not covered as an *insured,* a third party beneficiary, or otherwise.

Page 12

## LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

## OTHER INSURANCE

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

However, this policy applies only as excess insurance over other valid and collectible medical payments insurance applicable to a *temporary substitute* or *non-owned auto.*

## CONDITIONS

The following conditions apply to this Coverage:

1. NOTICE
As soon as possible after an accident, written notice must be given us or our authorized agent stating:

    (a) the identity of the insured;

    (b) the time, place and details of the accident; and

    (c) the names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS
When this policy covers two or more autos, the policy terms apply separately to each. An auto and an attached *trailer* are considered to be one auto.

Page 13

## 3. ACTION AGAINST US

Suit will not lie against us unless the insured has fully complied with all the policy terms.

## 4. MEDICAL REPORTS—PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the insured.

## SECTION III

### Physical Damage Coverages
### Your Protection For Loss or
### Damage To Your Car

## DEFINITIONS

The definitions of the terms "auto business," "farm auto," "private passenger auto," "relative," "temporary substitute auto," "utility auto," "you," and "war," under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. "Collision" means loss caused by upset of the covered auto or its collision with another object, including an attached vehicle.

2. "Insured" means:

   (a) regarding the owned auto:

     (i) you and your relatives;

     (ii) a person or organization maintaining, using or having custody of the auto with your permission, if his use is within the scope of that permission

   (b) regarding a non-owned auto:

     you and your relatives, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

3. "Loss" means direct and accidental loss of or damage to:

   (a) the auto, including its equipment; or

   (b) other insured property.

4. "Non-owned auto" means a private passenger auto or trailer not owned by or furnished for the regular use of either you or your relatives, except a temporary substitute auto. You or your relative must be using the auto or trailer within the scope of permission given by its owner.

5. "Owned auto" means:

   (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage

   (b) a private passenger, farm or utility auto or a trailer, ownership of which is acquired by you during the policy period; if

     (i) it replaces an owned auto as described in (a) above, or

     (ii) we insure all private passenger, farm, utility autos and trailers owned by you on the date of such acquisition and you

request us to add it to the
policy within 30 days
afterward;

(c) *a temporary substitute auto.*

**6.** *"Trailer"* means a trailer designed for
use with a *private passenger auto* and not
used as a home, office, store, display or
passenger trailer.

### Comprehensive (Excluding Collision)

**1.** We will pay for *loss* caused other than
by *collision,* to the *owned* or *non-owned
auto,* less any deductible shown in the
declarations. This includes breakage of
██████ and *loss* caused by:

| | |
|---|---|
| (a) missiles; | (k) water; |
| (b) falling objects; | (l) flood; |
| (c) fire; | (m) malicious mischief; |
| (d) lightning; | (n) vandalism; |
| (e) theft; | (o) riot; |
| (f) larceny; | (p) civil commotion; or |
| (g) explosion; | |
| (h) earthquake; | (q) colliding with a bird or animal. |
| (i) windstorm; | |
| (j) hail; | |

No deductible will apply to *loss* caused by
fire, lightning, smoke, smudge, or damage
sustained while the vehicle is being
transported on any conveyance.

At the option of the *insured,* breakage of
██████ caused by *collision* may be paid
under the collision coverage, if included in
the policy.

**2.** We will pay, up to $200 per occurrence,
less any deductible shown in the
declarations, for *loss* to personal effects
due to:

(a) fire;
(b) lightning;
(c) flood;
(d) falling objects;

(e) earthquake;
(f) explosion; or
(g) theft of the entire automobile.

The property must be owned by *you* or
a *relative,* and must be in or upon an
*owned auto.*

No deductible will apply due to loss by
fire or lightning.

**3.** Losses arising out of a single
occurrence shall be subject to no more
than one deductible.

### Collision

1. We will pay for *collision* loss to the
*owned* or *non-owned auto* for the
amount of each *loss* less the
applicable deductible.

2. We will pay up to $200 per
occurrence, less the applicable
deductible, for *loss* to personal
effects due to a *collision.* The
property must be owned by *you* or
a *relative,* and must be in or upon
an *owned auto.*

3. *Losses* arising out of a single
occurrence shall be subject to no
more than one deductible.

### Towing and Labor Costs

We will pay for towing and labor costs, up
to $25.00 per *loss,* caused by the
disablement of the *owned* or *non-owned
auto* when the labor is performed at the
place of disablement.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

**1.** We will reimburse the insured for
transportation expenses incurred during
the period beginning 48 hours after a theft

Page 16                              Page 17

of the entire auto covered by comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*. Reimbursement will not exceed $15.00 per day nor $450.00 per *loss*.

2. We will pay general average and salvage charges for which the *Insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS:

### When the Physical Damage Coverages Do Not Apply

1. An auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by *collision*, are not covered.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to a device designed for the recording, and/or reproduction of sound is not covered unless it is permanently installed in the auto.

8. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

9. We do not cover *loss* to any receiving and transmitting equipment designed for use as a radar detector, citizen's band radio, two-way radio or telephone, or scanning monitor receiver, including any accessories and antennas.

10. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger, farm* or *utility autos*.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. is the actual cash value of the property at the time of the *loss*;

2. will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality;

3. to personal effects arising out of one occurrence is $200;

4. to a *trailer* not owned by *you* is $500;

5. for custom options is limited to the actual cash value of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the factory or an authorized dealer and included in the purchase price of the vehicle.

## OTHER INSURANCE

If the insured has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available. However,

Page 18

Page 19

insurance for a *temporary substitute* or *non-owned auto* will be excess over other valid and collectible insurance.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

### 1. NOTICE

As soon as possible after a *loss*, written notice must be given us or our authorized agent stating:

    (a) the identity of the *insured;*

    (b) a description of the auto or *trailer;*

    (c) the time, place and details of the *loss;* and

    (d) the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

### 2. TWO OR MORE AUTOS

When this policy covers two or more autos or *trailers*, the policy terms and any deductibles apply separately to each.

### 3. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

    (a) in the investigation of the *loss;*

    (b) in making settlements;

    (c) in the conduct of suits; and

    (d) in enforcing any right of subrogation against any legally responsible person or organization;

    (e) at trials and hearings;

    (f) in securing and giving evidence; and

    (g) by obtaining the attendance of witnesses.

### 4. ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

### 5. *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

    (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

    (b) File with us within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.

    (c) At our request, the *insured* will exhibit the damaged property and submit to examination under oath.

### 6. APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the actual cash value and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of loss. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

## 7. PAYMENT OF LOSS

We may at our option:

(a) pay for the *loss*; or

(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

## 8. NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

## 9. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

## SECTION IV
**Uninsured Motorists Coverage
Protection for You and
Your Passengers For
Injuries
Caused by Uninsured and Hit and Run
Motorists
Uninsured Motorists**

Page 22

## DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. *"Hit-and-Run Auto"* is a motor vehicle causing *bodily injury* to an *insured* through physical contact with him or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(a) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

(b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

(c) makes available for inspection, at our request, the auto occupied by the insured at the time of the accident.

2. *"Insured"* means:

(a) the individual named in the declarations and his or her spouse if a resident of the same household;

(b) *relatives* of (a) above if residents of his household;

(c) any other person while *occupying* an *insured auto;* or

(d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured*, our limits of liability will not be increased.

Page 23

3. "*Insured Auto*" is an auto:

(a) described in the declaration and covered by the bodily injury liability coverage of this policy;

(b) temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or

(c) operated by *you* or *your* spouse if a resident of the same household.

But the term "*insured auto*" does not include:

(i) an auto used to carry passengers or goods for hire except in a car pool;

(ii) an auto being used without the owner's permission; or

(iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4. "*Occupying*" means in, upon, entering into or alighting from.

5. "*State*" includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6. "*Uninsured Auto*" is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the Financial Responsibility Law of the state in which the *insured auto* is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term "*uninsured auto*" does not include:

(a) an *insured auto*;

(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a *state*, or a political sub-division of any such government or its agencies;

(d) a land motor vehicle or *trailer* operated on rails or crawler-treads or located for use as a residence or premises; or

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists Coverage we will pay damages for *bodily injury* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* or a *hit and run auto* arising out of the ownership, maintenance or use of that auto.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us. The dispute will be arbitrated if an agreement cannot be reached.

## EXCLUSIONS:

### When Section IV Does Not Apply

1. This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

Page 24

Page 25

2. *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured auto* owned by an *insured* or a *relative* is not covered.

3. The Uninsured Motorists Coverage will not benefit any workmen's compensation insurer, self insurer or disability benefits insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5. We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.

## LIMIT OF LIABILITY

Regardless of the number of autos or trailers to which this policy applies:

1. The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

The amount payable under this Coverage will be reduced by all amounts:

(a) paid by or for all persons or organizations liable for the injury;

(b) paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or

(c) paid or payable under any workmen's compensation law, disability benefits law or any similar law.

## OTHER INSURANCE

When an *insured* occupies an auto not described in this policy, this insurance is excess over any other similar insurance available to the *insured* and the insurance which applies to the occupied auto is primary.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

Page 26

Page 27

## ARBITRATION

If any *insured* making claim under this policy and we do not agree that he is legally entitled to recover damages under this coverage from the owner or operator of an *uninsured auto* because of *bodily injury* to the *insured*, or do not agree as to the amount payable, either party will have the right to demand arbitration.

Each party will, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators will select a third arbitrator.

If they are unable to do this within 30 days, the third arbitrator will be selected by a judge of a court of record in the county where the accident occurred.

The arbitrators will then hear and determine only the question or questions of legal liability and/or damages that are in dispute, and no other issues. Should a dispute arise between an *insured* and us as to whether this policy was in effect on the date of the accident, the question must be resolved in a court of law and not by arbitration.

Each party will pay his or its chosen arbitrator and will bear equally the expenses of the third arbitrator and all other expenses of the arbitration. The written decision of any two arbitrators will be binding upon the *insured* and us.

Attorneys' fees and fees paid to medical or other expert witnesses are to be paid by the party incurring them. The arbitration will be held in the county where the accident occurred and in accordance with the usual rules governing procedure and admission of evidence in courts of law.

If the parties agree, arbitration may be conducted by the American Arbitration Association.

## TRUST AGREEMENT

When we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

## CONDITIONS:

The following conditions apply only to the Uninsured Motorists Coverage:

### 1. NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

    (a) the identity of the *insured*;

    (b) the time, place and details of the accident; and

(c) the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

## 2. ASSISTANCE AND COOPERATION OF THE *INSURED*

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

## 3. ACTION AGAINST US

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

## 4. PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request,

Page 30

authorize us to obtain medical reports and copies of records.

## 5. PAYMENT OF LOSS

Any amount due is payable:

    (a) to the *insured* or his authorized representative;

    (b) if the insured is a minor to his parent or guardian; or

    (c) if the *insured* is deceased, to his surviving spouse; otherwise

    (d) to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V
### General Conditions

**These conditions apply to all Coverages in this policy.**

## 1. TERRITORY—POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and your acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

## 2. PREMIUM

When *you* dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto,* any necessary premium adjustment will be made as of the date of

Page 31

the change and in accordance with our manuals.

### 3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement or amendment issued to form a part of this policy.

### 4. ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent. If *you* die, this policy will cover:

  (a) *your* surviving spouse;

  (b) the executor or administrator of *your* estate, but only while acting within the scope of his duties;

  (c) any person having proper temporary custody of the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

  (d) under the medical payments coverage, a person who was a *relative* at the time of *your* death.

### 5. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by delivering or mailing to us a written notice stating when, after the notice, cancellation will be effective.

If *you* cancel, we compute the earned premium on the standard short rate basis.

### 6. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

  (a) 30 days in advance if the proposed cancellation is for nonpayment of premium or any of its installments when due;

  (b) 10 days in advance if the policy has been in effect less than 30 days and is not a renewal;

  (c) 30 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

When we cancel, earned premium will be computed pro-rata.

Payment or tender of unearned premium is not a condition of cancellation.

### 7. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 30 days or, if the policy is a renewal, effective immediately, we will not cancel except for any of the following reasons:

  (a) *You* do not pay the initial or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.

  (b) *Your* license was suspended during the policy period and *you* are the only listed operator on the policy.

  (c) The registration of the only auto listed on the policy was suspended during the policy period.

We have the right to modify the Comprehensive Coverage under Section III by including a deductible not exceeding $150.

If this policy is written for a period longer than one year, it may be cancelled by us for other causes effective as of any anniversary of the effective date.

### 8. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or

delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) You do not pay any premium as we require to renew this policy.

(b) You have informed us or our agent that you wish the policy to be cancelled or not renewed.

(c) You do not accept our offer to renew or you refuse to provide us with renewal classification and rating information as we may require.

## 9. OTHER INSURANCE

If other insurance is obtained on your insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

## 10. DIVIDEND PROVISION

You are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

## 11. DECLARATIONS:

By accepting this policy, you agree that:

(a) the statements in your application and in the declarations are your agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

Page 34

## 12. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of any state or the District of Columbia are amended to conform to those statutes.

Secretary                                   President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
HOME OFFICE
1020 17th Street, N.W.
Washington, D.C. 20076

Secretary                                   President

GEICO GENERAL INSURANCE COMPANY
HOME OFFICE
10th Floor Hubbell Building
Des Moines, Iowa 50309

Page 35

## AUTOMOBILE POLICY AMENDMENT

## DISTRICT OF COLUMBIA

We agree with *you* as follows:

SECTION IV in your policy is replaced by the following:

**Uninsured Motorists Coverage**

Protection For You and Your Passengers For Injuries and Property Damage

Caused By Uninsured and Hit and Run Motorists

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV; except for the following special definitions:

1.  "*Hit-and-Run Auto*" is an auto causing *bodily injury* to an *insured* or property damage, and whose operator or owner cannot be identified; provided the *insured* or someone on his behalf:

    (a)  reports the accident within 24 hours to a police, peace or judicial officer or to the Department of Transportation;

    (b)  files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

    (c)  makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

2.  "*Insured*" means:

    (a)  the person named in the declarations and his or her spouse if a resident of the same household;

    (b)  *relatives* of (a) above if residents of his household;

    (c)  any other person while *occupying* an *insured auto*;

    (d)  any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

    If there is more than one *insured*, our limits of liability will not be increased.

3.  "*Insured Auto*" is an auto:

    (a)  described in the declarations and covered by the bodily injury liability coverage of this policy;

    (b)  temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

    (c)  operated by *you* or *your* spouse if a resident of the same household.

    But the term "*insured auto*" does not include:

    (i)  an auto used to carry passengers or goods for hire except in a car pool;

    (ii)  an auto being used without the owner's permission; or

    (iii)  under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

4.  "*Occupying*" means in, upon, getting into or getting out of.

5.  "*State*" includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

6.  "*Uninsured Auto*" is an auto which has no bodily injury liability and property damage bond or insurance policy applicable to the accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

    The term "*uninsured auto*" does not include:

    (a)  an insured *auto*;

    (b)  an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

    (c)  an auto owned by the United States of America, any other national government, a *state*, or a political sub-division of any such government or its agencies;

A-54-DC (2-86)

    (d)  a land motor vehicle or *trailer* operated on rails or crawler-treads or located for use as a residence or premises; and

    (e)  a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under Section IV we will pay damages for *bodily injury* or *property damage* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured auto* or a *hit-and-run auto* arising out of the ownership, maintenance or use of that auto.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us. If both parties agree any dispute may be arbitrated.

## EXCLUSIONS:

### When this Coverage Does Not Apply

1.  This coverage does not apply to *bodily injury* or *property damage* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2.  *Bodily injury* or *property damage* sustained by any insured while *occupying* or through being struck by an *uninsured auto* owned by an *insured* or a *relative* is not covered.

3.  The Uninsured Motorists Coverage will not benefit any workmen's compensation insurer, self insurer or disability benefits insurer.

4.  We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

5.  We do not cover any person while *occupying* a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.

6.  This coverage shall not apply to any property insurer.

7.  This coverage does not apply to the first $200 of the total amount of all property damage as the result of any one accident.

8.  Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1.  The limit of bodily injury liability for Uninsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

2.  The limit of *bodily injury* liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

3.  The limit of *property damage* liability shown in the declarations as applicable to each accident, is our total limit of liability for all damages because of *property damage* to all property of one or more *insureds* as the result of any one accident. This limit is subject to the provisions of Exclusion 7.

4.  When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

The amount payable under this Coverage will be reduced by all amounts:

    (a)  paid by or for all persons or organizations liable for the injury;

    (b)  paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or

    (c)  paid or payable under any workmen's compensation law, disability benefits law or any similar law.

## OTHER INSURANCE

With respect to *bodily injury*, when an *insured* occupies an auto not described in this policy this insurance is excess over any other similar insurance available to the *insured*. The insurance which applies to the occupied auto is primary.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

With respect to property damage, *·· insurance will apply only as excess ove ··y other valid and collectible insurance of any kind applicable to the ü ...aged property.

## ARBITRATION

If any *insured* making claim under this policy and we do not agree that he is legally entitled to recover damages under this coverage from the owner or operator of an *uninsured auto* because of *bodily injury* and/or property damage to the *insured*, or do not agree as to the amount payable, either party will have the right to demand arbitration.

Arbitration may be conducted by either of the following procedures:

A.  Arbitration before the District of Columbia Board of Consumer Claims Arbitration.

A person having a claim under this coverage may ask that the claim be resolved by arbitration before the Board of Consumer Claims Arbitration for the District of Columbia. Only if the other party or parties agree, may the Board hear and decide the matter. The Board's decision shall be binding on all parties.

B.  If the parties do not agree to arbitration before the Board of Consumer Claims arbitration may be conducted as follows:

Each party will, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators will select a third arbitrator.

If they are unable to do this within 30 days, the third arbitrator will be selected by a judge of a court of record in the county where the accident occurred.

The arbitrators will then hear and determine only the question or questions of legal liability and/or damages that are in dispute, and no other issues. Should a dispute arise between an *insured* and us as to whether this policy was in effect on the date of the accident, the question must be resolved in a court of law and not by arbitration.

Each party will pay his or its chosen arbitrator and will bear equally the expenses of the third arbitrator and all other expenses of the arbitration. The written decision of any two arbitrators will be binding upon the *insured* and us.

Attorney's fees and fees paid to medical or other expert witnesses are to be paid by the party incurring them. The arbitration will be held in the county where the accident occurred and in accordance with the usual rules governing procedure and admission of evidence in courts of law.

C.  If the parties agree, arbitration may be conducted by the American Arbitration Association.

## TRUST AGREEMENT

When we make a payment under this coverage:

1.  We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury* or *property damage.*

2.  The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery. He will do nothing after the loss to prejudice these rights.

3.  At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization except that we will not ask the *insured* to act to recover payment from an *insured* of an insurer which is or becomes insolvent. The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

4.  The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

## CONDITIONS:

The following conditions apply only to the Uninsured Motorist Coverage:

1.  NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a)  the identity of the *insured;*

(b)  the time, place and details of the accident; and

(c)  the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2.  ASSISTANCE AND COOPER??? ???ION OF THE INSURED

After we receive notice of a claim., we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3.  ACTION AGAINST US

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

4.  PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**PROOF OF LOSS**

In the event of property damage loss, the *insured* shall protect the auto from further loss. Further loss due to failure to protect will not be covered. We will pay for reasonable expenses incurred for the protection of the auto.

The *insured* or other person making a property damage claim shall file a proof of loss with us as soon as practicable. The proof of loss shall be a sworn statement as to: the interest of the *insured* and anyone else in the property, any encumbrances upon the property, actual cash value at the time of the loss, amount, place, cause and time of loss and description and amounts of all other insurance covering this property. Upon our request, the *insured* will show us the damaged property.

5.  PAYMENT OF LOSS

Any amount due is payable:

(a)  to the *insured* or his authorized representative,

(b)  if the *insured* is a minor to his parent or guardian; or

(c)  if the *insured* is deceased, to his surviving spouse; otherwise

(d)  to a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

**SECTION V**

1.  CONDITION 5—Cancellation By the Insured

The last paragraph is replaced with the following:

If this policy is cancelled, you may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

2.  CONDITION 6—Cancellation By Us

The fourth paragraph is replaced with the following:

If this policy is cancelled, you may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

3.  Condition 13 is added

13. SUSPENSION OR REVOCATION

None of the coverages provided by this policy and applicable amendments apply to bodily injury or to property damage sustained as a result of the operation of a motor vehicle or vehicle by an *insured* whose license is suspended or revoked at the time of an accident resulting in such bodily injury or damage to property.

THE COMPANY affirms this amendment.

Secretary • GOVERNMENT EMPLOYEES INSURANCE COMPANY • President

Secretary • GEICO GENERAL INSURANCE COMPANY • President

AUTOMOBILE POLICY AMENDMENT

PERSONAL INJURY PROTECTION COVERAGE

DISTRICT OF COLUMBIA

Policy Number:

| DISTRICT OF COLUMBIA AMENDATORY ENDORSEMENT OPTIONS | | | |
|---|---|---|---|
| PERSONAL INJURY PROTECTION (PIP) SCHEDULE | | | |
| OPTION: | MEDICAL EXPENSE | FUNERAL EXPENSE | WORK LOSS |
| A. | $100,000 | $4,000 | $24,000 |
| B. | $100,000 | 0 | $24,000 |
| C. | $100,000 | $4,000 | $12,000 |
| D. | $100,000 | 0 | $12,000 |
| E. | $100,000 | $4,000 | 0 |
| F. | $100,000 | 0 | 0 |
| G. | $ 50,000 | $4,000 | $24,000 |
| H. | $ 50,000 | 0 | $24,000 |
| I. | $ 50,000 | $4,000 | $12,000 |
| J. | $ 50,000 | 0 | $12,000 |
| K. | $ 50,000 | $4,000 | 0 |
| L. | $ 50,000 | 0 | 0 |
| M. | 0 | $4,000 | $24,000 |
| N. | 0 | 0 | $24,000 |
| O. | 0 | $4,000 | $12,000 |
| P. | 0 | 0 | $12,000 |
| Q. | 0 | $4,000 | 0 |

A-395 (2-86)

The Definitions and General Conditions of this policy apply unless modified by this amendment.

<u>Section 1.</u>

<u>Personal Injury Protection Coverage</u>

<u>We</u> will pay Personal Injury Protection benefits in accordance with the District of Columbia Compulsory No-Fault Motor Vehicle Insurance Act of 1982, as amended (the Act). <u>We</u> will pay these benefits to or for a <u>covered person</u> who sustains <u>bodily injury</u> in an accident arising out of the maintenance or use of a <u>motor vehicle</u> or <u>vehicle.</u>

These Personal Injury Protection benefits consist of any of the following benefits for which a premium charge is shown in <u>your</u> policy declarations.

1) Medical expense benefit shown as applicable in the Declarations and Personal Injury Protection Option Schedule for reasonable charges incurred for reasonably necessary products, services and accommodations for a <u>covered person's</u>:

   a) care;

   b) recovery; or

   c) rehabilitation.

   Only semi-private hospital room charges will be paid unless special or intensive care is required.

   <u>We</u> will pay for a product, service or accommodation only if its provider is licensed or approved and complies with any applicable laws or regulations pertinent thereto.

2) Funeral expense benefits shown as applicable in the Declarations and Personal Injury Protection Option Schedule for actual costs incurred for a <u>covered person's</u> funeral or funeral-related expenses.

3) Work loss benefits shown as applicable in the Declarations and Personal Injury Protection Option Schedule. Work Loss Benefits consist of:

   a) Loss of Income. Subject to the maximum aggregate limit, 80% of the loss of gross income, for work which a <u>covered person</u> would have performed except for the <u>bodily injury.</u>

      <u>We</u> will pay a higher percentage to the extent that a <u>covered person</u> furnishes <u>us</u> with reasonable proof that his or her income tax is less than 20% of gross income.

   b) Replacement Services. Subject to the maximum aggregate limit, expenses which are reasonably incurred to obtain ordinary and necessary services to replace those the <u>covered person</u> would have performed for personal or family benefit except for the <u>bodily injury.</u> The services must be performed within 3 years after the date of the accident. The services cannot be obtained to produce income for the <u>covered person.</u>

   Work loss benefits do not continue after a <u>covered person</u> dies.

The amounts stated above are the most <u>we</u> will pay to or for a <u>covered person</u> as the result of any one accident regardless of the number of:

1) Claims made;

2) <u>Your covered autos;</u>

3) <u>Motor Vehicles</u> or <u>vehicles</u> involved in the accident; or

4) Insurers providing Personal Injury Protection benefits.

<u>Exclusions</u>

<u>We</u> will not pay Personal Injury Protection benefits for <u>bodily injury:</u>

1) Sustained by any person injured while intentionally causing or attempting to cause injury to himself, herself or any other person.

2) Sustained by a person using a <u>motor vehicle</u> or <u>vehicle</u> he or she has taken unlawfully, unless that person reasonably believed, at the time he or she first used the <u>motor vehicle</u> or <u>vehicle,</u> that he or she was entitled to take and use the <u>motor vehicle</u> or <u>vehicle.</u>

3) Sustained by the owner of a <u>motor vehicle</u> involved in the accident for which the coverage required by the Act is not in effect.

4) Sustained by a non-resident of the District while operating or <u>occupying</u> a <u>motor vehicle,</u> other than <u>your covered auto,</u> if that <u>motor vehicle</u> is not registered in the District.

5) Sustained by the owner of a <u>vehicle</u> involved in the accident if no <u>motor vehicle</u> is involved in the accident.

5) Sustained by any person injured as a result of conduct within the course of the business of repairing, servicing or otherwise maintaining <u>motor vehicles</u> or <u>vehicles.</u> This exclusion does not apply if the conduct is:

a) off the business premises; or

b) in the course of loading or unloading a <u>motor vehicle</u> or <u>vehicle.</u>

7) Sustained by any person while <u>occupying</u> a <u>motor vehicle</u> or <u>vehicle</u> located for use as a residence or premises.

8) Caused by or as a consequence of:

a) discharge of a nuclear weapon (even if accidental);
b) war (declared or undeclared);
c) civil war;
d) insurrection; or
e) rebellion or revolution.

9) From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a) nuclear reaction;
b) radiation; or
c) radioactive contamination.

## Definitions

Under this coverage:

1) "<u>you</u>" and "<u>your</u>" means the Named Insured shown in the Declarations.

2) "<u>we,</u>" "<u>us</u>" and "<u>our</u>" means the company providing this coverage.

3) "<u>bodily injury</u>" means bodily harm sustained in an accident including any illness, disease or death resulting from that bodily harm.

4) "<u>covered person</u>" means:

a) <u>you;</u> and
b) any person who is an insured under this liability insurance coverage.

5) "<u>family member</u>" means <u>your</u> spouse or any person related to <u>you</u> by blood, marriage or adoption who is a resident of <u>your</u> household. This includes any other resident of <u>your</u> household under age 18 who is in <u>your</u> custody or <u>your</u> relative's custody.

6) "<u>motor vehicle</u>" means any device propelled by:

a) an internal combustion engine;
b) electricity; or
c) steam.

However, "motor vehicle" does not mean:

a) a traction engine used exclusively for drawing vehicles in fields;
b) a road roller; or
c) a vehicle propelled only upon rails and tracks.

7) "<u>occupying</u>" means:

a) in;
b) upon;
c) getting in;
d) on;
e) out; or
f) off.

3) "<u>vehicle</u>" means:

a) a trailer as defined in the Act; or

b) an appliance moved or designed to be moved over a publicly maintained way on wheels or traction tread which is:

i) operated by power other than muscular power; or

ii) drawn by a draft animal or beast of burden.

) "<u>your covered auto</u>" means a <u>motor vehicle</u>:

a) for which <u>you</u> are required to maintain security under the Act; and
b) to which liability coverage under this policy applies.

## Coordination and Non-Duplication

1) Personal Injury Protection benefits are excess over but shall not duplicate amounts paid, payable or required to be provided under:

   a) social security (except medicaid benefits);
   b) workers' compensation;
   c) temporary nonoccupational disability insurance that is required by a state or the District of Columbia government; or
   d) any government program (except the proceeds of government life insurance).

   This does not apply if the law authorizing these benefits makes them secondary to or duplicative of the benefits provided under the Act.

2) No person may recover duplicate Personal Injury Protection benefits for the same element of loss.

3) If a covered person is entitled to Personal Injury Protection benefits under more than one policy, the maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

## Priorities of Policies

We will pay Personal Injury Protection benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The Priority order is:

| | | |
|---|---|---|
| First | — | The insurer providing benefits to the covered person as a named insured. |
| Second | — | The insurer of the motor vehicle occupied by the covered person. |
| Third | — | The insurer providing benefit to the covered person as a family member who is not a named insured under another policy providing coverage under the Act. |
| Fourth | — | If two or more policies have equal priority, the insurer against which the claim is first made shall process and pay the claim as if wholly responsible, subject to subsequent contribution pro rata. |

## Duties after an Accident or Loss

A person seeking benefits under this coverage must:

1) Notify us within 60 days of the accident of his or her election to receive benefits under this coverage. The 60 day election period may be extended upon the mutual written agreement of the covered person and us.

2) Provide us with details of how, when and where the accident happened.

3) Provide us with the names and addresses of any injured persons and of any witnesses.

4) Cooperate with us in the investigation or settlement of any claim.

5) Submit as often as we reasonably require to physical examinations by physicians we select. We will pay for these exams.

6) Authorize us to obtain:

   a) medical reports;
   b) statements of earnings; and
   c) other pertinent records.

7) Submit a written proof of claim when required by us.

8) Promptly send us copies of the legal papers if a suit is brought.

9) If we request, furnish us a sworn statement of earnings or lack of earnings:

   a) for a reasonable time prior to the accident; and

   b) since the accident.

10) If the injured person is incapacitated or unable to make the election to receive benefits under this coverage it may be made by:

   a) the next closest relative; or

   b) an individual responsible for the injured person's affairs if there is no relative.

**ARBITRATION**

A person having a claim under this coverage may ask that the claim be resolved by arbitration before the Board of Consumer Claims Arbitration for the District of Columbia. Only if the other party or parties agree may the Board hear and decide the matter. The Board's decision shall be binding on all parties.

**General Provisions**

**Policy Period and Territory**

This coverage applies only to accidents which occur during the policy period as shown in the Declarations and within the policy territory. The policy territory is the United States of America, its Territories or Possessions, or Canada.

**Legal Action Against Us**

No legal action may be brought against us until there has been full compliance with all the terms of this policy.

**Our Right to Recover Payment**

Subject to any applicable limitations stated in the Act and applicable regulation:

1)  If we make a payment under this coverage and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

    a)  whatever is necessary to enable us to exercise our rights; and

    b)  nothing after loss to prejudice them.

2)  If we make a payment under this coverage and the person to or for whom payment is made recovers damages from another, that person shall:

    a)  hold in trust for us the proceeds of the recovery; and

    b)  reimburse us to the extent of our payment.

**Assignment of Claims to Future Benefits**

A covered person may not assign his or her right to any Personal Injury Protection benefits payable in the future.

**Section 2.**
**Premium Recomputation**

Section 6 of the Act places limitations on a person's right to sue for damages. The premium for the policy reflects these limitations. If a court declares any of these limitations unenforceable we have the right to recompute the premium.

THE COMPANY affirms this amendment.

President • GOVERNMENT EMPLOYEES INSURANCE COMPANY

President • GEICO GENERAL INSURANCE COMPANY

Secretary • GOVERNMENT EMPLOYEES INSURANCE COMPANY
AND GEICO GENERAL INSURANCE COMPANY

# AUTOMOBILE POLICY AMENDMENT

## UNDERINSURED MOTORISTS COVERAGE

## DISTRICT OF COLUMBIA

Policy Number: @@@@@@@@@@@

Your policy is amended to provide Underinsured Motorists Coverage subject to the following.

## DEFINITIONS

The definitions of terms in Section I, Liability Coverages, of your policy apply to this coverage except for the following special definitions:

1. "Insured" means:

   a) you;

   b) your relatives;

   c) any other person occupying an insured auto; or

   d) any person who is entitled to recover damages because of bodily injury sustained by an insured under a), b) and c) above.

   If there is more than one insured, our limit of liability will not be increased.

2. "Insured Auto" is an auto:

   a) Described in the declarations and covered by the bodily injury liability coverage of this policy.

   b) Temporarily substituted for an insured auto when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

   c) Operated by you or your spouse if a resident of the same household.

   But the term "insured auto" does not include:

   i) An auto used to carry passengers or goods for hire except in a car pool.

   ii) An auto being used without the owner's permission.

   iii) Under subparagraphs b) and c) above, an auto owned by or furnished for the regular use of an insured.

3. "Occupying" means:

   a) in;

   b) upon;

   c) entering into; or

   d) alighting from.

4. "State" includes the District of Columbia, the territories and possessions of the United States and the Provinces of Canada.

5. Underinsured Auto means:

An auto for which the total limit of all bodily injury insurance policies or bonds applicable at the time of the accident are insufficient to pay the loss up to the limit of underinsured motor vehicle coverage provided by this policy.

The term "underinsured auto" does not include an auto:

a) Which is an insured auto;

b) Owned or operated by a self-insurer under any applicable motor vehicle law.

c) Owned or operated by:

   i) the United States of America;

   ii) any national government;

   iii) a state; or

   iv) a political sub-division of any such government and its agencies.

d) Operated on crawler treads.

e) While located for use as a residence or premises.

f) Designed for use mainly off public roads except while used on public roads.

g) To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   i) denies coverage; or

   ii) becomes insolvent.

## LOSSES WE PAY

We will also pay damages the insured is legally entitled to recover for bodily injury caused by accident and arising out of the ownership, maintenance or use of an underinsured auto. However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

The amount of the insured's recovery for these damages will be determined by agreement between the insured or his representative and us. The dispute will be arbitrated if an agreement cannot be reached.

## EXCLUSIONS:

1. This coverage does not apply to bodily injury to an insured if the insured or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. Bodily injury to an insured while occupying or through being struck by an underinsured auto owned by an insured or a relative is not covered.

A-452 (2-86) NS

3.  The Underinsured Motorists Coverage will not benefit any workmen's compensation insurer, self insurer or disability benefits insurer.

4.  We do not cover the United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.

5.  We do not cover any person while occupying a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.

6.  This coverage shall not apply to any property insurer.

7.  Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

Regardless of the number of autos or trailers to which this policy applies:

1.  The limit of liability for Underinsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to bodily injury sustained by one person as the result of one accident.

2.  The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of one accident.

3.  When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

    If separate policies with us are in effect for you or any person in your household, they may not be combined to increase the limit of our liability for a loss.

    The amount payable under this Coverage will be reduced by all amounts:

    a)  paid or payable by or for all persons or organizations liable for the injury;

    b)  paid or payable under the Bodily Injury, Medical Payments or Personal Injury Protection Coverages of this policy; or

    c)  paid or payable under any workmen's compensation law, disability benefits law or any similar law.

## OTHER INSURANCE

When and insured occupies an auto not described in this policy, this insurance is excess over any other similar insurance available to the insured. The insurance which applies to the occupied auto is primary.

Except as provided above, if the insured has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the insured has other insurance against a loss covered by the Underinsured Motorists provisions of this amendment, we will not be liable for more than our pro-rata share of the total coverage available.

## ARBITRATION

A person having a claim under this coverage may ask that the claim be resolved by arbitration before the Board of Consumer Claims Arbitration for the District of Columbia. Only if the other party or parties agree may the Board hear and decide the matter. The Board's decision shall be binding on all parties.

## TRUST AGREEMENT

Whenever we make a payment under this coverage:

1.  We will be entitled to repayment of that amount out of any settlement or judgment the insured recovers from any person or organization legally responsible for the bodily injury.

2.  The insured will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery. He will do nothing after the loss to prejudice these rights.

3.  At our written request, the insured, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The insured will pay us out of the recovery for our expenses, costs and attorneys' fees.

    However, we will not ask the insured to act to recover payment from an insured whose insurer is or becomes insolvent.

4.  The insured will execute and furnish us with any needed documents to secure his and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Underinsured Motorists Coverage:

1.  NOTICE

    As soon as possible after an accident, notice must be given us or our authorized agent stating:

    a)  the identity of the insured;

    b)  the time, place and details of the accident; and

    c)  the names and addresses of the injured, and of any witness.

    If the insured or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

A-452 (2-86) NS

2. ASSISTANCE AND COOPERA..ON OF THE IN-SURED

After we receive notice of a claim, we may require the insured to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the insured to make that person or organization a defendant in any action against us.

3. ACTION AGAINST US

Suit will not lie against us unless the insured and his legal representative have fully complied with all the policy terms.

4. PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the insured or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The insured and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claims must be made on forms furnished by us un-less we have no. .urnished these forms within 15 days after receiving notice of claim.

The insured will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the insured's incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5. PAYMENT OF LOSS

Any amount due is payable;

a) to the insured or his authorized representative;

b) if the insured is a minor to his parent or guardian; or

c) if the insured is deceased, to his surviving spouse; otherwise

d) to a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

We may, at our option, pay any amount due in accordance with d) above.

THE COMPANY affirms this amendment.

*Eugene J. Meyung*    President • GOVERNMENT EMPLOYEES INSURANCE COMPANY

*J. E. Reagen*    President • GEICO GENERAL INSURANCE COMPANY

*[signature]*    Secretary • GOVERNMENT EMPLOYEES INSURANCE COMPANY
AND GEICO GENERAL INSURANCE COMPANY

A-452 (2-86) NS

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Government Employees Insurance Company<br>5260 Western Ave<br>Chevy Chase, MD 20815 | Francisco Rivas<br>Hilda Rivas |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    11001<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Walter J. Andrews (No. 366637)<br>Syed S. Ahmad (No. 493571)<br>Hunton & Williams LLP<br>1751 Pinnacle Drive, Suite 1700<br>McLean, Virginia 22102<br>(703) 714-7400 (telephone)<br>(703) 918-4050 (facsimile) | ATTORNEYS (IF KNOWN) |
|---|---|

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

⦿ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ⦿ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ⦿ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/**
**Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency**
**Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

○ **D. Temporary Restraining**
**Order/Preliminary**
**Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ◉ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☒ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. §§ 1332 and 1391. Whether GEICO has fulfilled its duties and obligations to the insureds under a policy for automobile coverage.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ declaratory judgment   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 9-28-07   SIGNATURE OF ATTORNEY OF RECORD *Syed Ahml*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.