UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| FRANCISCO RIVAS, *et al.* | ) ) |
| Defendants. | ) ) ) |

Civil Action No. 07-1740 (JR)

## **DEFENDANTS' MOTION TO DISMISS OR TO STAY**

Pursuant to Fed. R. Civ. P. 12(b)(7), Defendants Francisco and Hilda Rivas move to dismiss this case in which Government Employees Insurance Company ("GEICO") seeks a declaration as to its obligations under an automobile liability insurance policy issued to Defendants. The case should be dismissed for failure to join Thomas P. Athridge, Jr. and Thomas P. Athridge as defendants, who should be regarded as indispensable parties to the action. The Court should also exercise its discretion to dismiss or stay this action in light of the coercive lawsuit filed by the Athridges and the Rivases in D.C. Superior Court, which will provide an entirely adequate alternative forum to hear any related claims GEICO may choose to make.

Thomas P. Athridge, Jr. (the father) and Thomas P. Athridge (his son) are necessary parties to this action because the Rivases assigned their choses in action (except for claims for emotional injury) against GEICO to the Athridges prior to the filing of this action and also because the Athridges have independent rights against GEICO as the Rivases' judgment creditors. This case therefore will not and can not resolve all the issues relating to GEICO's liability to the Rivases and the Athridges for

contractual and extra-contractual damages as a result of GEICO's issuance of an automobile liability insurance policy to the Rivases and its performance thereunder. Furthermore, the Court's determinations as a practical matter may impair the Athridges' claims against GEICO even though the Athridges are not parties to the lawsuit. Because the Athridges are non-diverse parties to GEICO, their joinder would destroy this Court's diversity jurisdiction – the sole basis of subject matter jurisdiction asserted by GEICO. The Athridges should therefore be regarded as indispensable and this action should not be allowed to proceed without them. Any issue that would be resolved in this lawsuit can or will be resolved in the coercive action the Rivases and the Athridges have jointly filed in D.C. Superior Court on November 16, 2007, No. 2007 C.A. 7639.

Additionally or alternatively, the pending coercive action is also persuasive reason for this Court to exercise its inherent discretion to dismiss or stay this case. The coercive action can resolve all the issues relating to GEICO's obligations to the Rivases and the Athridges, with all parties being present. The issues all involve state law, which are better decided by the local courts. The fact that GEICO may have filed its lawsuit first is of little significance – courts place little weight on the first to file rule, particularly where, as here, there is evidence of procedural fencing. GEICO will not be prejudiced by dismissal of this action, which has not advanced beyond the pleading stage.

The grounds supporting this motion are set forth in the accompanying memorandum of authorities.

Dated:  November 16, 2007                    Respectfully submitted,


                                                             /s/ Patrick A. Malone
                                                             Patrick A. Malone, Esq. (397142)
                                                             PATRICK MALONE & ASSOCIATES
                                                             1331 H Street N.W.
                                                             Suite 902
                                                             Washington, D.C.  20005
                                                             (202)  742-1500

                                                             *Attorneys for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 07-1740 (JR) |
| FRANCISCO RIVAS, *et al.* | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TO STAY

On July 29, 1987, Thomas P. Athridge ("Tommy") was seriously injured when, as a pedestrian, he was struck in the District of Columbia by an automobile owned by the Churreria Madrid Restaurant, which was owned by Defendants Francisco and Hilda Rivas as general partners. As a result of the Accident, Tommy and his father, Thomas P. Athridge Jr., both residents of the State of Maryland then and now, sued the Rivases and their restaurant.

Plaintiff Government Employees Insurance Company ("GEICO"), a Maryland corporation, was the Rivases' automobile liability insurer for the Accident. GEICO has filed this declaratory judgment action allegedly to determine whether it has fulfilled its obligations under the automobile liability policy to the Rivases and the extent of insurance coverage available to them. GEICO's action should be dismissed or alternatively stayed by the Court for two reasons.

First, pursuant to Fed. R. Civ. P. 12(b)(7), the lawsuit should be dismissed because GEICO has failed to join Tommy Athridge and his father in this action. The

Athridges are necessary parties to this action pursuant to Fed. R. Civ. P. 19 because they obtained a judgment against the Rivases, and as the Rivases' judgment creditors, they have independent rights against GEICO.  Moreover, the Rivases and the Athridges entered into a settlement agreement under which the Rivases assigned to the Athridges their chose in action rights against GEICO, except for claims for emotional damages. Determinations in this case may as a practical matter prejudice the Athridges, even though they are not parties here.

The Maryland Athridges cannot be joined in this action because any such joinder would destroy this Court's diversity jurisdiction.  The Court should therefore deem the Athridges as indispensable parties and dismiss the action.  Such dismissal would not prejudice GEICO because the issues in dispute in this action may be resolved in the lawsuit brought by the Rivases and the Athridges against GEICO on November 16, 2007, in D.C. Superior Court, No. 2007 C.A. 7639.

Additionally or alternatively, the Court should exercise its discretion to dismiss or stay this action in light of the D.C. Superior Court action brought by the Rivases and the Athridges.  This coercive action will decide all the issues among GEICO, the Athridges and the Rivases, including those raised in this lawsuit, and all parties will be present.  The issues all involve D.C. law, not federal law, and are better decided by the local courts. The fact that GEICO filed this lawsuit first should be given little weight, particularly because GEICO filed this suit as soon as it could to choose its forum.  GEICO will not be prejudiced by dismissal of this action, which has not advanced beyond the pleading stage.

## STATEMENT OF FACTS.

The facts concerning the Accident and the lawsuits resulting from the Accident are set forth in *Athridge v. Iglesias,* 950 F. Supp. 1187 (D.D.C. 1986), *aff'd*, 1997 WL 404854 (D.C. Cir. 1997), *Athridge v. Rivas*, 141 F.3d 357, 261-62 (D.C. Cir. 1998), and *Athridge v. Rivas*, 312 F.3d 474 (D.C. Cir. 2002).  Defendants set out only the essential facts here.

On July 29, 1987, Tommy Athridge, then a 15-year old minor, was seriously injured when**,** as a pedestrian, he was struck in the District of Columbia by an automobile driven by Jorge Iglesias (the "Accident").  Jorge Iglesias is the son of Hilda Rivas' first cousin, Alicia Iglesias.  The car was owned by Churreria Madrid Restauran**t**, which in turn at the time of the Accident was owned and operated by Francisco and Hilda Rivas as partners.

As a result of the Accident, the Athridges filed a series of lawsuits.  As relevant here, the Athridges filed two lawsuits naming Francisco and Hilda Rivas and their Restaurant (and others) as defendants.  These actions were subsequently consolidated.

GEICO had issued an automobile liability insurance policy that covered the Accident.  See Complaint ¶ 11.  GEICO assumed the defense of the Athridges' actions against the Rivases and assigned an attorney to represent them in these actions.

On January 12, 2005, the jury returned a verdict in favor of the Athridges and against the Rivases on the Athridges' claims of statutory liability under the District of Columbia Motor Vehicle Safety Responsibility Act and of negligently allowing Jorge Iglesias access to the keys to the Rivases' car.  See Settlement Agreement, dated September 7, 2007 (Exhibit 1 hereto), p. 1.   On August 12, 2005, the District Court

rejected the Athridges' claim for prejudgment interest and entered a paper entitled judgment in the amount of $5,510,010.78 in favor of the Athridges and against the Rivases ("Judgment"). *Id*. On August 15, 2005, the District Court entered a paper entitled Final Judgment in favor of the claimants. On March 23, 2006, the District Court denied the Rivases' motion for judgment as a matter of law or for a new trial. *Id*.

The Rivases and the Athridges both filed appeals from the Judgment to the D.C. Circuit. While the appeals were pending, on September 7, 2007, the Rivases and the Athridges entered into their Settlement Agreement. Under the Agreement, the Rivases and the Athridges dismissed their appeals, leaving the Judgment in effect. The Rivases agreed to pay the Athridges the amount of $2.85 million, with the Athridges' agreeing not to pursue collecting the remainder of the Judgment from the Rivases (except if the Rivases defaulted). The Rivases agreed to assign their choses in action against GEICO (except for their claims for emotional damages) to the Athridges. The Rivases agreed to pursue their claims against the attorney who had represented them in the lawsuits brought by the Athridges, and the Athridges and the Rivases agreed to pursue their claims against GEICO jointly, with the sides splitting any amounts recovered in these actions as set forth in the Settlement Agreement.

On January 31, 2007, the Rivases and GEICO had entered into a standstill agreement (Exhibit 2 hereto). Under this agreement, the parties had the right to file suit 30 days after the agreement was terminated. On August 28, 2007, undersigned counsel forwarded a draft of the settlement agreement to GEICO and asked if it wanted to participate in the settlement. On August 29, 2007, GEICO advised the Rivases that in

light of their potential settlement with the Athridges, GEICO was terminating the standstill agreement. Exhibit 3 hereto.

On September 28, 2007, the earliest GEICO could sue, GEICO filed this declaratory judgment action. In this action, GEICO seeks a judgment declaring that GEICO has complied with all of its duties and obligations under GEICO's Policy and that coverage under the Policy is barred or limited because the Rivases failed to mitigate damages by voluntarily dismissing the pending appeal, because the Rivases made voluntary payments by settling for an unreasonable amount and because the Rivases have not complied with the assignment provisions in the Policy.

On November 16, 2007, the Rivases and the Athridges filed their coercive action against GEICO in D.C. Superior Court. Exhibit 4 hereto. In this action, the Rivases and the Athridges assert the following claims:

- Breach of contract claim for the face amount of the Policy plus accrued pre-judgment interest and costs;

- Claim of estoppel based on res judicata for the full amount of the Judgment plus pre- and post-judgment interest and costs;

- Claim of estoppel based on GEICO's assumption and control of the Rivases' defense for the full amount of the Judgment plus pre- and post-judgment interest and costs;

- Breach of contract claim based on GEICO's breach of its duty of good faith and loyalty to the Rivases for the full amount of the Judgment plus pre- and post-judgment interest, costs and the attorneys' fees incurred in the D.C. Superior Court action;

- Claim of tortious breach by GEICO of its duty of good faith and loyalty to the Rivases for the full amount of the Judgment plus pre- and post-judgment interest and costs, emotional damages, punitive damages and attorneys' fees incurred in the D.C. Superior Court action;

- Breach of contract claim based on GEICO's failure to defend and indemnify Jorge Iglesias for the full amount of the judgment against Jorge Iglesias, plus pre- and post-judgment interest and costs, plus the attorneys' fees incurred in the D.C. Superior Court action;

- Claim for intentional and negligent spoliation based on GEICO's destruction of the Rivases' automobile liability policy for the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs; Claim for violation of the D.C. Consumer Protection and Procedures Act for the full amount of the Judgment plus pre- and post-judgment interest and costs, emotional damages, treble damages, punitive damages and attorneys' fees incurred in the D.C. Superior Court action; and

- Claim for intentional infliction of emotional distress.

## **ARGUMENT**

The Court should dismiss this action because the Athridges are and should be regarded as indispensable parties who cannot be joined in this action. Alternatively or additionally, the Court should exercise its discretion to dismiss or stay this action in light of the co-pending coercive D.C. Superior Court action.

## I.    THE ATHRIDGES SHOULD BE
##        REGARDED AS INDISPENSABLE PARTIES

Under Rule 12(b)(7), an action may be dismissed for failure to join an indispensable party. The issue of whether a party is indispensable entails a three-step inquiry. Fed. R. Civ. P. 19; *Western Md. R. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 962 n.5 (D.C. Cir. 1990). First, is the absentee a necessary party? Second, if the absentee's presence is necessary, is joinder feasible? Third, if the absentee's joinder is not feasible, is the absentee indispensable? *Western Md. R. Co.*, 910 F.2d at 961. These determinations require a pragmatic appraisal of the relevant practical effects of proceeding without the absent party. *Park v. Didden*, 695 F.2d 626, 628-29 (D.C. Cir. 1982).

Here, the Athridges are necessary parties, their joinder is not feasible, and they are indispensable to this action. Accordingly, the Court should dismiss this action.

### A.    The Athridges are Necessary Parties            .

Rule 19(a) provides that a party is a necessary party if "(1) complete relief cannot be accorded in [the party's] absence; or (2) the absentee's ability to protect its interest may be impaired by the disposition of the action; or (3) those already parties will be subject to a substantial risk of incurring inconsistent obligations because of the absence." *Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Washington*, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983).

The Athridges are necessary parties because complete relief cannot be accorded in their absence. As a result of their Judgment against the Rivases, the Athridges have independent rights against GEICO. *See Athridge v. Aetna,* 351 F.3d 1166, 1170 (D.C. Cir. 2003). Since the Athridges have not been joined as parties, any determination in this

lawsuit concerning the Rivases' rights under the GEICO Policy cannot bind the Athridges in their status as judgment creditors of the Rivases. *Id.* Therefore, a complete determination of whether GEICO has complied with its obligations under the Policy and the amount of insurance available under the Policy cannot be made in the Athridges' absence.

The Athridges are also necessary parties because their ability to protect their interest may be impaired by the disposition of this action. In addition to having claims against GEICO in their status as judgment creditors, the Athridges have been assigned the Rivases' claims against GEICO (except for claims for emotional damages). Although the Athridges will not be legally bound by any determination in this case, "an unfavorable ruling here would nonetheless constitute adverse persuasive precedent, thereby harming [the Athridges'] interest." *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1124 (D. Del. 1989)(cit*ing Acton Co., Inc. v. Bachman Foods,* 668 F.2d 76, 78 (1st Cir. 1982); *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110 (1968); *accord Doty v. St. Mary Parish Land Co.,* 598 F.2d 885, 887 (5th Cir. 1979).

### B. <u>Joinder of the Athridges is not Feasible</u>

The Athridges and GEICO are citizens of Maryland. Joinder of the Athridges would destroy this Court's diversity jurisdiction, which is the sole basis asserted for subject matter jurisdiction. Therefore, joinder of the Athridges in this action is not feasible. *See Park v. Didden, Jr.,* 695 F.2d 626 (D.C. Cir. 1982)(joinder not feasible where it would strip the court of subject matter jurisdiction based on diversity).

C.    <u>**The Athridges are Indispensable Parties**</u>

Rule 19(b) provides that if a necessary party cannot be joined in the lawsuit, the "court should determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The factors to be considered are the plaintiff's interest in having a forum, the defendant's interest in avoiding inconsistent relief or multiple litigation, the absent party's interest in protecting his rights, and the public interest in complete and efficient resolution of controversies. *Provident Tradesmens*, 390 U.S. at 110. These factors strongly weigh in favor of dismissing the lawsuit.

First, GEICO's interest in having a forum will be satisfied because the Athridges and the Rivases have filed a coercive lawsuit in D.C. Superior Court that will resolve the same issues that GEICO seeks to resolve here (as well as numerous additional issues). "This factor, the Supreme Court pointed out, assumes larger proportion when dismissal is sought, as it [is] here, at an early, pre-trial stage of the litigation." *Cloverleaf Standardbred Owners Ass'n*, 699 F.2d at 1279.

Second, the Rivases have an interest in avoiding inconsistent relief or multiple litigation. If this action is not dismissed, they will be defendants here and plaintiffs in the D.C. Superior Court action. Their presence in the latter action is a result of the Settlement Agreement. At best, this means that the Rivases will be involved in two lawsuits; at worst, this means that the Rivases may be subject to inconsistent judicial determinations.

Third, the Athridges have a strong interest in protecting their rights. As explained above, the Athridges in their role as assignees of the Rivases' claims could as a practical

matter be prejudiced by the Court's determinations in this lawsuit, even though the Athridges cannot be joined to protect their rights.

Fourth, the public interest will be served by dismissing this lawsuit and having the controversies concerning GEICO's obligations to the Rivases decided in a single lawsuit – the one co-pending in D.C. Superior Court.

This case is analogous to *Hartford Casualty Ins. Co. v. Pixel Magic Imaging, Inc.*, 2005 U.S. Dist. LEXIS 21362 (W. D. Tex. 2005), *approved*, 2005 U.S. Dist. LEXIS 21361 (W.D. Tex. 2005). In *Pixel Magic*, a third party, Nancy Cruz, had filed a lawsuit in Rhode Island against Pixel Magic's subsidiary. Pixel Magic asked Hartford to defend the Rhode Island lawsuit. Hartford refused, asserting that its policy did not cover the claims in the Rhode Island lawsuit. The Rhode Island lawsuit was settled by Pixel Magic's and its subsidiary's agreement to pay Cruz $1 million under the Hartford policy and assignment of all of their rights against Hartford to Cruz in exchange for her covenant not to execute on the $1 million settlement. Hartford filed a declaratory judgment action in the Western District of Texas against Pixel Magic and Cruz seeking a declaration that its policy did not cover the claims asserted in the Rhode Island lawsuit and that Pixel Magic's assignment of its rights under the policy to Cruz violated the terms of the insurance policy and was thus unenforceable.

In his Report and Recommendation, the Magistrate Judge held that the Western District of Texas did not have personal jurisdiction over Cruz. He also held that Cruz was a necessary party because Pixel Magic (the insured) had assigned its rights under the policy to her. Cruz could not be properly brought before the Court for lack of personal jurisdiction. He further held that Cruz should be considered to be an indispensable party

and the case dismissed because Hartford had another effective forum in Rhode Island, and that litigating the lawsuit without Cruz would prejudice Cruz and the remaining parties to the lawsuit because her presence was necessary to adequately address the issues and claims and in her absence the parties ran the risk of incurring double or inconsistent judgment. 2005 U.S. Dist. LEXIS 21362 at *26-*27. The District Judge upheld the Magistrate Judge's recommendations.

As relevant here, this case and *Pixel Magic* are substantially the same. The Rivases respectfully submit that this Court should follow *Pixel Magic* and dismiss this lawsuit.

## II.    THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS OR STAY THIS CASE

GEICO seeks a declaratory judgment under the Declaratory Judgment Act, which provides that a district court "<u>may</u> declare the rights and other legal relations of any interested party seeking such declaration …." 28 U.S.C. §2201(a)(emphasis added). This language affords the district court "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

In cases where, as here, there is a pending state court suit that will resolve the same issues as those sought to be resolved in the federal declaratory judgment action, the Supreme Court has cautioned that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942). It warned that

"gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.*

Insurance carriers often bring declaratory relief actions to settle their liability under insurance policies. In these types of cases, "the most common factor that causes federal courts to refuse to entertain declaratory judgment suits is whether parallel state court proceedings are pending." 12-57 <u>Moore's Federal Practice-Civil</u> §57.82, pp. 1-2 (2007 Internet ed.). Federal courts use slightly different formulations, but when parallel state court proceedings are pending, federal courts will weigh the following factors:

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for res *judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005); *accord Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000); *Centennial Life Ins. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996).

These factors point to dismissing this case or staying it until resolution of the D.C. Superior Court action.

First, the controversy among the parties can be better settled in the D.C. Superior Court action, where GEICO, the Rivases and the Athridges are all parties. The D.C. Superior Court action will resolve the same issues that are presented here. In contrast, as explained above, the Athridges are necessary parties who cannot be joined in this lawsuit. This case will not completely resolve the controversy among GEICO, the Rivases and the Athridges. In this situation, the Court would therefore be "indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton*, 515 U.S. at 283 (internal citation omitted; *quoting Brillhart*, 316 U.S. at 495).

Second, the disputes among the parties involve issues of local law only. Because "states [and the District of Columbia] regulate insurance companies for the protection of their residents, … [local] courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous Cas. Corp. v. J. & J. Lumber Co., Inc.*, 373 F.3d 807, 815 (6th Cir. 2004)(internal quotations and citations omitted). D.C. has a compelling local governmental interest in having its courts apply its law. *Centennial Life*, 88 F.3d at 256-58.

Third, GEICO's declaratory judgment action involves "procedural fencing." GEICO filed suit on the first day allowed after terminating the standstill agreement with the Rivases. GEICO apparently filed suit so that it could obtain a federal hearing in a case that would not be removable if the Athridges either alone or with the Rivases filed suit in D.C. Superior Court. "[S]uch a preemptive strike should be disregarded in selecting the proper forum if equitable concerns so merit." *Lewis v. National Football*

*League*, 813 F. Supp. 1, 4 (D.D.C. 1992)(earlier filed declaratory action filed for tactical reasons and therefore not reason to dismiss antitrust suit); *Reliance Ins. Co. v. Bend'N Stretch, Inc.*, 935 F. Supp. 476 (S.D.N.Y. 1996)(federal jurisdiction cannot be used for party's advantage).  Moreover, the fact of the matter is that the settlement agreement and concomitant assignment were executed before GEICO instituted the instant action.

Fourth, GEICO will not be prejudiced by dismissal or stay of this suit.  This case is at its earliest stage, and requiring the issues among the parties to be litigated in D.C. Superior Court will not substantially delay a final resolution.

In sum, when the foregoing factors are weighed, the Court should dismiss or stay this action.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should dismiss this action because the Athridges are indispensable parties.  Additionally or alternatively, the Court should exercise its discretion to dismiss or stay this action in light of the pending D.C. Superior Court action.

Dated:  November 16, 2007                              Respectfully submitted,


                                                        /s/ Patrick A. Malone
                                                       Patrick A. Malone, Esq. (397142)
                                                       PATRICK MALONE & ASSOCIATES
                                                       1331 H Street N.W.
                                                       Suite 902
                                                       Washington, D.C.  20005
                                                       (202)  742-1500

                                                       *Attorneys for the Defendants*

# Exhibit 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and is effective as of this 7th day of September 2007, by and between (1) Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, Mary T. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges"); and (2) Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases"). The Athridges and the Rivases individually are referred to as a "Party" and collectively are referred to as the "Parties."

WHEREAS, on July 29, 1987, Thomas P. Athridge was injured when an automobile driven by Jorge Iglesias struck him (the "Accident"). The car was owned by Francisco and Hilda Rivas and their restaurant, Churreria Madrid Restaurant; and

WHEREAS, on May 4, 1989, Thomas P. Athridge, Jr., individually, and as father and next friend of Thomas P. Athridge filed a lawsuit styled <u>Thomas P. Athridge et al., v. Jorge Iglesias et al.</u>, in the U.S. District Court for the District of Columbia ("District Court"), Civil Action No. 89-1222, naming Jorge Iglesias, Francisco Rivas, Churreria Madrid Restaurant, and Churreria Madrid Restaurant, Inc. as defendants in connection with the Accident; and

WHEREAS, on August 12, 1992, Thomas P. Athridge, Thomas P. Athridge, Jr., and Mary T. Athridge filed a lawsuit styled <u>Thomas P. Athridge et al., v. Hilda Rivas t/a Churreria Madrid Restaurant</u> in the District Court, Civil Action No. 92-1868, naming Hilda Rivas as a defendant in connection with the Accident; and

WHEREAS, the cases, Nos. 89-1222 and 92-1868, were consolidated for trial; and

WHEREAS, on January 12, 2005, the jury returned a verdict in favor of the Athridges and against the Rivases on the Athridges' claims of statutory liability under the District of Columbia Motor Vehicle Safety Responsibility Act and of negligently allowing Jorge Iglesias access to the keys to the Rivases' car; and

WHEREAS, on August 12, 2005, the District Court rejected the Athridges' claim for prejudgment interest and filed a paper entitled judgment in the amount of Five Million, Five Hundred Ten Thousand and Ten Dollars and Seventy Eight Cents ($5,510,010.78) in favor of the Athridges and against the Rivases ("Judgment"); and

WHEREAS, on March 23, 2006, the District Court denied the Rivases' motion for judgment as a matter of law or for a new trial;

WHEREAS, the Athridges and the Rivases both filed appeals from the Judgment to the U.S. Court of Appeals for the District of Columbia Circuit ("Court of Appeals"), Nos. 05-7123, 05-7126, 06-7048 and 06-7049 ("Appeals"), which Appeals have been consolidated and are currently pending; and

WHEREAS, the Rivases have posted as security for the Judgment certain real estate holdings ("Posted Real Property") that are the subject of the District Court's Order of December 13, 2006; and

WHEREAS, the Rivases represent that their assets other than the Posted Real Property have a value of less than 10% of the value of the Posted Real Property; and

WHEREAS, the Parties now desire to resolve all disputes, demands, claims, judgments and any other controversies between them arising out of the Accident;

NOW THEREFORE, in consideration of the payments, undertakings, obligations, and commitments set forth below, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows in full and final settlement of all matters between them.

1.      To settle the Athridges' lawsuits arising from the Accident, the Rivases shall dismiss their appeals from the Judgment and satisfy the Judgment as set forth below, which Judgment shall continue earning post-judgment interest in accordance with 28 U.S.C. § 1961;

2. The Rivases shall pay the Athridges One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00) for the Athridges to dismiss their appeals from the Judgment, and an additional One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) in partial satisfaction of the Judgment. These sums shall be wired to an escrow account of Manelli Denison & Selter PLLC FBO Thomas Athridge (in the amount of Two Million Eight Hundred Thousand Dollars ($2,800,000.00)) within 120 days of the effective date of the Agreement; provided that if this date shall fall on a day when banks are closed, payment shall be made on the next business day; and provided further that the Rivases shall use their best efforts to cause payment to be made within a shorter period.

3.      If the payment set forth in Section 2 is not received by Manelli Denison & Selter PLLC by the date set forth in Section 2, except for reasons that are outside of the control of the Rivases, interest shall be due and payable on any overdue amount of the $2.8 million at the judgment interest rate then in effect under 28 U.S.C. 1961 at the time of any non-payment, and the Athridges shall be entitled to reasonable attorneys fees and expenses incurred to enforce this payment.

4.      The Rivases are expected to secure some or all of the funds for the payment in section 2 through one or more loans ("Loans") from one or more financial institutions ("Lender") collateralized with one or more parcels of the Posted Real Property, or through sales of such parcels. The Athridges shall provide to the Lender (or, as the case may be, to the Buyer) or to a representative chosen by the Lender/Buyer, releases in the form requested by the Lender/Buyer of the liens on the parcels of the Posted Real Property as requested by the Lender/Buyer and other papers reasonably required by the Lender to make the Loan or required by the Buyer to purchase the

2

property (collectively, the "Releases"). These Releases shall be held in escrow by the Lender/Buyer or its designated representative until the closing of the Loan. Upon the making of the payment set forth in Section 2, the Athridges shall release their liens on all parcels of the Posted Real Property not previously released and, if not previously requested by the Lender/Buyer, will consent to the release of the non-alienation commitments filed on the Posted Real Property in accordance with the Order of the District Court issued on December 13, 2006. Any filing fees shall be paid by the Rivases.

5.     As additional satisfaction of the Judgment, the Rivases shall pursue all choses in action against David F. Grimaldi and his law firm of Martell, Donnelly, Grimaldi & Gallagher (the "Grimaldi Claims"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for omissions or for negligence in connection with Mr. Grimaldi's representation of the Rivases in connection with the Accident. The Rivases shall pay to the Athridges, immediately upon receiving any funds, 40% of the Gross Proceeds of any recovery resulting from the Grimaldi Claims, and the Athridges shall have a lien on any such recovery by the Rivases for this purpose. By way of example, assuming the non-applicability of paragraph 11 below, the division of a $1 million recovery on the Grimaldi claims would be $600,000 to the Rivases and $400,000 to the Athridges.

6.     The Athridges shall cooperate with the Rivases in their pursuit of the Grimaldi Claims. The Rivases shall consult with the Athridges on major decisions in connection with the Grimaldi Claims, including but not limited to any presentation to the malpractice insurer defending the Grimaldi Claims, drafting any complaint, selection of any expert witnesses, preparing any pretrial statement, witness list and exhibit list, trial of the case, taking an appeal and settlement of the claims. The Rivases shall have the final say on all decisions relating to the Grimaldi Claims, provided that any settlement of the Grimaldi Claims in an amount less than $2.7 million must be approved by the Athridges.

7.     As additional satisfaction of the Judgment, the Rivases hereby assign to the Athridges – and have contemporaneously executed a separate document of assignment – any and all of their choses of action that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses ("GEICO Assigned Claims"), EXCEPT that the Rivases shall reserve to themselves for their own recovery (not to be shared with the Athridges) any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress ("Emotional Damages Claims"). The choses

3

of action against GEICO assigned by the Rivases to the Athridges shall be referred to as the "GEICO Assigned Claims."

8.     The Athridges and the Rivases shall take all necessary steps to pursue the GEICO Assigned Claims and the Emotional Damages Claims, and shall reasonably cooperate with each other in the coordination of such claims in a single legal action. Immediately upon receiving any funds on the GEICO Assigned Claims or the Emotional Damages Claims, the Athridges shall pay 40% of the Gross Proceeds of any recovery resulting from this assignment of the GEICO Assigned Claims and 100% of the Gross Proceeds of any recovery resulting on this assignment of the Emotional Damages Claims to the Rivases, and the Rivases shall have a lien on any such recovery for this purpose.

9.     If a court or jury determines the amount of damages applicable to the GEICO Assigned Claims versus the GEICO Emotional Damages Claims, then such allocation shall be binding on the parties. (By way of example, if $4.0 million were to be recovered from GEICO on all claims, with the fact-finder allocating 25% to the Rivases' Emotional Damages Claims and 75% to the GEICO Assigned Claims, then the Rivases would receive $2.2 million of the $4.0 million.)

If the GEICO claims go to settlement without any allocation of damages by a court or jury, and in the event the parties dispute an appropriate allocation and are not able to resolve their differences, then any such dispute shall be decided by a single neutral arbitrator in Washington, D.C., in binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association then in effect.

10.     The Athridges and the Rivases shall cooperate with the other Party in their pursuit of the GEICO Assigned Claims and the Emotional Damages Claims. If it becomes necessary to file suit to pursue the GEICO Assigned Claims and the Emotional Damages Claims, the Parties shall file such suit jointly as co-plaintiffs, and the attorneys for the Athridges shall be lead counsel. The Athridges shall have primary responsibility, after consultation with the Rivases, for major decisions in connection with the GEICO Assigned Claims and the Emotional Damages Claims, including but not limited to any presentation of the GEICO Assigned Claims and the Emotional Damages Claims to GEICO or its representative, drafting any complaint, selection of any expert witnesses, preparing the pretrial statement, witness list and exhibit list, trial of the case, taking an appeal, and settlement of the claims. The Athridges shall have the final say on all decisions relating to the GEICO Assigned Claims, provided that any settlement of the GEICO Assigned Claims in an amount less than $4.0 million must be approved by the Rivases.

11.     In addition to the foregoing amounts that the Athridges may receive from the Grimaldi Claims or the GEICO Assigned Claims, the Athridges shall receive from the Gross Proceeds of either the Grimaldi Claims or the GEICO Assigned Claims, but not from the Emotional Damages Claims, whichever Gross Proceeds are recovered first, an additional Fifty Thousand Dollars ($50,000) plus interest at the judgment interest rate then in effect under 28 U.S.C. 1961 for the period from the date the payment set forth in

4

Section 2 is made until the date of payment of the additional Fifty Thousand Dollars ($50,000). By way of example, if the Gross Proceeds recovered from the Grimaldi Claims amount to $1.0 (one) million and these Gross Proceeds are recovered before any recovery of Gross Proceeds from the GEICO Assigned Claims, and interest as set forth above amounts to $5,000, the Rivases shall pay to the Athridges the amount of $455,000.

12.    As used in this Agreement, "Gross proceeds" shall mean all amounts recovered as a result of the Grimaldi Claims and/or the GEICO Assigned Claims, including but not limited to compensatory damages, exemplary or punitive damages and attorneys' fees (but not including any reimbursement of litigation expenses owed by one side to the other in the ordinary course of the litigation).

13.    This Section applies only to the extent any court of competent jurisdiction shall declare the assignment set forth in Section 7 to be invalid, in whole or part. In such event, the Rivases shall pay to the Athridges immediately upon receiving any funds 60% of the Gross Proceeds of any recovery resulting from all or part of the GEICO Assigned Claims as to which the assignment set forth in Section 7 has been declared to be invalid, and the Athridges shall have a lien on any such recovery by the Rivases for this purpose. Also, the Rivases shall take the following steps pursuant to D.C. Superior Court Rule of Civil Procedure 17 or its equivalent:

a.    Ratify the commencement of suit and all steps taken by the Athridges in the prosecution of the GEICO Assigned Claims by the Athridges.

b.    Inform the Court that by this Agreement, the Athridges are the real parties in interest with respect to 60% of the Gross Proceeds of any recovery resulting from the GEICO Assigned Claims.

Further, the Rivases agree to join, to the extent necessary and to the extent permitted by the civil rules, the Athridges as co-plaintiffs of the GEICO Assigned Claims, and the Parties agree that the lawsuit will continue to be prosecuted in accordance with Section 10.

14.    The Parties shall each bear their own fees and expenses, including attorney's and expert's fees, and other out of pocket expenses, in connection with the Grimaldi Claims, the GEICO Assigned Claims and the Emotional Damages Claims. Each party's obligation to pay attorney fees shall be limited to that portion of the gross recovery on any of the claims due to that party. If the same expert is used in connection with the Grimaldi Claims and the GEICO Assigned Claims and the Emotional Damages Claims, the Parties will split the fees and expenses of such expert in proportion to the amount of time the expert spends on each of the Claims.

15.    Without affecting any amounts recovered by the Rivases or the Athridges, and without affecting the overall attorney's fees set forth in Section 14 above, the attorneys for the Parties shall adjust the combined attorney's fees between themselves in favor of the attorneys in charge of the Grimaldi Claims or the GEICO Assigned Claims,

5

as the case may be, so that the attorneys in charge of the Grimaldi Claims or the GEICO Assigned Claims will receive the following percentages of any fees earned as a result of the Grimaldi Claims or the GEICO Claims at the following stages of the proceedings: if the matter is resolved at any time during the claims and litigation process before a Pretrial Conference, 60 percent, if the matter is resolved at any time between a Pretrial Conference and the beginning of trial (which shall be deemed to have occurred at the time the judge or the courtroom clerk calls the case to order for the beginning of trial), 66-2/3 percent, and any time after the beginning of trial (as defined herein), 75 percent, and the other attorneys will receive 40 percent, 33-1/3 percent, or 25 percent of any such fees as the case may be. This Section shall not apply to the additional payment of Fifty Thousand Dollars ($50,000) plus interest set forth in Section 11.

16.    Promptly after the effective date of the Agreement, the Parties shall take the following steps:

(a)    The Parties shall jointly move in the Court of Appeals to dismiss the pending Appeals, with the Athridges and Rivases each bearing their own costs;

(b)    At the request of the Rivases, the Athridges or their attorneys shall notify the Lender or potential Lender that the Athridges will provide the Releases as set forth in Section 4.

17.    If before complying with the payment of the $2.8 million in section 2 above, either Francisco or Hilda Rivas become the subject of any voluntary or involuntary petition in bankruptcy or any voluntary or involuntary proceeding relating to insolvency, receivership, liquidation, or composition for the benefit of creditors, other than any such petition or proceeding brought by or instigated by the Athridges directly or indirectly, and if such petition or proceeding is not dismissed within sixty (60) days of filing, then the Athridges may take any and all steps to execute on the Judgment, in addition to pursuing any other remedies authorized by law. In such event the Athridges shall be entitled to recover their costs, including reasonable attorneys' fees, of executing on the Judgment and pursuing such other remedies.

18.    In the event (1) the Rivases fail to make the payment set forth in Section 2, or (2) any Party fail to make the payments set forth in Sections 5, 8 and 11, and the breaching Party fails to cure such breach within 30 days after receiving written notice, then the non-breaching Party may take any and all steps to collect such payment and the non-breaching Party shall be entitled to recover its costs, including reasonable attorneys' fees and expenses incurred to collect such payment. In the event any Party fails to comply with any material non-payment obligation of this Agreement, and the breaching Party fails to cure such breach within 30 days after receiving written notice, then the Parties agree that the non-breaching Party is entitled to specific performance of the non-payment obligation, and the non-breaching Party shall be entitled to recover its costs, including reasonable attorneys' fees and expenses incurred to enforce such obligation.

6

19.     Except upon the failure of the Rivases to make the payments set forth in Section 2 or upon the occurrence of any event as set forth in Sections 17, the Athridges covenant that neither they nor their representatives, successors or assigns shall execute on the assets of the Rivases or their representatives, successors or assigns in an effort to satisfy the Judgment and the Athridges further covenant that they shall not otherwise sue the Rivases to enforce the money damages set forth in the Judgment. Upon the payment of the Two Million Eight Hundred Thousand Dollars ($2,800,000) set forth in Section 2, and the settlement of, or entry of final judgment and completion of all appeals (or lapse of time to take appeals) in, the Grimaldi Claims and the GEICO Claims, the Athridges shall file a satisfaction of the Judgment with the District Court.

20.     Except as expressly stated herein, this Agreement does not affect or waive in any way the Rivases' or the Athridges' rights against any third person, including but not limited to Aetna Casualty and Surety Co., Inc.

21.     This Agreement may not be assigned except by operation of law or with the prior written consent of the non-assigning Party, which consent may be withheld in the non-assigning Party's discretion.

22.     This Agreement constitutes the full, entire and complete agreement between the Parties hereto with respect to the subject matter hereof. The recitals and terms of this Agreement are contractual and not mere recitals. No modification or waiver of any of the terms of this Agreement shall be valid unless made in writing and signed by the Parties.

23.     Each Party acknowledges and agrees that he/she has been represented by legal counsel in the negotiation and execution of this Agreement. The Parties hereby represent that they fully understand each term of this Agreement and that they agree to be bound thereby and that they are signing this Agreement knowingly and voluntarily, without coercion or duress.

24.     If for any reason a court of competent jurisdiction finds any provision of the Agreement invalid or unenforceable, that provision of the Agreement shall be enforced to the maximum extent permissible and the other provisions of the Agreement shall remain in full force and effect.

25.     The failure by the Parties to enforce any provision of the Agreement shall not constitute a waiver of future enforcement of that or any other provision.

26.     All notices required or permitted under the Agreement shall be in writing and delivered by courier, overnight delivery service, or by certified mail, and in each instance shall be deemed given upon receipt or rejection. All notices shall be sent to the addresses set forth below or to such other address as may be specified by any Party to the other in accordance with this Section. All notices shall be sent as follows:

To the Athridges:

    Michael H. Selter
    Manelli Denison & Selter PLLC
    2000 M Street, NW, #700
    Washington, DC 20036
    Tel: 202-261-1026
    Fax: 202-887-0336

To the Rivases:

    Patrick A. Malone
    Stein, Mitchell & Mezines
    1100 Connecticut Ave.
    Suite 1100
    Washington, DC 20036
    Tel: 202-737-7777
    Fax: 202-296-8312

Each Party may change its address for notices under the Agreement by giving written notice to the other Parties by the means specified in this Section.

27.    This Agreement shall be interpreted and enforced in accordance with the laws of the District of Columbia, without reference to its conflict of laws provisions.

28.    The Parties agree to cooperate in the execution of whatever additional documents may be necessary to effectuate the terms and promises of this Agreement.

29.    This Agreement may be signed in counterparts, with each counterpart constituting an original.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

8

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound thereby, have affixed their signatures to this Settlement Agreement effective as of the date first above written.

_____
Thomas P. Athridge, Jr.

_____
Francisco Rivas

_____
Mary T. Athridge

_____
Hilda Rivas

_____
Thomas P. Athridge

APPROVED WITH RESPECT TO
SECTIONS 14 and 15

_____
Patrick A. Malone
Stein, Mitchell & Mezines

_____
Michael H. Selter
Manelli Denison & Selter PLLC

_____
Erik S. Jaffe
Erik S. Jaffe, P.C.

9

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound thereby, have affixed their signatures to this Settlement Agreement effective as of the date first above written.

_____
Francisco Rivas

_____
Hilda Rivas

_____
Thomas P. Athridge, Jr.

_____
Mary T. Athridge

_____
Thomas P. Athridge


APPROVED WITH RESPECT TO
SECTIONS 14 and 15

_____
Patrick A. Malone
Stein, Mitchell & Mezines

_____
Michael H. Selter
Manelli Denison & Selter PLLC


_____
Erik S. Jaffe
Erik S. Jaffe, P.C.

10

## ASSIGNMENT

Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases").hereby assign to Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges") any and all of their choses of action that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses, reserving only any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress ("Emotional Damages Claims"). The choses of action against GEICO assigned by the Rivases to the Athridges shall be called the "GEICO Assigned Claims."

IN WITNESS WHEREOF, the Rivases, intending to be legally bound thereby, have affixed their signatures to this Assignment effective as of this 7h day of September, 2007.

_Francisco Rivas_    9/7/07
Francisco Rivas

_Hilda Rivas_    9-7-07
Hilda Rivas

## ASSIGNMENT

Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases").hereby assign to Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges") any and all of their choses of action that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses, reserving only any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress ("Emotional Damages Claims"). The choses of action against GEICO assigned by the Rivases to the Athridges shall be called the "GEICO Assigned Claims."

IN WITNESS WHEREOF, the Rivases, intending to be legally bound thereby, have affixed their signatures to this Assignment effective as of this 7h day of September, 2007.

_____ 9/7/07
Francisco Rivas

_____ 9-7-07
Hilda Rivas

Exhibit 2

## Tolling Agreement

Any statutes of limitations, statutes of repose or similar limitation periods, and any other defenses relating to the passage of time, including waiver, estoppel, laches, or any contractual limitation period, that Government Employees Insurance Company ("GEICO") on the one hand and Francisco Rivas or Hilda Rivas on the other hand (collectively the "Parties") may have against each other in connection with the claim for insurance coverage under the GEICO policy number 65485241 that resulted from the car accident on July 29, 1987 shall be tolled from November 21, 2006 until this tolling agreement terminates.

The Parties agree that they will not initiate any lawsuit or other form of litigation regarding or relating to the claim referenced above until thirty (30) days after any of the Parties notifies the other Parties in writing that they wish to terminate this tolling agreement. The date of such notice shall constitute the Termination Date.

No pre-judgment, pre-determination or any other interest, which may otherwise be allowable by law, will accrue from the effective date of this tolling agreement through and including the Termination Date.

Except as expressly stated herein, the parties reserve and do not waive any of the rights they may have under the GEICO policy and applicable law.

_P. Malone_

Patrick Malone

_Counsel For Francisco Rivas And Hilda Rivas_

Date: 1-24-07

_W. Andrews_

Walter Andrews

_Counsel For GEICO_

Date: 1/31/07

# Exhibit 3

08/29/2007 18:38 FAX  202 296 8312      STEIN, MITCHELL, MEZINE              ☑ 003/004

Aug-29-07  05:13pm   From-HUNTON & WILLIAMS                    +                    T-639  P.02/03  F-969

# HUNTON WILLIAMS

HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VIRGINIA 22102

TEL    703 • 714 • 7400
FAX    703 • 918 • 4050

WALTER J. ANDREWS
DIRECT DIAL: 703-714-7642
EMAIL: wandrews@hunton.com

August 29, 2007

## Via Facsimile & First Class U.S. Mail

Patrick Malone
Stein, Mitchell & Mezines L.L.P.
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036

**Re:**  **Claim No.:**    000832092 0101098
     **Insured:**      Francisco Rivas
     **Date of Loss:** 07/29/1987

Dear Mr. Malone,

I write to follow up on our conversations on August 16 and August 23 and our subsequent correspondence.

You have made clear that the Rivases intend to file a lawsuit against GEICO. During our August 16 discussion, for example, you stated that a settlement in the underlying litigation was likely and that the Rivases would subsequently pursue alleged claims against GEICO. Furthermore, in our conversation on August 23, you stated that GEICO "would not be able to get out of this case for just the $100,000 limit." Similarly, your August 24 letter referred to your "clients' potential claims against GEICO...." Your most recent letter, dated August 28, forwarded a draft settlement agreement between the Rivases and the Athridges, which provides that the Rivases would pursue certain alleged claims against GEICO and purports to assign other alleged claims to the Athridges.

In light of the above, I write to inform you that GEICO is terminating the Tolling Agreement that the Rivases and GEICO entered into in January 2007.

Finally, as has been explained to you many times before, GEICO has satisfied all of its obligations under the GEICO policy by, among other things, providing a defense to the Rivases throughout the underlying litigation and tendering the applicable $100,000 limit to the underlying plaintiffs. As it has done in the past, GEICO will continue to honor its contractual obligations.

08/29/2007 18:39 FAX  202 296 8312        STEIN, MITCHELL, MEZINE                    ☑ 004/004
Aug-29-07  06:19pm  From-HUNTON & WILLIAMS                  +                T-838  P 03/03  F-888

**HUNTON &**
**WILLIAMS**

Patrick Malone
August 29, 2007
Page 2

Sincerely,

*Walter Andrews*

Walter Andrews

cc:    Jaci Todd

AUG-29-2007 06:41PM    FAX:202 296 8312        ID:MANELLI DENISON        PAGE:004  R=96%

# Exhibit 4



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THOMAS P. ATHRIDGE JR.
Vs.

C.A. No.        2007 CA 007639 B

GOVERNMENT EMPLOYEES INSURANCE COMPANY

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MELVIN R WRIGHT
Date:  November 16, 2007
Initial Conference: 9:30 am, Friday, February 15, 2008
Location:  Courtroom 200
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| Thomas P. Athridge, Jr., Thomas P. Athridge, Mary T. Athridge, Francisco Rivas and Hilda Rivas | 0007639--07 |

*Plaintiff*

Civil Action No. [                    ]

**vs.**

Government Employees Insurance Co.

*Defendant*

## SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Michael H. Selter, #219550

Name of Plaintiff's Attorney

Manelli Denison & Selter PLLC

By _____

Address

Deputy Clerk

2000 M Street, #700, Washington DC 20036

202-261-1000

Date November 16, 2007

Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 78    **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-l 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

## SUPERIOR COURT OF THE
### DISTRICT OF COLUMBIA
#### Civil Division

| | |
|---|---|
| THOMAS P. ATHRIDGE, JR.<br>6003 Ramsgate Road<br>Bethesda, MD 20816<br><br>THOMAS P. ATHRIDGE<br>6003 Ramsgate Road<br>Bethesda, MD 20816<br><br>MARY T. ATHRIDGE.<br>6003 Ramsgate Road<br>Bethesda, MD 20816<br><br>FRANCISCO RIVAS<br>3739 Cumberland Street NW<br>Washington, DC 20016<br><br>HILDA RIVAS<br>3739 Cumberland Street NW<br>Washington, DC 20016<br><br>        Plaintiffs,<br>   v.<br><br>GOVERNMENT EMPLOYEES<br>INSURANCE COMPANY<br>5260 Western Avenue<br>Chevy Chase, Maryland 20815<br><br>        Defendant. | No. _____<br><br>0007639-07<br><br>RECEIVED<br>Civil Clerk's Office<br>NOV 1 6 2007<br>Superior Court of the<br>District of Columbia<br>Washington, D.C. |

## COMPLAINT

Plaintiffs Thomas P. Athridge, Jr., Thomas P. Athridge, Mary T. Athridge, Francisco Rivas and Hilda Rivas, by counsel, file this Complaint against Defendant Government Employees Insurance Company, as follows:

**PARTIES**

1.      Plaintiffs Thomas P. Athridge, Jr., Thomas P. Athridge and Mary T. Athridge are adult individuals who reside in and are citizens of the State of Maryland.

2.      Plaintiffs Francisco and Hilda Rivas are adult individuals who reside in the District of Columbia.

3.      Defendant Government Employees Insurance Co. ("GEICO") is a corporation organized under the laws of the State of Maryland with its principal place of business in the State of Maryland.

**JURISDICTION**

4.      This Court has subject matter jurisdiction under D.C. Code § 11-921. Defendant is subject to the personal jurisdiction of this Court pursuant to D.C. Code § 13-423.

**FACTS**

**The Accident**

5.      On July 29, 1987, Thomas P. Athridge ("Tommy"), then a 15-year old minor, was seriously injured when, as a pedestrian, he was struck by an automobile driven by Jorge Iglesias at Fessenden and 32nd Streets, N.W. in the District of Columbia (the "Accident").

6.      The car was owned by the Churreria Madrid Restaurant, which at the time of the Accident was owned by Francisco and Hilda Rivas as partners.

7.      Jorge Iglesias is the son of Hilda Rivas' first cousin, Alicia Iglesias.

8.      At the time of the Accident, the Rivases had a son, Francisco Rivas Jr., nicknamed Panchi, who was living at home.

**The Athridges' Lawsuits**

9.     On May 4, 1989, Thomas P. Athridge, Jr., individually, and as father and next friend of Tommy Athridge, filed a lawsuit styled <u>Thomas P. Athridge *et al.*, v. Jorge Iglesias *et al.*</u>, in the U.S. District Court for the District of Columbia ("District Court"), Civil Action No. 89-1222, naming Jorge Iglesias, Francisco Rivas, Churreria Madrid Restaurant, and Churreria Madrid Restaurant, Inc. as defendants in connection with the Accident.

10.    On August 12, 1992, Tommy Athridge, Thomas P. Athridge, Jr., and Mary T. Athridge filed a lawsuit styled <u>Thomas P. Athridge *et al.*, v. Hilda Rivas t/a Churreria Madrid Restaurant</u> in the District Court, Civil Action No. 92-1868. Based on information obtained during discovery in the 1989 lawsuit, this second lawsuit named Hilda Rivas in her individual capacity as a defendant in connection with the Accident. The Athridges' 1989 and 1992 lawsuits were consolidated by the District Court for all purposes.

**GEICO's Automobile Liability Insurance Policy**

11.    GEICO had issued an automobile liability insurance policy ("Policy") that covered the Accident.

12.    In response to the request of the Athridges' attorney, GEICO refused to disclose the amount of coverage under the Policy.

13.    During discovery in the Athridges' lawsuits, GEICO declined to produce a copy of the Policy with a declarations page. GEICO asserts that it has lost the Policy with a declarations page.

14.    GEICO asserts it has a policy and practice of not retaining policies with the declarations page, even though the declarations page identifies the insured and the policy limits.

15.    On May 23, 1989, GEICO wrote to Francisco Rivas and the Churreria Madrid Restaurant, informing them that it would provide a defense to the Athridges' 1989 lawsuit and had assigned the law firm of Martell, Donnelly, Grimaldi and Gallagher, 1220 19th Street, N.W., Suite 500, Washington, D.C. 20036 to represent them. David F. Grimaldi, Jr., of this law firm, acted as their attorney. GEICO did not reserve any rights. GEICO informed the Rivases that since there was a claim in excess of policy limits, the Rivases had a right to hire their own attorney "to cooperate with [GEICO's] defense attorney to protect your interests in excess of the policy limits," but that they "need not" do so as "the [GEICO] defense attorney will do his best to protect your interests and ours." GEICO did not inform the Rivases of any conflict of interest between their and GEICO's interests and did not suggest that the Rivases should consult with their own personal attorney.

**GEICO's Declaratory Judgment Action**

16.    On September 6, 1989, GEICO filed an action in D.C. Superior Court against Jorge Iglesias, Francisco Rivas and Churreria Madrid Restaurant seeking a declaratory judgment that Jorge Iglesias' use of the car was without the Rivases' permission and that GEICO therefore was not liable for any judgment that may be rendered against these parties.

17.    GEICO attached a specimen of a GEICO policy form without any declarations page. The GEICO specimen form purported to cover any persons using the

Rivas' car with their permission provided that the actual use was within the scope of that permission. The GEICO specimen form also purported to cover any person for his liability with respect to the Rivases' car because of acts or omissions of an insured. Panchi Rivas was an insured under the Policy either as a named insured, as a family member who resided in Francisco and Hilda Rivas' household at the time of the Accident, or both.

18.    As to the Rivases, GEICO sought a declaratory judgment that it owed them no coverage, that it need not defend them and was "not liable for any judgment" that might be rendered against them in the Athridges 1989 lawsuit.

19.    In filing the declaratory judgment action, GEICO willfully refused to follow Superior Court Rule 19(a), which mandates the joinder of parties necessary for complete relief or whose absence would leave existing parties vulnerable to inconsistent obligations. GEICO further willfully failed to abide by Superior Court Rule 19(c), which mandates identification of such persons and the reasons for nonjoinder.

20.    GEICO's willful failure to abide by Superior Court Rule 19 prejudiced the Rivases, to whom GEICO owed a fiduciary duty, because in the Athridges' absence, the declaratory judgment action could have no effect on the Athridges' claim against the Rivases. GEICO failed to inform the Rivases of their potential exposure because of this omission. GEICO's failures left the Rivases financially exposed and uninformed.

21.    GEICO's willful failures set forth above further had the result of causing Plaintiffs severe emotional distress.

22.    In the declaratory judgment action, GEICO had the Rivases represented by Mr. Grimaldi, the same attorney who was defending them in the Athridges' 1989 lawsuit.

23.    To defend against the allegations of GEICO's declaratory judgment action, Mr. Grimaldi necessarily would have been obligated to take a position on behalf of the Rivases that was substantially inconsistent with the Rivases' position in their defense of the lawsuit brought by the Athridges.

24.    Rather than respond to the allegations of GEICO's declaratory judgment action, Mr. Grimaldi obtained an affidavit from Mr. Rivas that GEICO used to support a motion for summary judgment against Jorge Iglesias.  Jorge Iglesias defaulted on the motion and as a result GEICO obtained a summary judgment against him on June 6, 1990.

25.    Mr. Grimaldi acted as the agent and attorney for both GEICO and the Rivases in the declaratory judgment action, thereby putting himself in a conflict of interest position.

26.    On March 7, 1990, GEICO dismissed its declaratory judgment action against Francisco Rivas and the Restaurant with prejudice.

**GEICO's Investigation and Failure to Attempt to Settle**

27.    Before the Athridges filed their 1989 lawsuit, GEICO had investigated the facts relating to the Accident.

28.    GEICO's investigation was negligent and incomplete.  GEICO failed to interview the officer who headed the investigation of the Accident.  GEICO also failed to interview Panchi Rivas, although a GEICO claims representative suspected that Panchi was instrumental in Jorge Iglesias' ability to drive the Rivases' car and his borrowing of the Rivases' car and the GEICO Policy covered Jorge Iglesias if his liability was caused by the acts or omissions of Panchi Iglesias.

29.    Despite its inadequacy, GEICO's investigation nevertheless developed essentially the same facts that the D.C. Circuit, in *Athridge v. Rivas*, 312 F.3d 474, 478 (D.C. Cir. 2002), held would support a jury verdict in favor of the Athridges and against the Rivases.  GEICO forwarded its pre-complaint investigation to its insurer-appointed defense counsel for the Rivases.  GEICO knew before any complaint was filed that Tommy Athridge had been seriously injured and thus if the Rivases were found liable, the amount of the judgment would far exceed its alleged policy limits.

30.    While defending its insureds without reservation of any rights including the right to limit its exposure to policy limits, GEICO violated its fiduciary duty to keep its insureds fairly and fully informed of all developments in the Athridges' lawsuits against the Rivases that bore on their financial exposure or the settlement of claims against them.  For example, neither GEICO nor its agent, Mr. Grimaldi, informed the Rivases that they could be vicariously liable for the negligent actions of Jorge Iglesias if he was found to be operating with their consent, either express or implied.  Neither were the Rivases informed that they could be liable for negligently providing Jorge Iglesias unsupervised access to their car keys.  As a further example, on December 3, 1991, Hilda Rivas told a staff member of Mr. Grimaldi that she wanted GEICO to settle the case and pay out money to the Athridges.  Despite her specific request, GEICO still refused to initiate any attempt at settlement.

31.    Instead, in 1992, Mr. Grimaldi took Jorge Iglesias' motion default in the declaratory judgment action and demanded that the Athridges dismiss their complaint against Francisco Rivas and the Restaurant, threatening sanctions.  Mr. Grimaldi attempted this tactic, which had no legal basis, in order to try to deny a claimant victim of

7

traumatic brain injury insurance benefits claim mandated by the D.C. compulsory no-fault law and the Motor Vehicle Safety Responsibility Act ("MVSRA").

32.    Mr. Grimaldi initially attempted the same bluff before Judge Jackson, the District Court Judge presiding over the Athridges' federal lawsuits against the Rivases. Mr. Grimaldi intimated that the Athridges were bound by Jorge Iglesias' default. When Judge Jackson told Mr. Grimaldi to file a motion for summary judgment on that basis, Mr. Grimaldi failed to do so. Instead, he filed a motion based on "permissive use." Mr. Grimaldi's actions were an implied admission that the default judgment against Jorge Iglesias had no effect. The Athridges' attorney in response pointed out that Mr. Grimaldi's motion was not on the ground he had touted before the Court and opposed the motion based on the presumption created by D.C.'s MVSRA and on inconsistencies in Jorge Iglesias' deposition testimony.

33.    Judge Jackson denied Mr. Grimaldi's motion in early 1992. Despite this ruling, Mr. Grimaldi made no effort to initiate settlement discussions, thus willfully exposing the Rivases to a devastating judgment.

34.    At a status call, Judge Jackson later explained that the D.C. declaratory default could have no effect on the Athridges' lawsuit because the Athridges had not been named parties to that action. GEICO then approached its outside insurance coverage counsel about what course to take in light of Judge Jackson's ruling, and whether it should file another declaratory judgment action naming the Athridges. GEICO's insurance coverage counsel recommended that GEICO not do so, but instead hold the worthless declaratory judgment default against Jorge Iglesias in reserve as a basis to appeal any adverse federal court jury finding against the Rivases.

35.    GEICO's continued failure to initiate settlement discussions and its decision to rely on the default judgment against Jorge Iglesias exposed the Rivases to financial disaster on a meritless ground.

36.    On July 19, 1995, Judge Jackson *sua sponte* reversed his previous denial of the Rivases' motion for summary judgment and without notice granted summary judgment to the Rivases in the consolidated cases.  The Athridges timely appealed and in January 1998, the D.C. Circuit reversed the judgment against the Rivases and remanded the case to the District Court. *Athridge v. Rivas*, 141 F.3d 357, 261-62 (D.C. Cir. 1998),

**The Iglesias Trial and GEICO's Continued Refusal to Attempt to Settle**

37.    On August 14, 1995, the District Court issued a scheduling notice to all counsel of record in Civil Action No. 89-1222, setting a date for trial of the Athridges' lawsuit against Jorge Iglesias.

38.    Although Mr. Grimaldi received notice of the scheduled trial and was aware that the dismissal of the claims against the Rivases were being appealed, he made no effort to intervene in the trial to protect the Rivases' interest in any damages awarded in the event the judgment in the Rivases' favor was reversed on appeal, as in fact occurred.  To the contrary, after Judge Jackson's *sua sponte* summary judgment in favor of the Rivases, Mr. Grimaldi simply closed his file and informed GEICO that the Rivases were out of the case as a result of Judge Jackson's *sua sponte* action.

39.    In 1996, with the trial date approaching for the Iglesias case, the Athridges offered to settle with Jorge Iglesias in return for an assignment of rights against the insurers involved.  The Athridges also offered to extend that settlement to the Rivases,

which would have absolved them of any financial responsibility, but the Athridges never heard anything from them or from defense counsel.

40.    During the 1995-98 pendency of the appeal of Judge Jackson's judgment, GEICO refused to consider any possibility of settlement. For example, defense counsel, on behalf of GEICO, wrote to the court-assigned mediator advising that GEICO had no intention of making a voluntary settlement contribution given the then present state of the record.

41.    On November 8, 1996, Judge Harold Greene of the District Court, after a bench trial, found Jorge Iglesias liable. Judge Greene found that Tommy had suffered numerous physical injuries, including a broken shoulder, compound fractures of the leg, physical scars, and disfigurement, and most notably severe, permanent and widespread brain damage. He entered judgment in favor of the Athridges in the amount of $5,510,010.78 and directed that Defendant Iglesias convey his chose in action rights, *inter alia,* against insurers, to the Athridges. See *Athridge v. Iglesias*, 950 F. Supp. 1187 (D.D.C. 1996), *summarily aff'd,* 1997 WL 404854 (D.C. Cir. 1997).

42.    As Judge Greene directed, Jorge Iglesias assigned all his choses in action to the Athridges. Thereafter, Jorge Iglesias declared bankruptcy and the Athridges were unable to collect any amount of the judgment from him.

## The Rivases' Proceedings and Trial

43.    After the D.C. Circuit remanded the Athridges' lawsuits against the Rivases to the District Court, the lawsuits were assigned to U.S. Magistrate Judge John Facciola. On June 4, 1999, the Athridges moved that Magistrate Judge Facciola direct the Rivases to join GEICO as an additional party in the case and to file and serve on GEICO a summons and third-party complaint attached to the motion seeking indemnity from GEICO.

44.    Joinder of GEICO as a third-party defendant would have been in the Rivases' economic interests because it would have enabled them to avoid a substantial delay in determining their rights against GEICO if they were found liable to the Athridges for a substantial excess judgment. Mr. Grimaldi, at GEICO's direction, nonetheless opposed the Athridges' motion on grounds solely relevant to GEICO and not to the Rivases.

45.    The Athridges made another settlement offer to defense counsel by letter of January 27, 2000. GEICO ignored this proposal.

46.    On November 14, 2000, Magistrate Judge Facciola denied without prejudice the Athridges' motion to have GEICO joined as a third-party. He asserted that the question of GEICO's liability, if any, to the Rivases, if the latter were held liable, was premature and that he did not have to reach this question. *Athridge v. Iglesias,* 2000 WL 1780273, *5 (D.D.C. 2000).

47.    On October 15, 2001, Magistrate Judge Facciola entered summary judgment in favor of the Rivases. *Athridge v. Rivas*, 167 F. Supp.2d 389 (D.D.C. 2001). The Athridges again appealed, and on December 17, 2002, the D.C. Circuit reversed a second time, holding that evidence that GEICO possessed in its pre-complaint

investigation created issues of material fact, which needed to be resolved by a jury. *Athridge v. Rivas*, 312 F.3d 474 (D.C. Cir. 2002).

48.     When the D.C. Circuit selected the cases for mediation during the second appeal, GEICO once again declined to offer anything in the way of settlement.

49.     On August 29, 2003, the Athridges renewed their motion that the Court direct the Rivases to file a third-party complaint against GEICO for indemnity.

50.     Mr. Grimaldi again opposed the Athridges' motion on grounds that related solely to the interests of GEICO and not the interests of the Rivases. At all times, Mr. Grimaldi represented the interests of GEICO over those of the Rivases, in a plain conflict of interest situation.

51.     On December 31, 2003, the Magistrate Judge denied the Athridges' motion. He again asserted that the motion was premature and that he did not need to reach the issue of whether GEICO should be joined prior to adjudication of their liability.

52.     On January 12, 2005, the District Court jury returned a verdict in favor of the Athridges and against the Rivases on the Athridges' claims of statutory liability under the District of Columbia Motor Vehicle Safety Responsibility Act and of negligently allowing Jorge Iglesias access to the keys to the Rivases' car

53.     On August 12, 2005, Magistrate Judge Facciola rejected the Athridges' claim for prejudgment interest against the Rivases and entered a paper entitled judgment in the amount of $5,510,010.78 in favor of the Athridges and against the Rivases ("Judgment"). On August 15, 2005, the Magistrate entered a separate paper entitled "Final Judgment." On March 23, 2006, the District Court denied the Rivases' motion for judgment as a matter of law or for a new trial.

12

54.    GEICO has never offered the Rivases or the Athridges the full amount of coverage allegedly available under its policy of insurance plus the full amount of interest and costs on the Rivas Judgment.

55.    The Athridges and the Rivases both filed appeals from the Rivas Judgment to the D.C. Circuit.

56.    During the pendency of the appeals, GEICO did not assist the Rivases in obtaining a supersedeas bond, despite the District Court's ruling that it might have a duty to do so. GEICO also failed to pay for the costs of a supersedeas bond.

**Settlement Agreement**

57.    While the appeals were pending, on September 7, 2007, the Athridges and the Rivases entered into a settlement agreement ("Settlement Agreement") settling all claims between them.

58.    Prior to entering into the Settlement Agreement, on August 28, 2007, the Rivases provided GEICO with a draft of the Settlement Agreement and asked GEICO whether it wanted to participate in any settlement. GEICO refused.

59.    As part of the Settlement Agreement, the Rivases assigned to the Athridges all their choses of action that they might possess against GEICO, except for Rivases' claim against GEICO for damages for infliction of emotional or mental distress. The Athridges, as judgment creditors of the Rivases, also have independent standing to seek enforcement of the Rivases' rights under any policy of insurance issued by GEICO to the Rivases.

## COUNT ONE

### (Indemnity)

60.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

61.    The Athridges and the Rivases have performed and complied with all the terms, conditions precedent, obligations, and provisions contained in the specimen policy form, except as to that performance that has been excused, waived, or prevented by the representations, misrepresentations, acts, or omissions of GEICO.

62.    Under the specimen policy form, GEICO is liable to indemnify Plaintiffs for the face value of coverage for insureds, plus court costs charged to the Rivases, plus accrued interest on the Rivas Judgment until GEICO has tendered or paid into Court that part of the Judgment not exceeding the full amount of liability coverage provided. GEICO has breached this obligation under the specimen policy form.

63.    Plaintiffs are therefore entitled to the full amount of liability coverage provided, plus court costs charged to the Rivases, plus accrued interest on the Rivas Judgment until the date of any judgment in this action.

## COUNT TWO

### (Indemnity-Res Judicata)

64.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

65.    As a result of dismissing its declaratory judgment action against the Rivases with prejudice, GEICO is barred by res judicata from contesting liability for the Rivas Judgment.

66.    Plaintiffs are therefore entitled to the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs.

## COUNT THREE

### (Indemnity - Estoppel)

67.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

68.    GEICO had a duty to defend the Rivases in the lawsuits brought by the Athridges. It controlled the defense of the Athridges' lawsuits without any reservation of rights.

69.    GEICO is estopped from contesting liability for the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs.

## COUNT FOUR

### (Breach of Contract)

70.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

71.    Implied as a matter of law in the Policy is a duty to exercise due care and to abide by a covenant of good faith and fair dealing, by which GEICO necessarily undertook to consider the Rivases' interests equally with its own interests and to do nothing to deny the Rivases the coverage and defense which had been contracted for the Rivases' benefit.

72.    GEICO also owed the Rivases a fiduciary duty of scrupulous good faith and candor requiring that GEICO make full disclosure of all information material to its dealings with them.

73.    GEICO breached its duties of diligence, good faith and conscientious fidelity to safeguard the interests of the Rivases under the Policy and pursued its own interests over those of the Rivases by (a) controlling the defense of the Athridges' lawsuits against the Rivases despite the conflicts between GEICO's and the Rivases' interests; (b) falsely representing that Mr. Grimaldi would do his best to defend the Rivases' interests when in light of the conflict of interest between the Rivases and GEICO, Mr. Grimaldi put GEICO's interests ahead of those of the Rivases; (c) controlling through GEICO appointed and paid counsel both sides of the declaratory judgment action against the Rivases, in effect creating a "sham litigation," in violation of GEICO's fiduciary duty of candor to the Rivases and its litigant's duty of candor to this Court; (d) failing to join the Athridges in the declaratory judgment action, which made the default judgment against Jorge Iglesias worthless as to the Athridges, and then attempting to rely on the worthless default judgment rather than attempting to settle the Athridges' lawsuits; (e) failing to attempt to settle the Athridges' lawsuits against the Rivases in a timely manner; (f) having Mr. Grimaldi oppose joinder of GEICO in the Athridges' lawsuits, thereby causing a delay in any determination of the Rivases' rights against GEICO in the event of a judgment in favor of the Athridges; and (g) failing to facilitate and pay the costs of the Rivases' posting a bond to stay execution of the Rivas Judgment.

74.    Plaintiffs are therefore entitled to the amount of the Rivas Judgment, plus pre- and post-judgment interest and costs, plus all losses caused by the breach, including but not limited to attorneys' fees.

## COUNT FIVE

### (Tortious Breach of Duty of Good Faith and Fidelity)

75.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 and 71 through 72 as though fully set forth herein.

76.    GEICO tortiously breached its duties of diligence, good faith and conscientious fidelity to safeguard the interests of the Rivases under the Policy and pursued its own interests over those of the Rivases by (a) controlling the defense of the Athridges' lawsuits against the Rivases despite the conflicts between GEICO's and the Rivases' interests; (b) falsely representing that Mr. Grimaldi would do his best to defend the Rivases' interests when in light of the conflict of interest between the Rivases and GEICO, Mr. Grimaldi put GEICO's interests ahead of those of the Rivases; (c) controlling through GEICO appointed and paid counsel both sides of the declaratory judgment action against the Rivases, in effect creating a "sham litigation," in violation of GEICO's fiduciary duty of candor to the Rivases and its litigant's duty of candor to this Court; (d) failing to join the Athridges in the declaratory judgment action, which made the default judgment against Jorge Iglesias worthless as to the Athridges, and then attempting to rely on the worthless default judgment rather than attempting to settle the Athridges' lawsuits; (e) failing to attempt to settle the Athridges' lawsuits against the Rivases in a timely manner; (f) having Mr. Grimaldi oppose joinder of GEICO in the Athridges' lawsuits, thereby causing a delay in any determination of the Rivases' rights against GEICO in the event of a judgment in favor of the Athridges; and (g)  failing to facilitate and pay the costs of the Rivases' posting a bond to stay execution of the Rivas Judgment.

77.    Plaintiffs are therefore entitled to the amount of the Rivas Judgment, plus pre- and post-judgment interest and costs, plus all losses caused by the breach, including but not limited to attorneys' fees, plus damages for emotional injury and punitive damages.

## COUNT SIX

### (Breach of Contract-Jorge Iglesias)

78.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

79.    Under the District of Columbia's compulsory no-fault Act and the MVSRA, GEICO owed a duty to defend and indemnify Jorge Iglesias if he had consent, express or implied, under the MVSRA to operate the Rivas' automobile..

80.    The District Court jury's finding, embodied in the Rivas Judgment, that Jorge Iglesias' use of the Rivases' car was consensual within the meaning of the MVSRA means that GEICO had a duty to defend and indemnify Jorge Iglesias as an "insured." As a matter of law, the MVSRA brings Jorge Iglesias within the coverage of any D.C. policy issued by GEICO.

81.    The default summary judgment that GEICO obtained in the declaratory judgment action at most determined only that Jorge Iglesias did not have "permission" (i.e., express consent) to use the Rivases' car.  It did not determine whether his use was consensual within the meaning of the MVSRA, as to which there was neither any declaration nor even mention.

82.    Plaintiffs, as court-ordered assignees of Jorge Iglesias, are therefore entitled to the full amount of damages entered in the federal court tort actions against

Iglesias and the Rivases amount of the Rivas Judgment, plus pre- and post-judgment interest and costs, plus all losses caused by breach or the duty to defend, including but not limited to attorneys' fees.

## COUNT SEVEN

### (Spoliation)

83.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through __ as though fully set forth herein.

84.    GEICO had a duty to preserve the Policy after being notified of the Accident.

85.    Despite this duty, GEICO destroyed the cover page of the Policy in accordance with its standard practice.

86.    GEICO's destruction of the cover page was intentional.

87.    GEICO's destruction of the cover page was negligent.

88.    As a result of the destruction of the cover page, it is not possible to determine with certainty the identity of the insureds or the limits of the Policy.

89.    GEICO therefore is barred from contesting liability for the full amount of the Rivas Judgment, plus pre- and post- judgment interest and costs.

90.    Plaintiffs are therefore entitled to the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs.

## COUNT EIGHT

### (Violation of DC Consumer Protection Procedures Act)

91.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

92.    The Rivases are "consumers," and the insurance services GEICO supplies are "consumer services," within the meaning of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 et seq.

93.    GEICO misrepresented or failed to disclose material facts that misled or tended to mislead within the meaning of the District of Columbia Consumer Protection Procedures Act including but not limited to: (a) stating that Mr. Grimaldi would do his best to protect the Rivases' interests as well as GEICO's and that the Rivases "need not" hire their own attorney; and (b) failing to disclose to the Rivases the results of its investigation, but instead through Mr. Grimaldi assuring that they faced no liability for the Accident, which negatively impacted the Rivases' willingness to contribute any money to a settlement.

## COUNT NINE

### (Intentional Infliction of Emotional Distress)

94.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

95.    GEICO by itself and through Mr. Grimaldi placed its interests above those of the Rivases.

96.    GEICO's acts intentionally inflicted severe emotional distress on those Plaintiffs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered for the following relief:

A.    Compensatory damages in the amount of $5,510,000.78.

B.    Prejudgment interest on that amount from November 8, 1996.

C.    Damages for emotional injury in an amount to be determined at trial.

D.    Treble damages, punitive damages, and reasonable attorneys' fees under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3905(k)(1).

E.    General punitive damages in an amount to be determined at trial.

F.    Reasonable attorneys' fees for advising and representing Plaintiffs in this action.

G.    Costs and post-judgment interest as determined by law.

H.    Any other just and equitable relief the Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated:  November 15, 2007                Respectfully submitted,

Michael H. Selter, #219550
Manelli Denison & Selter, P.L.L.C.
2000 M Street, NW, #700
Washington, D.C.  20036
(202) 261-1000


Attorney for Plaintiffs
Thomas P. Athridge, Thomas P. Athridge,
Jr. and Mary T. Athridge


Patrick A. Malone, # 397142
Patrick Malone & Associates, P.C.
1331 H Street N.W.
Suite 902
Washington, DC 20005
(202) 742-1500


Attorney for Plaintiffs
Francisco and Hilda Rivas

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 07-1740 (JR) |
| FRANCISCO RIVAS, *et al.* | ) ) ) |
| Defendants. | ) ) |

## <u>ORDER</u>

Upon consideration of Defendants' Motion to Dismiss or to Stay, Plaintiff's Opposition thereto, and the entire record in this case, it is hereby

ORDERED that Defendants' Motion is granted and that this case is hereby DISMISSED.

Dated: December __, 2007

_____
U.S.D.J.