### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------------X
GOVERNMENT EMPLOYEES                        :
INSURANCE COMPANY,                          :
                                            :
            Plaintiff,                      :
                                            :
            - against -                     :        No. 1:07-CV-01740-JR
                                            :
FRANCISCO RIVAS                             :
HILDA RIVAS,                                :
                                            :
            Defendants.                     :
-------------------------------------------------------------X
```

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TO STAY

This is an unusual case. The underlying dispute arises out of an automobile accident from 1987 in which Thomas P. Athridge, Jr. ("Tommy") was injured. The accident spawned numerous lawsuits filed by Tommy and his parents, collectively, the "Athridges." The underlying lawsuits named as defendants Francisco and Hilda Rivas, the "Rivases," and many other parties.

Government Employees Insurance Company ("GEICO") had entered into an insurance contract with Francisco Rivas (the "Insurance Contract") providing automobile coverage with a $100,000 per person policy limit for bodily injury. Pursuant to the Insurance Contract terms, GEICO has provided a full defense to the Rivases for nearly 20 years and has spent hundreds of thousands of dollars in defense fees. Moreover, on several occasions, GEICO has offered to pay the liability limits to settle this dispute. The Athridges, however, never offered to settle within limits.

After numerous motions, trials, and appeals, on January 12, 2005, a jury found the Rivases liable, and the Athridges were ultimately awarded approximately $5.5 million in damages.  The Rivases appealed with GEICO paying for appellate counsel.  However, on September 7, 2007, the Rivases entered into a settlement agreement with the Athridges and dismissed the meritorious appeal pending at that time.

The Rivases now claim that, somehow, GEICO is responsible for the multi-million dollar judgment entered against them notwithstanding the Insurance Contract's $100,000 per person policy limit for bodily injury.  After learning that the Rivases would dismiss the appeal, GEICO filed this lawsuit to determine its rights and obligations under the Insurance Contract.  More than a month later, the Rivases and the Athridges filed a separate suit in Superior Court for the District of Columbia (the "Superior Court").

In their motion, the Rivases ask the Court to dismiss or to stay this lawsuit.  They contend that the Athridges are necessary and indispensable parties to this case even though the Insurance Contract is between GEICO and the Rivases.  The Rivases also argue that the Court should exercise its discretion to dismiss or to stay this lawsuit due to their filing of the Superior Court action.

For the reasons discussed below, the Court should deny the Rivases' motion.  As the party seeking dismissal, the Rivases have the burden to establish that the Athridges are necessary and indispensable parties.  As shown in this Memorandum, they fail on each count.  In addition, the Court should allow this lawsuit to proceed, notwithstanding the subsequently-filed Superior Court action.

## BACKGROUND

### I.     UNDERLYING LITIGATION

While out of the country in July 1987, the Rivases had asked Jorge Iglesias ("Jorge"), the son of Hilda Rivas' cousin, to check their house and mow the lawn while they were away. Compl. ¶ 8. On July 27, 1987, when visiting to mow the lawn, Jorge impulsively decided to take the Rivases' automobile for a joyride. Compl. ¶ 9. While driving the automobile, Jorge injured Tommy. Compl. ¶ 10.

As a result of the accident, the Athridges filed several lawsuits in this court (the "District Court"), one of which is still being litigated.[1] Compl. ¶ 14-15. The Athridges pursued claims against Jorge, Jorge's parents, the Rivases, the Rivases' restaurant, and Aetna Casualty and Surety Company ("Aetna"), which had issued an insurance policy to Jorge's father for automobile coverage. Compl. ¶ 14-15. Many of the Athridges' lawsuits were ultimately consolidated. Compl. ¶ 15.

The underlying litigation continued and, eventually, the District Court granted summary judgment in favor of all defendants, except for Jorge. Compl. ¶ 18. On November 8, 1996, after a bench trial, the District Court found Jorge liable for negligence and awarded the Athridges $5,510,010.78. Compl. ¶ 19. Jorge then declared bankruptcy. Compl. ¶ 19. After the November 8, 1996 ruling, the Athridges appealed the District Court's grant of summary judgment in favor of the Rivases, Jorge's parents, and Aetna. Compl. ¶ 20.

The United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") affirmed summary judgment in favor of Jorge's parents and Aetna. Compl. ¶ 21. However, the D.C. Circuit reversed the grant of summary judgment for the Rivases and

---

[1] *Athridge v. Aetna Casualty & Surety Co.*, 96- 2708 (D.D.C.).

remanded the case. Compl. ¶ 21. After the remand, the Rivases filed another motion for summary judgment, which the District Court granted. Compl. ¶ 22. On appeal, the D.C. Circuit reversed and remanded the case again because of a genuine issue of material fact. Compl. ¶ 23.

The case was ultimately tried to a jury on the issue of liability. Compl. ¶ 24. The parties stipulated that, if found liable, the Rivases would be bound by the November 8, 1996 decision establishing damages at $5,510,010.78. Compl. ¶ 24. On January 12, 2005, the jury returned a verdict against the Rivases. Compl. ¶ 24.

The Rivases' appealed and argued that the trial court's decision should be reversed for numerous reasons. Compl. ¶ 25. Regarding the Athridges' claim based on the District of Columbia Motor Vehicle Safety Responsibility Act, the Rivases argued that the statutory presumption of consent was fully rebutted with uncontradicted evidence. Compl. ¶ 26. With respect to the negligence claim, the Rivases contended that the Athridges failed to prove that they were negligent or that the alleged negligence proximately caused Tommy's injuries. Compl. ¶ 26.

## II.    TOLLING AGREEMENT

While the appeal was pending, the Rivases' counsel asked GEICO to enter into a tolling agreement. Durst Aff., Ex. 1 (Oct. 18, 2006 letter from Mr. Malone to Ms. Durst). Counsel stated that the Rivases wanted to "give the appellate process a chance to work before having to file any litigation" against GEICO. Durst Aff., Ex. 1. GEICO agreed. Todd Aff., Ex. 1, Pg. 2 (Nov. 13, 2006 letter from Ms. Todd to Mr. Malone). On January 31, 2007, the parties finalized the tolling agreement (the "Tolling Agreement"). Andrews Aff., Ex. 3. The appellate oral argument took place on May 11, 2007. Compl. ¶ 27.

### III.   SETTLEMENT AGREEMENT AND DISMISSAL OF APPEAL

As far as GEICO was concerned, the Rivases would "give the appellate process a chance" as they had indicated when attempting to enter into a tolling agreement. Durst Aff., Ex. 1. On August 16, 2007, however, while the appeal was pending, the Rivases' counsel informed GEICO that the Rivases and the Athridges were attempting to finalize a settlement. Compl. ¶ 28; Andrews Aff., Ex. 1 (Aug. 23, 2007 letter from Mr. Andrews to Mr. Malone). GEICO was not informed of any settlement discussions prior to August 16. Andrews Aff., Ex. 1. GEICO asked the Rivases for an opportunity to participate in the settlement discussions. Andrews Aff., Ex. 1. In their response on August 28, 2007, the Rivases advised GEICO that "the basic terms of the" settlement agreement between the Rivases and the Athridges "have been agreed to" and forwarded a nine-page "draft" settlement agreement. Compl. ¶ 29; Andrews Aff., Ex. 2 (Aug. 28, 2007 letter from Mr. Malone to Messrs. Andrews and Ranck).

On September 7, 2007, the Rivases and the Athridges executed the settlement agreement (the "Settlement Agreement") and filed a joint motion to voluntarily dismiss the appeal the same day. Ex. 1, Settlement Agreement; Compl. ¶ 30.[2] The D.C. Circuit granted the motion on September 24, 2007. Compl. ¶ 30. GEICO did not approve of the Rivases dismissing the appeal, which prevented the D.C. Circuit from addressing the numerous persuasive reasons advanced by the Rivases why the trial court's decision should be reversed. Compl. ¶ 31. GEICO was not provided a copy of the Settlement Agreement until the Superior Court action was filed. Compl. ¶ 32.

---

[2] A copy of the Settlement Agreement was included with the Rivases' Motion to Dismiss or to Stay. It is attached as Exhibit 1 to this Memorandum for ease of reference.

The Settlement Agreement requires the Rivases and the Athridges to "take all necessary steps to pursue" claims against GEICO. Ex. 1, Pg. 4. Moreover, the Rivases and the Athridges "shall cooperate with the other Party in their pursuit of the" claims against GEICO. Ex. 1, Pg. 4. Finally, any recovery from GEICO will be shared between the Rivases and the Athridges. Ex. 1, Pg. 4.

## IV.    THE INSURANCE CONTRACT AND GEICO'S ACTIONS

As noted above, the Rivases and GEICO entered into the Insurance Contract. Compl. ¶ 11. The contract provides automobile coverage for the period of November 25, 1986 through November 25, 1987. Compl. ¶ 11. As relevant here, the limit of coverage for bodily injury is $100,000 per person. Compl. ¶ 12.

From the outset, GEICO has provided a full defense to the Rivases in the underlying lawsuits brought by the Athridges, including several appeals at the D.C. Circuit. Compl. ¶ 33. In so doing, GEICO has paid hundreds of thousands of dollars in defense costs. Compl. ¶ 33. Throughout the underlying litigation, GEICO has reminded the Rivases that they only had $100,000 in policy limits, advised them of the risk of a judgment exceeding that amount, and stated that they could retain personal counsel to protect their interests. Compl. ¶ 34. The Rivases chose to not retain personal counsel until recently. Compl. ¶ 35.

In addition, GEICO made clear on numerous occasions that the $100,000 in policy limits was available to settle the case against the Rivases. Compl. ¶¶ 36, 44-45. The Athridges never accepted GEICO's offers to settle. Compl. ¶ 37. There was never an opportunity to settle the Athridges' claims against the Rivases within policy limits. Compl. ¶¶ 38-40. In fact, in their Superior Court complaint, the Athridges do not allege that they would have settled for $100,000

or that they ever made any settlement demand within policy limits.  Ex. 2, Complaint, *passim*.[3]
On numerous occasions, GEICO had asked the Rivases if they would make any contribution in
settlement negotiations in addition to the $100,000 that GEICO had consistently offered.  Compl.
¶ 41.  The Rivases chose not to do so.  Compl. ¶¶ 42-43.

The Rivases now claim that, notwithstanding the $100,000 policy limit in the Insurance
Contract, GEICO is responsible for the multi-million dollar judgment.  *See, e.g.*, Andrews Aff.,
Ex. 2.  As a result, in this lawsuit, GEICO asks the Court to declare its rights and obligations
under the Insurance Contract.

The Rivases, however, have filed a motion to dismiss or to stay this action.  They claim
that the Athridges are indispensable parties.  Moreover, the Rivases ask the Court to exercise its
discretion and to dismiss or to stay this lawsuit because of the subsequently-filed Superior Court
action.  As shown below, the Court should deny the Rivases' motion.

## ARGUMENT

## I.    THE RIVASES HAVE NOT SHOWN THAT THE ATHRIDGES ARE INDISPENSABLE PARTIES.

As the parties asking the Court to dismiss this case pursuant to Rule 12(b)(7), the Rivases
have the burden to establish that GEICO failed to join a party required under Rule 19.  *See
Brinco Mining Ltd. v. Fed. Ins. Co.*, 552 F. Supp. 1233, 1239 (D.D.C. 1982) (concluding that
"the defendant has failed to meet his burden as the moving party to make out a claim of
indispensability").  As an initial matter, the Rivases need to establish that the Athridges are
necessary parties.  *W. Md. R. Co. v. Harbor Ins. Co.*, 910 F.2d 960, 962-63 (D.C. Cir. 1990)
(noting that preliminary issue is whether absent party is necessary).  If that threshold requirement

---

[3] A copy of the Complaint filed in Superior Court was included with the Rivases' Motion
to Dismiss or to Stay.  It is attached as Exhibit 2 to this Memorandum for ease of reference.

is satisfied, then the Rivases also need to show that the Athridges are indispensable parties.[4]

*Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (determining whether party is indispensable is unnecessary if absentee is not necessary under Rule 19(a)).  As shown below, the Rivases fail on both counts.  Because the Athridges are not necessary or indispensable parties, the Court should deny the Rivases' motion.

### A.    The Athridges Are Not Necessary Parties.

Under Rule 19, a party may be necessary under the following circumstances:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).  In their Motion, the Rivases argue that the Athridges are necessary because, in their absence, complete relief cannot be accorded and the Athridges' ability to protect their interests may be impaired.  Mot., Pgs. 7-8.  The Rivases are wrong on each claim.

### 1.    Because The Insurance Contract Is Between GEICO And The Rivases, The Court Can Accord "Complete Relief."

To prevail, the Rivases are required to show that "complete relief" cannot be accorded without the Athridges being included in this lawsuit.  Fed. R. Civ. P. 19(a)(1).  "Complete relief" is required between existing parties.  *W. Md. R. Co.*, 910 F.2d at 963 (in two lawsuits involving

---

[4] The parties agree that the Athridges cannot be added to this litigation because their addition would destroy diversity jurisdiction.  Mot., Pg. 8.

multiple insured railroads, noting that "[e]ven in the absence of some of the railroads, the court could accord complete relief in each case *to those already parties*") (emphasis added); *accord Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 209 (2d Cir. 1985); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) ("complete relief" refers to "relief between the persons already parties"). The Rivases have failed to show that the Athridges' absence precludes "complete relief" with respect to GEICO's claims against the Rivases.

Courts have made clear that claims involving a contract can be adjudicated if the parties to the agreement are present. *See, e.g., Inmobiliaria Axial, S.A. de C.V. v. Robles Int'l Servs., Inc.*, No. 07-00269, 2007 WL 2973483 (W.D. Tex. Oct. 11, 2007) (holding that "complete relief" could be afforded in suit involving agreement where all parties to agreement were present); *BB In Tech. Co. v. JAF, LLC*, 242 F.R.D. 632 (S.D. Fla. 2007) (same). Even in cases involving absent third-party beneficiaries to the contract at issue, courts have concluded that "complete relief" can be accorded as long as the contracting parties are in the litigation. *Underwriters at Lloyd's London v. Osting-Schwinn*, No. 05-1460, 2006 WL 947815 (M.D. Fla. Apr. 12, 2006).

In its complaint, GEICO seeks a declaration of its rights and obligations under the Insurance Contract. That contract is between GEICO and the Rivases. It is undisputed that the Athridges are not parties to the Insurance Contract. Because this suit involves a determination of GEICO's rights and obligations under the Insurance Contract, and all contracting parties are parties in this lawsuit, the Court can grant "complete relief" as required under Rule 19.

In their Motion, the Rivases do not address the cases above or numerous other similar rulings. Moreover, the Rivases do not argue that "complete relief" cannot be accorded with

respect to any claims that GEICO and the Rivases may have against each other. Rather, the Rivases claim that that the Athridges have "independent rights against GEICO" due to their judgment against the Rivases in the underlying litigation. Mot., Pg. 7. Therefore, according to the Rivases, a ruling in this case "cannot bind the Athridges" and, for this reason, the Court cannot determine GEICO's rights and obligations. Mot., Pg. 8.

The Rivases' argument is flawed because the focus on whatever rights the Athridges may have is simply not relevant under Rule 19(a). Fed. R. Civ. P. 19(a) (a party is necessary if in its absence, "complete relief cannot be accorded *among those already parties*") (emphasis added); *W. Md. R. Co.*, 910 F.2d at 963 ("[e]ven in the absence of some of the railroads, the court could accord complete relief in each case to those already parties"); *Arkright-Boston*, 762 F.2d at 209 ("the term complete relief refers only 'to relief as between persons already parties, and not as between a party and the absent person whose joinder is sought'"). A ruling by this Court regarding GEICO's rights and obligations under the Insurance Contract would result in "complete relief" between GEICO and the Rivases.

Accordingly, the Court should reject the Rivases' argument that "complete relief" cannot be accorded without the Athridges. The Athridges, therefore, are not necessary parties.

2.    The Athridges Are Not Necessary Parties Because Their Ability To Protect Their Interests Will Not Be Impaired.

Under Rule 19, a party can be necessary if, in its absence, its ability to protect its interest "as a practical matter" may be impaired or impeded. Fed. R. Civ. P. 19(a)(2)(i). In making this practical inquiry, courts evaluate the interests of the existing parties as well as the interests of the absent parties. *See Ohio Valley Envtl. Coalition v. Bullen*, 429 F.3d 493, 504-05 (4th Cir. 2005) (affirming district court's ruling that absent parties were not necessary because their interests were the same as the existing parties' interests). If the absent party's interests are represented by

an existing party, then, "[a]s a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit...." *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999); *see also Gwartz v. Jefferson Mem'l Hosp. Assoc.*, 23 F.3d 1426, 1429 (8th Cir. 1994) (in physician's suit against a hospital for wrongful termination, physician's professional corporation was not necessary because the physician had the same interest in establishing the same facts against the hospital).

As explained above, in this lawsuit, GEICO asks the Court to declare its rights and obligations under the Insurance Contract. The only parties under the Insurance Contract are GEICO and the Rivases. Moreover, the Rivases' interests in the litigation are identical to the Athridges' interest. The Settlement Agreement makes this clear:

> 8.    The Athridges and the Rivases shall take all necessary steps to pursue the GEICO Assigned Claims and the Emotional Damages Claims....

*    *    *

> 10.    The Athridges and the Rivases shall cooperate with the other Party in their pursuit of the GEICO Assigned Claims and the Emotional Damages Claims.

Ex. 1, Settlement Agreement, Pg. 4. Moreover, under the Settlement Agreement, the Rivases and the Athridges share any proceeds recovered from GEICO. Settlement Agreement, Pg. 4.

Based on the above, it is clear that the Rivases and the Athridges have the same interest regarding any claims against GEICO. Both parties want to recover what they contend is owed under the Insurance Contract. Under these circumstances, the Athridges' absence will not, as a practical matter, impair or impede their ability to protect their interests. *Gwartz*, 23 F.3d at 1429 (physician's professional corporation was not necessary in physician's suit against a hospital because the physician had the same interest in establishing the same facts against the hospital); *Washington*, 173 F.3d at 1167 ("[a]s a practical matter, an absent party's ability to protect its

11

interest will not be impaired by its absence from the suit" if the absent party's interests are represented by an existing party).

In their motion, the Rivases do not claim that their interests in this litigation are any different than the Athridges' interests. Moreover, the Rivases do not address the case law discussed above. Rather, the Rivases argue that, even though the Athridges will not be bound by this Court's ruling, an unfavorable ruling would constitute adverse precedent. Mot., Pg. 8. This, according to the Rivases, would harm the Athridges' interests. Mot., Pg. 8.

The cases that the Rivases cite to support their argument are inapposite. For example, in *Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116 (D. Del. 1989), the court concluded that the absent subsidiary, Iolab, was a necessary and indispensable party. In so ruling, the court relied on the fact that even though "Iolab is a wholly-owned subsidiary of a party[, that] does not necessarily mean that Iolab's interests are adequately protected by its parent corporation so as to negate Iolab's indispensability." *Johnson & Johnson*, 720 F. Supp. at 1125; *see also Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982) (specifically noting that the absent party "may have rights under this preliminary agreement not shared by" the existing parties). Unlike *Johnson & Johnson* and *Acton*, where the court relied on the fact that the absent party's interests were not adequately represented by the existing parties, in this case, there is no dispute that the Rivases' and the Athridges' interests are identical and that the Rivases have an incentive in prosecuting any claims against GEICO. Ex. 1, Settlement Agreement, Pg. 4 (providing that Rivases and Athridges share any proceeds recovered from GEICO).

Likewise, the other cases that the Rivases rely on do not support their position. In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968), for example, the Supreme Court assumed that the absent party was a necessary party under Rule 19. *Patterson*,

390 U.S. at 108.  Similarly, *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885 (5th Cir. 1979) involved materially different circumstances.  The plaintiff in that case brought suit to try title to real property.  Certain parties who had a leasehold interest in the minerals at the property were not included in the lawsuit.  Based on those facts, the court concluded that as "a practical matter," an adverse ruling "would reduce the economic value of the lease, injecting an element of uncertainly into all of the lessee's business transactions concerning the lease."  *Doty*, 598 F.2d at 887.  Like the other cases the Rivases rely on, *Patterson* and *Doty* did not consider the key facts in this case – *i.e.*, that the Rivases' interests in this litigation are the same as the Athridges' interests and that the Rivases have an incentive to prosecute all alleged claims against GEICO.  For these reasons, the Athridges' ability to protect their interests will not be impaired.

Accordingly, the Court should reject the Rivases' argument that the Athridges' ability to protect their interests will be impaired or impeded.  Therefore, the Athridges are not necessary parties.

### B.      Even If Necessary, The Athridges Are Not Indispensable Parties.

As shown above, the Athridges are not necessary parties in this litigation.  Therefore, the Court does not need to consider whether they would be indispensable under Rule 19(b).  *W. Md. R. Co.*, 910 F.2d at 962-63 (the court "need only decide whether an absent party is indispensable if it determines that" the party is necessary and cannot be joined).  However, even if relevant, the Athridges are not indispensable parties.

With respect to whether a party is indispensable, Rule 19 provides the following:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  Like the need to show that the Athridges are necessary parties, the Rivases also have the burden to establish that they are indispensable under Rule 19.  *Brinco Mining Ltd.*, 552 F. Supp. at 1239 ("the defendant has failed to meet his burden as the moving party to make out a claim of indispensability").  As shown below, the Rivases have failed to establish that the factors under Rule 19 support the conclusion that the Athridges are indispensable parties to this litigation.

1.    <u>The Athridges' Absence Will Not Prejudice Their Rights.</u>

The Rivases argue that the Athridges could be prejudiced by any ruling in this lawsuit because they cannot be joined to protect their interests.  Mot., Pgs. 9-10.  Under Rule 19(b), the mere fact that the absent party's interests could be affected by a ruling is not sufficient. *Coalition on Sensible Trans., Inc. v. Dole*, 631 F. Supp. 1382, 1386 (D.D.C. 1986) (noting that simply because an entity "has an interest in this suit and may be affected by it ... [is] not sufficient to qualify a party as indispensable"); *Swomley v. Watt*, 526 F. Supp. 1271, 1273 (D.D.C. 1981) (fact that absentee permit holder's interest would be affected by litigation did not make party indispensable).  The Rivases do nothing more than the defendants in *Dole* and

14

*Swomley* by alleging merely that the Athridges will be "prejudiced" in some unspecified way by any ruling from the Court. As in *Dole* and *Swomley*, the Court should reject the Rivases' argument and hold that the Athridges are not indispensable parties.

The Rivases' claim that the Athridges will somehow be "prejudiced" is flawed for an additional reason. The analysis under Rule 19(b) regarding prejudice is similar to whether the absent party's ability to protect its interests will be impaired under Rule 19(a). *See Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1498 n.9 (D.C. Cir 1995) (noting that the "inquiry as to prejudice under Rule 19(b) is the same as the inquiry under Rule 19(a)(2)(i) regarding whether continuing the action will impair the absent party's ability to protect its interest").

Therefore, in evaluating whether a party could be prejudiced due to its absence in the litigation, courts look at whether an existing party may represent the absent party's interest. *Dole*, 631 F. Supp. 1386 (holding that there was no prejudice requiring dismissal because there was "substantial identity of interests among the federal defendants and the state entities; all seek defeat of plaintiffs' claims"). Courts have applied the principles above under analogous circumstances. *See, e.g., Evangelical Lutheran Church in Am. v. Atl. Mut. Ins. Co.*, 173 F.R.D. 507, 508-09 (N.D. Ill. 1997).

*Evangelical Lutheran Church*, for instance, involved an underlying lawsuit alleging sexual molestation. In the subsequent coverage dispute between the insurer and the insured, the court concluded that the insured and the underlying plaintiff had an "identity of interest" with respect to claims against the insurer. In other words, they both sought coverage under the insurance contract at issue. Accordingly, the court held that the underlying plaintiff was not an indispensable party.

In this case, as described above, there is no difference between the Rivases' interests in claims involving GEICO and the Athridges' interests in the same claims. In fact, the Rivases do not even attempt to argue to the contrary. Moreover, unlike most other cases, the Rivases and the Athridges have actually entered into an agreement that requires the Rivases to protect whatever interests the Athridges may have in GEICO's claims. Ex. 1, Settlement Agreement, Pg. 4 (requiring the Athridges and the Rivases to "take all necessary steps to pursue" claims against GEICO and stating that the Rivases "shall cooperate" in those efforts).

In addition to their obligations under the Settlement Agreement, the Rivases have an incentive in prosecuting the claims against GEICO and protecting the Athridges' interests. Under the Settlement Agreement, the Rivases and the Athridges share any proceeds recovered from GEICO. Settlement Agreement, Pg. 4. These critical facts – the identical interests between the Rivases and the Athridges and the Rivases' incentive in prosecuting the claims against GEICO – were not present in the principal case that the Rivases rely on: *Hartford Cas. Ins. Co. v. Pixel Magic Imaging, Inc.*, No. 04-1093, 2005 U.S. Dist. LEXIS 21362 (W.D. Tex. June 20, 2005), *approved*, 2005 U.S. Dist. LEXIS 21361 (Sept. 6, 2005). *Pixel Magic Imaging*, accordingly, is inapposite. *Compare Pixel Magic Imaging*, 2005 U.S. Dist. LEXIS 21361 (no discussion of whether the insured and the claimants had similar interests) *with Dole*, 631 F. Supp. 1386 (relying on "substantial identity of interests" between existing parties and absent parties and concluding that absent parties were not indispensable).

For the reasons discussed above, the Athridges will not be prejudiced as a result of this lawsuit. Therefore, the Rivases have not met their burden to show that the Athridges are indispensable parties. The Court, accordingly, should deny the Rivases' motion.

2.    <u>Like The Athridges, The Rivases Will Not Be Unduly Prejudiced By Proceeding With This Lawsuit.</u>

In arguing that the Athridges are indispensable parties, the Rivases state that they "have an interest in avoiding" multiple litigation and inconsistent relief. Mot., Pg. 9. They then complain that they could be parties to this lawsuit and the Superior Court action. Mot., Pg. 9. In making these arguments, the Rivases gloss over the fact that *they* filed the Superior Court action *after* being named as defendants in this lawsuit.

The Court should disregard any claim of prejudice under such circumstances. *See A. J. Kellos Constr. Co., Inc. v. Balboa Ins. Co.*, 495 F. Supp. 408 (S.D. Ga. 1980), *rev'd on other grounds*, 661 F.2d 402 (5th Cir. 1981) (citing 3A Moore's Federal Practice Manual ¶ 19.07–2[1], at 19-166 (2d ed. 1979)). For instance, in evaluating whether a judgment in the lawsuit would prejudice existing parties under Rule 19(b), the *A. J. Kellos Construction* court noted that prejudice to the plaintiff is "rarely a consideration since the plaintiff has elected the forum and the parties...." *A. J. Kellos Constr.*, 495 F. Supp. at 414. Likewise, the Rivases' complaint about "multiple litigation" is based on their own decision to file suit in Superior Court after learning of this lawsuit.

Not surprisingly, the Rivases do not cite to any case dismissing a lawsuit under the circumstances present here; namely, based on a party's concern about "multiple litigation" when that party initiated the subsequently-filed suit. Having put themselves in the very predicament that they complain of now, the Rivases should not be allowed to dismiss this lawsuit because of alleged prejudice resulting from a lawsuit that they subsequently filed. Accordingly, the Court should reject the Rivases' motion.

II.    **THE COURT SHOULD NOT DISMISS OR STAY THIS CASE UNDER**
*BRILLHART/WILTON.*

In addition to relying on Rule 19, the Rivases contend that the Court should exercise its

discretion and dismiss or stay this case due to the subsequently-filed Superior Court action. This

argument is based on the Declaratory Judgment Act, which provides that a court "*may* declare

the rights and other legal relations of any interested party seeking such declaration...." 28

U.S.C. § 2201(a) (emphasis added). Under this statute, a district court has discretion to dismiss a

lawsuit or to enter a stay under certain circumstances. *See generally Brillhart v. Excess Ins. Co.*,

316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Under *Brillhart* and

*Wilton*, there are numerous factors that courts consider in determining whether to exercise their

jurisdiction. Mot., Pg. 12. As explained below, on balance, these factors support the conclusion

that this lawsuit should be allowed to proceed.

For instance, the Rivases argue that the District of Columbia has a "compelling local

governmental interest in having its courts apply its law." Mot., Pg. 13. Courts have rejected this

reasoning:

> [W]e do not think there is a compelling state interest in having the
> particular issues raised in this federal declaratory action decided in
> the state courts. * * * As the district court noted, all of the issues of
> insurance coverage raised here are governed by the substantive law
> of the State of Maryland. But that alone provides no reason for
> declining to exercise federal jurisdiction. In analogous situations in
> which a federal court possesses discretionary power to abstain
> from deciding state-law questions otherwise properly within its
> jurisdiction, that discretion may be exercised only when the
> questions of state law involved are difficult, complex, or unsettled.

*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 378 (4th Cir. 1994) (reversing district

court's dismissal of insurer's action seeking declaratory judgment). Like in *Winchester Homes*,

even though local law applies to GEICO's claims, there is no indication that this Court cannot

resolve the legal issues.

In addition, GEICO filed this lawsuit before the Superior Court action was initiated. After receiving a copy of the complaint, the Rivases chose to file suit in Superior Court. The Rivases attempt to dismiss this point by characterizing GEICO's actions as "procedural fencing." Mot., Pg. 13. To support their arguments, the Rivases speculate that "GEICO *apparently* filed suit" on the first day possible after terminating the Tolling Agreement "so that it could obtain a federal hearing…." Mot., Pg. 13 (emphasis added).

In advancing this "procedural fencing" claim, the Rivases ignore several important facts. *The Rivases*, not GEICO, asked to enter into the Tolling Agreement. Durst Aff., Ex. 1. GEICO agreed with *the Rivases'* request. Todd Aff., Ex. 1. GEICO then complied with the Tolling Agreement. When GEICO learned that the Rivases were dismissing a meritorious appeal, it terminated the Tolling Agreement pursuant to its terms. Andrews Aff., Ex. 3. Moreover, GEICO waited the time period required by the Tolling Agreement before filing suit to determine its rights and obligations. Andrews Aff., Ex. 3.

The Rivases' do not claim that GEICO violated the Tolling Agreement. Therefore, their contention that GEICO's actions were somehow improper is nothing more than mere conjecture and should be rejected accordingly. Moreover, the Court should take into account that GEICO filed this lawsuit before any other coverage litigation was initiated and did so pursuant to the Tolling Agreement it entered into with the Rivases' based on their request.

In their motion, the Rivases also miss another key issue. In cases involving motions under *Brillhart* and *Wilton*, the underlying litigation against an insured is ordinarily not in federal court. This is true for every case that the Rivases cite in their Motion. *See, e.g., Brillhart*, 316 U.S. at 492 (underlying suit brought in state court); *Wilton*, 515 U.S. at 279 (suit against insured filed in state court); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 966 (6th Cir. 2000)

(underlying tort suit based on alleged sexual assault filed in state court); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807 (6th Cir. 2004) (underlying personal injury action in state court).[5]  Typically, the insurer subsequently files suit in federal court seeking a declaratory judgment regarding its rights and obligations with respect to the underlying state court litigation. Based on the typical relationship between the state court litigation and the federal court lawsuit, one of the factors considered by courts is the significance of the facts and legal issues in the underlying litigation and the coverage litigation in federal court. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) (identifying as relevant factors, among other things, "whether the underlying factual issues are important to an informed resolution of the case" and determining whether the state or federal court "is in a better position to evaluate those factual issues").

In this case, the underlying litigation was not pending in Superior Court.  Rather, the numerous lawsuits filed by the Athridges related to the 1987 accident were filed in this court.  As illustrated below, it is *this* court, and the D.C. Circuit, that resolved the factual and legal issues in the underlying litigation spanning nearly 20 years:

> *Athridge v. Aetna Cas. & Surety Co.*, No. 96-2708, 2007 WL 2493479 (D.D.C. Sept. 5, 2007) (ruling on parties' cross-motions for summary judgment);
>
> *Athridge v. Aetna Cas. & Surety Co.*, No. 96-2708, 2007 WL 509224 (D.D.C. Feb. 13, 2007) (ruling on plaintiff's Emergency Motion for Partial Reconsideration and for a Stay filed on eve of trial);

---

[5] In three of the cases, there was apparently no underlying litigation. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1329-30 (11th Cir. 2005); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996); *Lewis v. Nat'l Football League*, 813 F. Supp. 1 (D.D.C. 1992).

*Athridge v. Aetna Cas. & Surety Co.*, 474 F. Supp. 2d 102 (D.D.C. 2007) (ruling on motions in limine);

*Athridge v. Rivas*, 464 F. Supp. 2d 19 (D.D.C. 2006) (ruling on Athridges' motion for order directing Rivases to convey their choses in action and Rivases' motion to stay execution on judgment);

*Athridge v. Aetna Cas. & Surety Co.*, No. 96-2708, 2006 WL 2844690 (D.D.C. Sept. 29, 2006) (ruling on parties' motions for summary judgment);

*Athridge v. Rivas*, 236 F.R.D. 6 (D.D.C. 2006) (ruling on Rivases' motion to deposit funds into registry of court and to stay execution on judgment);

*Athridge v. Rivas*, 421 F. Supp. 2d 140 (D.D.C. 2006) (ruling on Rivases' motions for a new trial or for judgment notwithstanding the verdict);

*Athridge v. Rivas*, 382 F. Supp. 2d 42 (D.D.C. 2005) (ruling on Athridges' motion seeking post-judgment and pre-judgment interest);

*Athridge v. Rivas*, 355 F. Supp. 2d 230 (D.D.C. 2005) (ruling regarding burden of proof for Athridges' claim based on District of Columbia's Motor Vehicle Safety Responsibility Act);

*In re Athridge*, No. 04-5070, 2004 WL 1071982 (D.C. Cir. May 12, 2004) (per curiam) (denying Athridges' petition for writ of mandamus);

*Athridge v. Aetna Cas. & Surety Co.*, 87 Fed. Appx. 186 (D.C. Cir. Jan. 23, 2004) (ruling on Athridges' petition for rehearing);

*Athridge v. Rivas*, Nos. 89-1222, 92-1868, 2003 WL 23100036 (D.D.C. Dec. 31, 2003) (denying Athridges' motion to compel Rivases to add GEICO to litigation);

*Athridge v. Aetna Cas. & Surety Co.*, 351 F.3d 1166 (D.C. Cir. 2003) (in appeal involving various issues, affirming in part, reversing in part, and remanding suit to trial court);

*Athridge v. Rivas*, 312 F.3d 474 (D.C. Cir. 2002) (in appeal involving various issues, reversing and remanding);

*Athridge v. Rivas*, 167 F. Supp. 2d 389 (D.D.C. 2001) (granting Rivases' motion for summary judgment);

*Athridge v. Aetna Cas. & Surety Co.*, 163 F. Supp. 2d 38 (D.D.C. 2001) (granting Aetna's motion for summary judgment);

*Athridge v. Aetna Cas. & Surety Co.*, No. 96-2708, 2001 WL 214212 (D.D.C. Mar. 2, 2001) (dismissing various claims by Athridges against Aetna);

*Athridge v. Rivas*, Nos. 89-1222, 92-1868, 2000 WL 1780273 (D.D.C. Nov. 14, 2000) (analyzing Athridges' arguments regarding issue preclusion and denying Athridges' request to add GEICO to litigation);

*Athridge v. Aetna Cas. & Surety Co.*, 184 F.R.D. 200 (D.D.C. 1998) (ruling on motion to compel related to various discovery issues);

*Athridge v. Aetna Cas. & Surety Co.*, 184 F.R.D. 181 (D.D.C. 1998) (ruling on various privilege issues related to discovery disputes);

*Athridge v. Iglesias*, 141 F.3d 357 (D.C. Cir. 1998) (reversing grant of summary judgment in Rivases' favor);

*Athridge v. Aetna Cas. & Surety Co.*, No. 96-2708, 1998 WL 429827 (D.D.C. Apr. 2, 1998) (ruling on dispute regarding deposition);

*Athridge v. Aetna Cas. & Surety Co.*, No. 96-2708, 1997 WL 732430 (D.D.C. Sept. 23, 1997) (ruling on dispute regarding deposition);

*Athridge v. Iglesias*, Nos. 96-7261, 89-1222, (D.C. Cir. June 20, 1997) (per curiam) (summarily affirming trial court's ruling against Jorge); and

*Athridge v. Iglesias*, 950 F. Supp. 2d 1187 (D.D.C. 1996) (finding Jorge liable and awarding Athridges approximately $5.5 million).

The Superior Court, in contrast, has not dealt with any of the suits brought by the Athridges related to this matter. The Rivases' own brief makes this clear: "The facts concerning the Accident and the lawsuits resulting from the Accident are set forth in *Athridge v. Iglesias*, 950 F. Supp. 1187 (D.D.C. 1986 [sic]), *aff'd*, 1997 WL 404854 (D.C. Cir. 1997), *Athridge v. Rivas*, 141 F.3d 357 … (D.C. Cir. 1998), and *Athridge v. Rivas*, 312 F.3d 474 (D.C. Cir. 2002)."

Mot., Pg. 3.  In light of the significance of the issues in the underlying litigation to GEICO's rights and obligations under the Insurance Contract, and as shown by the dozens of published decisions involving this matter, many of which are listed above, this Court is better suited to rule on GEICO's claims.

Accordingly, for all of the reasons discussed above, the Court should reject the Rivases' request to stay or dismiss this suit based on *Brillhart* and *Wilton*.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss or to Stay.

Date:  December 21, 2007

*[signature]*

Walter J. Andrews (No. 366637)
Syed S. Ahmad (No. 493571)
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
(703) 714-7400 (telephone)
(703) 918-4050 (facsimile)

*Counsel for Government Employees Insurance Company*

Exhibit 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and is effective as of this 7th day of September 2007, by and between (1) Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, Mary T. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges"); and (2) Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases"). The Athridges and the Rivases individually are referred to as a "Party" and collectively are referred to as the "Parties."

WHEREAS, on July 29, 1987, Thomas P. Athridge was injured when an automobile driven by Jorge Iglesias struck him (the "Accident"). The car was owned by Francisco and Hilda Rivas and their restaurant, Churreria Madrid Restaurant; and

WHEREAS, on May 4, 1989, Thomas P. Athridge, Jr., individually, and as father and next friend of Thomas P. Athridge filed a lawsuit styled Thomas P. Athridge _et al._, v. Jorge Iglesias _et al._, in the U.S. District Court for the District of Columbia ("District Court"), Civil Action No. 89-1222, naming Jorge Iglesias, Francisco Rivas, Churreria Madrid Restaurant, and Churreria Madrid Restaurant, Inc. as defendants in connection with the Accident; and

WHEREAS, on August 12, 1992, Thomas P. Athridge, Thomas P. Athridge, Jr., and Mary T. Athridge filed a lawsuit styled Thomas P. Athridge _et al._, v. Hilda Rivas t/a Churreria Madrid Restaurant in the District Court, Civil Action No. 92-1868, naming Hilda Rivas as a defendant in connection with the Accident; and

WHEREAS, the cases, Nos. 89-1222 and 92-1868, were consolidated for trial; and

WHEREAS, on January 12, 2005, the jury returned a verdict in favor of the Athridges and against the Rivases on the Athridges' claims of statutory liability under the District of Columbia Motor Vehicle Safety Responsibility Act and of negligently allowing Jorge Iglesias access to the keys to the Rivases' car; and

WHEREAS, on August 12, 2005, the District Court rejected the Athridges' claim for prejudgment interest and filed a paper entitled judgment in the amount of Five Million, Five Hundred Ten Thousand and Ten Dollars and Seventy Eight Cents ($5,510,010.78) in favor of the Athridges and against the Rivases ("Judgment"); and

WHEREAS, on March 23, 2006, the District Court denied the Rivases' motion for judgment as a matter of law or for a new trial;

WHEREAS, the Athridges and the Rivases both filed appeals from the Judgment to the U.S. Court of Appeals for the District of Columbia Circuit ("Court of Appeals"), Nos. 05-7123, 05-7126, 06-7048 and 06-7049 ("Appeals"), which Appeals have been consolidated and are currently pending; and

WHEREAS, the Rivases have posted as security for the Judgment certain real estate holdings ("Posted Real Property") that are the subject of the District Court's Order of December 13, 2006; and

WHEREAS, the Rivases represent that their assets other than the Posted Real Property have a value of less than 10% of the value of the Posted Real Property; and

WHEREAS, the Parties now desire to resolve all disputes, demands, claims, judgments and any other controversies between them arising out of the Accident;

NOW THEREFORE, in consideration of the payments, undertakings, obligations, and commitments set forth below, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows in full and final settlement of all matters between them.

1.    To settle the Athridges' lawsuits arising from the Accident, the Rivases shall dismiss their appeals from the Judgment and satisfy the Judgment as set forth below, which Judgment shall continue earning post-judgment interest in accordance with 28 U.S.C. § 1961;

2. The Rivases shall pay the Athridges One Million Four Hundred Fifty Thousand Dollars ($1,450,000.00) for the Athridges to dismiss their appeals from the Judgment, and an additional One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) in partial satisfaction of the Judgment.  These sums shall be wired to an escrow account of Manelli Denison & Selter PLLC FBO Thomas Athridge (in the amount of Two Million Eight Hundred Thousand Dollars ($2,800,000.00)) within 120 days of the effective date of the Agreement; provided that if this date shall fall on a day when banks are closed, payment shall be made on the next business day; and provided further that the Rivases shall use their best efforts to cause payment to be made within a shorter period.

3.    If the payment set forth in Section 2 is not received by Manelli Denison & Selter PLLC by the date set forth in Section 2, except for reasons that are outside of the control of the Rivases, interest shall be due and payable on any overdue amount of the $2.8 million at the judgment interest rate then in effect under 28 U.S.C. 1961 at the time of any non-payment, and the Athridges shall be entitled to reasonable attorneys fees and expenses incurred to enforce this payment.

4.    The Rivases are expected to secure some or all of the funds for the payment in section 2 through one or more loans ("Loans") from one or more financial institutions ("Lender") collateralized with one or more parcels of the Posted Real Property, or through sales of such parcels. The Athridges shall provide to the Lender (or, as the case may be, to the Buyer) or to a representative chosen by the Lender/Buyer, releases in the form requested by the Lender/Buyer of the liens on the parcels of the Posted Real Property as requested by the Lender/Buyer and other papers reasonably required by the Lender to make the Loan or required by the Buyer to purchase the

2

property (collectively, the "Releases"). These Releases shall be held in escrow by the Lender/Buyer or its designated representative until the closing of the Loan. Upon the making of the payment set forth in Section 2, the Athridges shall release their liens on all parcels of the Posted Real Property not previously released and, if not previously requested by the Lender/Buyer, will consent to the release of the non-alienation commitments filed on the Posted Real Property in accordance with the Order of the District Court issued on December 13, 2006. Any filing fees shall be paid by the Rivases.

5.    As additional satisfaction of the Judgment, the Rivases shall pursue all choses in action against David F. Grimaldi and his law firm of Martell, Donnelly, Grimaldi & Gallagher (the "Grimaldi Claims"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for omissions or for negligence in connection with Mr. Grimaldi's representation of the Rivases in connection with the Accident. The Rivases shall pay to the Athridges, immediately upon receiving any funds, 40% of the Gross Proceeds of any recovery resulting from the Grimaldi Claims, and the Athridges shall have a lien on any such recovery by the Rivases for this purpose. By way of example, assuming the non-applicability of paragraph 11 below, the division of a $1 million recovery on the Grimaldi claims would be $600,000 to the Rivases and $400,000 to the Athridges.

6.    The Athridges shall cooperate with the Rivases in their pursuit of the Grimaldi Claims. The Rivases shall consult with the Athridges on major decisions in connection with the Grimaldi Claims, including but not limited to any presentation to the malpractice insurer defending the Grimaldi Claims, drafting any complaint, selection of any expert witnesses, preparing any pretrial statement, witness list and exhibit list, trial of the case, taking an appeal and settlement of the claims. The Rivases shall have the final say on all decisions relating to the Grimaldi Claims, provided that any settlement of the Grimaldi Claims in an amount less than $2.7 million must be approved by the Athridges.

7.    As additional satisfaction of the Judgment, the Rivases hereby assign to the Athridges – and have contemporaneously executed a separate document of assignment – any and all of their choses of action that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses ("GEICO Assigned Claims"), EXCEPT that the Rivases shall reserve to themselves for their own recovery (not to be shared with the Athridges) any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress ("Emotional Damages Claims"). The choses

3

of action against GEICO assigned by the Rivases to the Athridges shall be referred to as the "GEICO Assigned Claims."

8.     The Athridges and the Rivases shall take all necessary steps to pursue the GEICO Assigned Claims and the Emotional Damages Claims, and shall reasonably cooperate with each other in the coordination of such claims in a single legal action. Immediately upon receiving any funds on the GEICO Assigned Claims or the Emotional Damages Claims, the Athridges shall pay 40% of the Gross Proceeds of any recovery resulting from this assignment of the GEICO Assigned Claims and 100% of the Gross Proceeds of any recovery resulting on this assignment of the Emotional Damages Claims to the Rivases, and the Rivases shall have a lien on any such recovery for this purpose.

9.     If a court or jury determines the amount of damages applicable to the GEICO Assigned Claims versus the GEICO Emotional Damages Claims, then such allocation shall be binding on the parties. (By way of example, if $4.0 million were to be recovered from GEICO on all claims, with the fact-finder allocating 25% to the Rivases' Emotional Damages Claims and 75% to the GEICO Assigned Claims, then the Rivases would receive $2.2 million of the $4.0 million.)

If the GEICO claims go to settlement without any allocation of damages by a court or jury, and in the event the parties dispute an appropriate allocation and are not able to resolve their differences, then any such dispute shall be decided by a single neutral arbitrator in Washington, D.C., in binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association then in effect.

10.     The Athridges and the Rivases shall cooperate with the other Party in their pursuit of the GEICO Assigned Claims and the Emotional Damages Claims. If it becomes necessary to file suit to pursue the GEICO Assigned Claims and the Emotional Damages Claims, the Parties shall file such suit jointly as co-plaintiffs, and the attorneys for the Athridges shall be lead counsel. The Athridges shall have primary responsibility, after consultation with the Rivases, for major decisions in connection with the GEICO Assigned Claims and the Emotional Damages Claims, including but not limited to any presentation of the GEICO Assigned Claims and the Emotional Damages Claims to GEICO or its representative, drafting any complaint, selection of any expert witnesses, preparing the pretrial statement, witness list and exhibit list, trial of the case, taking an appeal, and settlement of the claims. The Athridges shall have the final say on all decisions relating to the GEICO Assigned Claims, provided that any settlement of the GEICO Assigned Claims in an amount less than $4.0 million must be approved by the Rivases.

11.     In addition to the foregoing amounts that the Athridges may receive from the Grimaldi Claims or the GEICO Assigned Claims, the Athridges shall receive from the Gross Proceeds of either the Grimaldi Claims or the GEICO Assigned Claims, but not from the Emotional Damages Claims, whichever Gross Proceeds are recovered first, an additional Fifty Thousand Dollars ($50,000) plus interest at the judgment interest rate then in effect under 28 U.S.C. 1961 for the period from the date the payment set forth in

4

Section 2 is made until the date of payment of the additional Fifty Thousand Dollars ($50,000). By way of example, if the Gross Proceeds recovered from the Grimaldi Claims amount to $1.0 (one) million and these Gross Proceeds are recovered before any recovery of Gross Proceeds from the GEICO Assigned Claims, and interest as set forth above amounts to $5,000, the Rivases shall pay to the Athridges the amount of $455,000.

12.    As used in this Agreement, "Gross proceeds" shall mean all amounts recovered as a result of the Grimaldi Claims and/or the GEICO Assigned Claims, including but not limited to compensatory damages, exemplary or punitive damages and attorneys' fees (but not including any reimbursement of litigation expenses owed by one side to the other in the ordinary course of the litigation).

13.    This Section applies only to the extent any court of competent jurisdiction shall declare the assignment set forth in Section 7 to be invalid, in whole or part. In such event, the Rivases shall pay to the Athridges immediately upon receiving any funds 60% of the Gross Proceeds of any recovery resulting from all or part of the GEICO Assigned Claims as to which the assignment set forth in Section 7 has been declared to be invalid, and the Athridges shall have a lien on any such recovery by the Rivases for this purpose. Also, the Rivases shall take the following steps pursuant to D.C. Superior Court Rule of Civil Procedure 17 or its equivalent:

a.    Ratify the commencement of suit and all steps taken by the Athridges in the prosecution of the GEICO Assigned Claims by the Athridges.

b.    Inform the Court that by this Agreement, the Athridges are the real parties in interest with respect to 60% of the Gross Proceeds of any recovery resulting from the GEICO Assigned Claims.

Further, the Rivases agree to join, to the extent necessary and to the extent permitted by the civil rules, the Athridges as co-plaintiffs of the GEICO Assigned Claims, and the Parties agree that the lawsuit will continue to be prosecuted in accordance with Section 10.

14.    The Parties shall each bear their own fees and expenses, including attorney's and expert's fees, and other out of pocket expenses, in connection with the Grimaldi Claims, the GEICO Assigned Claims and the Emotional Damages Claims. Each party's obligation to pay attorney fees shall be limited to that portion of the gross recovery on any of the claims due to that party. If the same expert is used in connection with the Grimaldi Claims and the GEICO Assigned Claims and the Emotional Damages Claims, the Parties will split the fees and expenses of such expert in proportion to the amount of time the expert spends on each of the Claims.

15.    Without affecting any amounts recovered by the Rivases or the Athridges, and without affecting the overall attorney's fees set forth in Section 14 above, the attorneys for the Parties shall adjust the combined attorney's fees between themselves in favor of the attorneys in charge of the Grimaldi Claims or the GEICO Assigned Claims,

5

as the case may be, so that the attorneys in charge of the Grimaldi Claims or the GEICO Assigned Claims will receive the following percentages of any fees earned as a result of the Grimaldi Claims or the GEICO Claims at the following stages of the proceedings: if the matter is resolved at any time during the claims and litigation process before a Pretrial Conference, 60 percent, if the matter is resolved at any time between a Pretrial Conference and the beginning of trial (which shall be deemed to have occurred at the time the judge or the courtroom clerk calls the case to order for the beginning of trial), 66-2/3 percent, and any time after the beginning of trial (as defined herein), 75 percent, and the other attorneys will receive 40 percent, 33-1/3 percent, or 25 percent of any such fees as the case may be. This Section shall not apply to the additional payment of Fifty Thousand Dollars ($50,000) plus interest set forth in Section 11.

16.    Promptly after the effective date of the Agreement, the Parties shall take the following steps:

(a)    The Parties shall jointly move in the Court of Appeals to dismiss the pending Appeals, with the Athridges and Rivases each bearing their own costs;

(b)    At the request of the Rivases, the Athridges or their attorneys shall notify the Lender or potential Lender that the Athridges will provide the Releases as set forth in Section 4.

17.    If before complying with the payment of the $2.8 million in section 2 above, either Francisco or Hilda Rivas become the subject of any voluntary or involuntary petition in bankruptcy or any voluntary or involuntary proceeding relating to insolvency, receivership, liquidation, or composition for the benefit of creditors, other than any such petition or proceeding brought by or instigated by the Athridges directly or indirectly, and if such petition or proceeding is not dismissed within sixty (60) days of filing, then the Athridges may take any and all steps to execute on the Judgment, in addition to pursuing any other remedies authorized by law. In such event the Athridges shall be entitled to recover their costs, including reasonable attorneys' fees, of executing on the Judgment and pursuing such other remedies.

18.    In the event (1) the Rivases fail to make the payment set forth in Section 2, or (2) any Party fail to make the payments set forth in Sections 5, 8 and 11, and the breaching Party fails to cure such breach within 30 days after receiving written notice, then the non-breaching Party may take any and all steps to collect such payment and the non-breaching Party shall be entitled to recover its costs, including reasonable attorneys' fees and expenses incurred to collect such payment. In the event any Party fails to comply with any material non-payment obligation of this Agreement, and the breaching Party fails to cure such breach within 30 days after receiving written notice, then the Parties agree that the non-breaching Party is entitled to specific performance of the non-payment obligation, and the non-breaching Party shall be entitled to recover its costs, including reasonable attorneys' fees and expenses incurred to enforce such obligation.

6

19.     Except upon the failure of the Rivases to make the payments set forth in Section 2 or upon the occurrence of any event as set forth in Sections 17, the Athridges covenant that neither they nor their representatives, successors or assigns shall execute on the assets of the Rivases or their representatives, successors or assigns in an effort to satisfy the Judgment and the Athridges further covenant that they shall not otherwise sue the Rivases to enforce the money damages set forth in the Judgment.  Upon the payment of the Two Million Eight Hundred Thousand Dollars ($2,800,000) set forth in Section 2, and the settlement of, or entry of final judgment and completion of all appeals (or lapse of time to take appeals) in, the Grimaldi Claims and the GEICO Claims, the Athridges shall file a satisfaction of the Judgment with the District Court.

20.     Except as expressly stated herein, this Agreement does not affect or waive in any way the Rivases' or the Athridges' rights against any third person, including but not limited to Aetna Casualty and Surety Co., Inc.

21.     This Agreement may not be assigned except by operation of law or with the prior written consent of the non-assigning Party, which consent may be withheld in the non-assigning Party's discretion.

22.     This Agreement constitutes the full, entire and complete agreement between the Parties hereto with respect to the subject matter hereof.  The recitals and terms of this Agreement are contractual and not mere recitals.  No modification or waiver of any of the terms of this Agreement shall be valid unless made in writing and signed by the Parties.

23.     Each Party acknowledges and agrees that he/she has been represented by legal counsel in the negotiation and execution of this Agreement.  The Parties hereby represent that they fully understand each term of this Agreement and that they agree to be bound thereby and that they are signing this Agreement knowingly and voluntarily, without coercion or duress.

24.     If for any reason a court of competent jurisdiction finds any provision of the Agreement invalid or unenforceable, that provision of the Agreement shall be enforced to the maximum extent permissible and the other provisions of the Agreement shall remain in full force and effect.

25.     The failure by the Parties to enforce any provision of the Agreement shall not constitute a waiver of future enforcement of that or any other provision.

26.     All notices required or permitted under the Agreement shall be in writing and delivered by courier, overnight delivery service, or by certified mail, and in each instance shall be deemed given upon receipt or rejection.  All notices shall be sent to the addresses set forth below or to such other address as may be specified by any Party to the other in accordance with this Section.  All notices shall be sent as follows:

To the Athridges:

    Michael H. Selter
    Manelli Denison & Selter PLLC
    2000 M Street, NW, #700
    Washington, DC 20036
    Tel: 202-261-1026
    Fax: 202-887-0336

To the Rivases:

    Patrick A. Malone
    Stein, Mitchell & Mezines
    1100 Connecticut Ave.
    Suite 1100
    Washington, DC 20036
    Tel: 202-737-7777
    Fax: 202-296-8312

Each Party may change its address for notices under the Agreement by giving written notice to the other Parties by the means specified in this Section.

    27.    This Agreement shall be interpreted and enforced in accordance with the laws of the District of Columbia, without reference to its conflict of laws provisions.

    28.    The Parties agree to cooperate in the execution of whatever additional documents may be necessary to effectuate the terms and promises of this Agreement.

    29.    This Agreement may be signed in counterparts, with each counterpart constituting an original.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

8

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound thereby, have affixed their signatures to this Settlement Agreement effective as of the date first above written.

_____        _____
                                       Thomas P. Athridge, Jr.

_____
Francisco Rivas

                                       _____
                                       Mary T. Athridge

_____
Hilda Rivas

                                       _____
                                       Thomas P. Athridge

APPROVED WITH RESPECT TO
SECTIONS 14 and 15

_____
Patrick A. Malone
Stein, Mitchell & Mezines

_____
Michael H. Selter
Manelli Denison & Selter PLLC

_____
Erik S. Jaffe
Erik S. Jaffe, P.C.

9

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound thereby, have affixed their signatures to this Settlement Agreement effective as of the date first above written.

_____
Francisco Rivas

_____
Hilda Rivas

_____
Thomas P. Athridge, Jr.

_____
Mary T. Athridge

_____
Thomas P. Athridge

APPROVED WITH RESPECT TO
SECTIONS 14 and 15

_____
Patrick A. Malone
Stein, Mitchell & Mezines

_____
Michael H. Selter
Manelli Denison & Selter PLLC

_____
Erik S. Jaffe
Erik S. Jaffe, P.C.

10

## ASSIGNMENT

Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases").hereby assign to Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges") any and all of their choses of action that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses, reserving only any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress ("Emotional Damages Claims"). The choses of action against GEICO assigned by the Rivases to the Athridges shall be called the "GEICO Assigned Claims."

IN WITNESS WHEREOF, the Rivases, intending to be legally bound thereby, have affixed their signatures to this Assignment effective as of this 7h day of September, 2007.

_Francisco Rivas_    9/7/07
Francisco Rivas

_Hilda Rivas_  9-7-07
Hilda Rivas

## ASSIGNMENT

Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases").hereby assign to Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges") any and all of their choses of action that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses, reserving only any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress ("Emotional Damages Claims"). The choses of action against GEICO assigned by the Rivases to the Athridges shall be called the "GEICO Assigned Claims."

IN WITNESS WHEREOF, the Rivases, intending to be legally bound thereby, have affixed their signatures to this Assignment effective as of this 7h day of September, 2007.

_Francisco Rivas_ 9/7/07
Francisco Rivas

_E. Hilda Rivas_ 9-7-07
Hilda Rivas

Exhibit 2



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THOMAS P. ATHRIDGE JR.
Vs.                                                    C.A. No.       2007 CA 007639 B
GOVERNMENT EMPLOYEES INSURANCE COMPANY
### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge MELVIN R WRIGHT
Date:  November 16, 2007
Initial Conference: 9:30 am, Friday, February 15, 2008
Location:   Courtroom 200
              500 Indiana Avenue N.W.
              WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001  Telephone: 879-1133

| | |
|---|---|
| Thomas P. Athridge, Jr., Thomas P. Athridge, Mary T. Athridge, Francisco Rivas and Hilda Rivas | 0007639--07 |
| *Plaintiff* | |

vs.

Government Employees Insurance Co.

*Defendant*

Civil Action No. _____

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Michael Selter* (signature)

Michael H. Selter, #219550

Name of Plaintiff's Attorney

Manelli Denison & Selter PLLC

Address

2000 M Street, #700, Washington DC 20036

202-261-1000

Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date November 16, 2007

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98   NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

# SUPERIOR COURT OF THE
# DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| THOMAS P. ATHRIDGE, JR. <br> 6003 Ramsgate Road <br> Bethesda, MD 20816 | ) <br> ) <br> ) <br> ) | 0007659-07 |
| THOMAS P. ATHRIDGE <br> 6003 Ramsgate Road <br> Bethesda, MD 20816 | ) <br> ) <br> ) <br> ) | No. _____ |
| MARY T. ATHRIDGE. <br> 6003 Ramsgate Road <br> Bethesda, MD 20816 | ) <br> ) <br> ) <br> ) | RECEIVED <br> Civil Clerk's Office <br> **NOV 1 6 2007** <br> Superior Court of the <br> District of Columbia <br> Washington, D.C. |
| FRANCISCO RIVAS <br> 3739 Cumberland Street NW <br> Washington, DC 20016 | ) <br> ) <br> ) <br> ) | |
| HILDA RIVAS <br> 3739 Cumberland Street NW <br> Washington, DC 20016 | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) | |
| GOVERNMENT EMPLOYEES <br> INSURANCE COMPANY <br> 5260 Western Avenue <br> Chevy Chase, Maryland 20815 | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendant. | ) <br> ) | |

## <u>COMPLAINT</u>

Plaintiffs Thomas P. Athridge, Jr., Thomas P. Athridge, Mary T. Athridge, Francisco

Rivas and Hilda Rivas, by counsel, file this Complaint against Defendant Government

Employees Insurance Company, as follows:

## PARTIES

1.     Plaintiffs Thomas P. Athridge, Jr., Thomas P. Athridge and Mary T. Athridge are adult individuals who reside in and are citizens of the State of Maryland.

2.     Plaintiffs Francisco and Hilda Rivas are adult individuals who reside in the District of Columbia.

3.     Defendant Government Employees Insurance Co. ("GEICO") is a corporation organized under the laws of the State of Maryland with its principal place of business in the State of Maryland.

## JURISDICTION

4.     This Court has subject matter jurisdiction under D.C. Code § 11-921. Defendant is subject to the personal jurisdiction of this Court pursuant to D.C. Code § 13-423.

## FACTS

### The Accident

5.     On July 29, 1987, Thomas P. Athridge ("Tommy"), then a 15-year old minor, was seriously injured when, as a pedestrian, he was struck by an automobile driven by Jorge Iglesias at Fessenden and 32nd Streets, N.W. in the District of Columbia (the "Accident").

6.     The car was owned by the Churreria Madrid Restaurant, which at the time of the Accident was owned by Francisco and Hilda Rivas as partners.

7.     Jorge Iglesias is the son of Hilda Rivas' first cousin, Alicia Iglesias.

8.     At the time of the Accident, the Rivases had a son, Francisco Rivas Jr., nicknamed Panchi, who was living at home.

## The Athridges' Lawsuits

9.      On May 4, 1989, Thomas P. Athridge, Jr., individually, and as father and next friend of Tommy Athridge, filed a lawsuit styled Thomas P. Athridge et al., v. Jorge Iglesias et al., in the U.S. District Court for the District of Columbia ("District Court"), Civil Action No. 89-1222, naming Jorge Iglesias, Francisco Rivas, Churreria Madrid Restaurant, and Churreria Madrid Restaurant, Inc. as defendants in connection with the Accident.

10.     On August 12, 1992, Tommy Athridge, Thomas P. Athridge, Jr., and Mary T. Athridge filed a lawsuit styled Thomas P. Athridge et al., v. Hilda Rivas t/a Churreria Madrid Restaurant in the District Court, Civil Action No. 92-1868.  Based on information obtained during discovery in the 1989 lawsuit, this second lawsuit named Hilda Rivas in her individual capacity as a defendant in connection with the Accident.  The Athridges' 1989 and 1992 lawsuits were consolidated by the District Court for all purposes.

## GEICO's Automobile Liability Insurance Policy

11.     GEICO had issued an automobile liability insurance policy ("Policy") that covered the Accident.

12.     In response to the request of the Athridges' attorney, GEICO refused to disclose the amount of coverage under the Policy.

13.     During discovery in the Athridges' lawsuits, GEICO declined to produce a copy of the Policy with a declarations page.  GEICO asserts that it has lost the Policy with a declarations page.

14.   GEICO asserts it has a policy and practice of not retaining policies with the declarations page, even though the declarations page identifies the insured and the policy limits.

15.   On May 23, 1989, GEICO wrote to Francisco Rivas and the Churreria Madrid Restaurant, informing them that it would provide a defense to the Athridges' 1989 lawsuit and had assigned the law firm of Martell, Donnelly, Grimaldi and Gallagher, 1220 19th Street, N.W., Suite 500, Washington, D.C. 20036 to represent them. David F. Grimaldi, Jr., of this law firm, acted as their attorney. GEICO did not reserve any rights. GEICO informed the Rivases that since there was a claim in excess of policy limits, the Rivases had a right to hire their own attorney "to cooperate with [GEICO's] defense attorney to protect your interests in excess of the policy limits," but that they "need not" do so as "the [GEICO] defense attorney will do his best to protect your interests and ours." GEICO did not inform the Rivases of any conflict of interest between their and GEICO's interests and did not suggest that the Rivases should consult with their own personal attorney.

**GEICO's Declaratory Judgment Action**

16.   On September 6, 1989, GEICO filed an action in D.C. Superior Court against Jorge Iglesias, Francisco Rivas and Churreria Madrid Restaurant seeking a declaratory judgment that Jorge Iglesias' use of the car was without the Rivases' permission and that GEICO therefore was not liable for any judgment that may be rendered against these parties.

17.   GEICO attached a specimen of a GEICO policy form without any declarations page. The GEICO specimen form purported to cover any persons using the

Rivas' car with their permission provided that the actual use was within the scope of that permission. The GEICO specimen form also purported to cover any person for his liability with respect to the Rivases' car because of acts or omissions of an insured. Panchi Rivas was an insured under the Policy either as a named insured, as a family member who resided in Francisco and Hilda Rivas' household at the time of the Accident, or both.

18.    As to the Rivases, GEICO sought a declaratory judgment that it owed them no coverage, that it need not defend them and was "not liable for any judgment" that might be rendered against them in the Athridges 1989 lawsuit.

19.    In filing the declaratory judgment action, GEICO willfully refused to follow Superior Court Rule 19(a), which mandates the joinder of parties necessary for complete relief or whose absence would leave existing parties vulnerable to inconsistent obligations. GEICO further willfully failed to abide by Superior Court Rule 19(c), which mandates identification of such persons and the reasons for nonjoinder.

20.    GEICO's willful failure to abide by Superior Court Rule 19 prejudiced the Rivases, to whom GEICO owed a fiduciary duty, because in the Athridges' absence, the declaratory judgment action could have no effect on the Athridges' claim against the Rivases. GEICO failed to inform the Rivases of their potential exposure because of this omission. GEICO's failures left the Rivases financially exposed and uninformed.

21.    GEICO's willful failures set forth above further had the result of causing Plaintiffs severe emotional distress.

22.    In the declaratory judgment action, GEICO had the Rivases represented by Mr. Grimaldi, the same attorney who was defending them in the Athridges' 1989 lawsuit.

23.     To defend against the allegations of GEICO's declaratory judgment action, Mr. Grimaldi necessarily would have been obligated to take a position on behalf of the Rivases that was substantially inconsistent with the Rivases' position in their defense of the lawsuit brought by the Athridges.

24.     Rather than respond to the allegations of GEICO's declaratory judgment action, Mr. Grimaldi obtained an affidavit from Mr. Rivas that GEICO used to support a motion for summary judgment against Jorge Iglesias.  Jorge Iglesias defaulted on the motion and as a result GEICO obtained a summary judgment against him on June 6, 1990.

25.     Mr. Grimaldi acted as the agent and attorney for both GEICO and the Rivases in the declaratory judgment action, thereby putting himself in a conflict of interest position.

26.     On March 7, 1990, GEICO dismissed its declaratory judgment action against Francisco Rivas and the Restaurant with prejudice.

**GEICO's Investigation and Failure to Attempt to Settle**

27.     Before the Athridges filed their 1989 lawsuit, GEICO had investigated the facts relating to the Accident.

28.     GEICO's investigation was negligent and incomplete.  GEICO failed to interview the officer who headed the investigation of the Accident.  GEICO also failed to interview Panchi Rivas, although a GEICO claims representative suspected that Panchi was instrumental in Jorge Iglesias' ability to drive the Rivases' car and his borrowing of the Rivases' car and the GEICO Policy covered Jorge Iglesias if his liability was caused by the acts or omissions of Panchi Iglesias.

29.     Despite its inadequacy, GEICO's investigation nevertheless developed essentially the same facts that the D.C. Circuit, in *Athridge v. Rivas*, 312 F.3d 474, 478 (D.C. Cir. 2002), held would support a jury verdict in favor of the Athridges and against the Rivases.  GEICO forwarded its pre-complaint investigation to its insurer-appointed defense counsel for the Rivases.  GEICO knew before any complaint was filed that Tommy Athridge had been seriously injured and thus if the Rivases were found liable, the amount of the judgment would far exceed its alleged policy limits.

30.     While defending its insureds without reservation of any rights including the right to limit its exposure to policy limits, GEICO violated its fiduciary duty to keep its insureds fairly and fully informed of all developments in the Athridges' lawsuits against the Rivases that bore on their financial exposure or the settlement of claims against them.  For example, neither GEICO nor its agent, Mr. Grimaldi, informed the Rivases that they could be vicariously liable for the negligent actions of Jorge Iglesias if he was found to be operating with their consent, either express or implied.  Neither were the Rivases informed that they could be liable for negligently providing Jorge Iglesias unsupervised access to their car keys.  As a further example, on December 3, 1991, Hilda Rivas told a staff member of Mr. Grimaldi that she wanted GEICO to settle the case and pay out money to the Athridges.  Despite her specific request, GEICO still refused to initiate any attempt at settlement.

31.     Instead, in 1992, Mr. Grimaldi took Jorge Iglesias' motion default in the declaratory judgment action and demanded that the Athridges dismiss their complaint against Francisco Rivas and the Restaurant, threatening sanctions.   Mr. Grimaldi attempted this tactic, which had no legal basis, in order to try to deny a claimant victim of

traumatic brain injury insurance benefits claim mandated by the D.C. compulsory no-fault law and the Motor Vehicle Safety Responsibility Act ("MVSRA").

32.     Mr. Grimaldi initially attempted the same bluff before Judge Jackson, the District Court Judge presiding over the Athridges' federal lawsuits against the Rivases. Mr. Grimaldi intimated that the Athridges were bound by Jorge Iglesias' default. When Judge Jackson told Mr. Grimaldi to file a motion for summary judgment on that basis, Mr. Grimaldi failed to do so. Instead, he filed a motion based on "permissive use." Mr. Grimaldi's actions were an implied admission that the default judgment against Jorge Iglesias had no effect. The Athridges' attorney in response pointed out that Mr. Grimaldi's motion was not on the ground he had touted before the Court and opposed the motion based on the presumption created by D.C.'s MVSRA and on inconsistencies in Jorge Iglesias' deposition testimony.

33.     Judge Jackson denied Mr. Grimaldi's motion in early 1992. Despite this ruling, Mr. Grimaldi made no effort to initiate settlement discussions, thus willfully exposing the Rivases to a devastating judgment.

34.     At a status call, Judge Jackson later explained that the D.C. declaratory default could have no effect on the Athridges' lawsuit because the Athridges had not been named parties to that action. GEICO then approached its outside insurance coverage counsel about what course to take in light of Judge Jackson's ruling, and whether it should file another declaratory judgment action naming the Athridges. GEICO's insurance coverage counsel recommended that GEICO not do so, but instead hold the worthless declaratory judgment default against Jorge Iglesias in reserve as a basis to appeal any adverse federal court jury finding against the Rivases.

35.     GEICO's continued failure to initiate settlement discussions and its decision to rely on the default judgment against Jorge Iglesias exposed the Rivases to financial disaster on a meritless ground.

36.     On July 19, 1995, Judge Jackson *sua sponte* reversed his previous denial of the Rivases' motion for summary judgment and without notice granted summary judgment to the Rivases in the consolidated cases. The Athridges timely appealed and in January 1998, the D.C. Circuit reversed the judgment against the Rivases and remanded the case to the District Court. *Athridge v. Rivas*, 141 F.3d 357, 261-62 (D.C. Cir. 1998),

**The Iglesias Trial and GEICO's Continued Refusal to Attempt to Settle**

37.     On August 14, 1995, the District Court issued a scheduling notice to all counsel of record in Civil Action No. 89-1222, setting a date for trial of the Athridges' lawsuit against Jorge Iglesias.

38.     Although Mr. Grimaldi received notice of the scheduled trial and was aware that the dismissal of the claims against the Rivases were being appealed, he made no effort to intervene in the trial to protect the Rivases' interest in any damages awarded in the event the judgment in the Rivases' favor was reversed on appeal, as in fact occurred. To the contrary, after Judge Jackson's *sua sponte* summary judgment in favor of the Rivases, Mr. Grimaldi simply closed his file and informed GEICO that the Rivases were out of the case as a result of Judge Jackson's *sua sponte* action.

39.     In 1996, with the trial date approaching for the Iglesias case, the Athridges offered to settle with Jorge Iglesias in return for an assignment of rights against the insurers involved. The Athridges also offered to extend that settlement to the Rivases,

9

which would have absolved them of any financial responsibility, but the Athridges never heard anything from them or from defense counsel.

40.     During the 1995-98 pendency of the appeal of Judge Jackson's judgment, GEICO refused to consider any possibility of settlement.  For example, defense counsel, on behalf of GEICO, wrote to the court-assigned mediator advising that GEICO had no intention of making a voluntary settlement contribution given the then present state of the record.

41.     On November 8, 1996, Judge Harold Greene of the District Court, after a bench trial, found Jorge Iglesias liable.  Judge Greene found that Tommy had suffered numerous physical injuries, including a broken shoulder, compound fractures of the leg, physical scars, and disfigurement, and most notably severe, permanent and widespread brain damage.  He entered judgment in favor of the Athridges in the amount of $5,510,010.78 and directed that Defendant Iglesias convey his chose in action rights, *inter alia,* against insurers, to the Athridges.  See *Athridge v. Iglesias*, 950 F. Supp. 1187 (D.D.C. 1996), *summarily aff'd,* 1997 WL 404854 (D.C. Cir. 1997).

42.     As Judge Greene directed, Jorge Iglesias assigned all his choses in action to the Athridges.  Thereafter, Jorge Iglesias declared bankruptcy and the Athridges were unable to collect any amount of the judgment from him.

**The Rivases' Proceedings and Trial**

43.    After the D.C. Circuit remanded the Athridges' lawsuits against the Rivases to the District Court, the lawsuits were assigned to U.S. Magistrate Judge John Facciola.  On June 4, 1999, the Athridges moved that Magistrate Judge Facciola direct the Rivases to join GEICO as an additional party in the case and to file and serve on GEICO a summons and third-party complaint attached to the motion seeking indemnity from GEICO.

44.    Joinder of GEICO as a third-party defendant would have been in the Rivases' economic interests because it would have enabled them to avoid a substantial delay in determining their rights against GEICO if they were found liable to the Athridges for a substantial excess judgment.  Mr. Grimaldi, at GEICO's direction, nonetheless opposed the Athridges' motion on grounds solely relevant to GEICO and not to the Rivases.

45.    The Athridges made another settlement offer to defense counsel by letter of January 27, 2000.  GEICO ignored this proposal.

46.    On November 14, 2000, Magistrate Judge Facciola denied without prejudice the Athridges' motion to have GEICO joined as a third-party.  He asserted that the question of GEICO's liability, if any, to the Rivases, if the latter were held liable, was premature and that he did not have to reach this question. *Athridge v. Iglesias,* 2000 WL 1780273, *5 (D.D.C. 2000).

47.    On October 15, 2001, Magistrate Judge Facciola entered summary judgment in favor of the Rivases. *Athridge v. Rivas,* 167 F. Supp.2d 389 (D.D.C. 2001). The Athridges again appealed, and on December 17, 2002, the D.C. Circuit reversed a second time, holding that evidence that GEICO possessed in its pre-complaint

investigation created issues of material fact, which needed to be resolved by a jury. *Athridge v. Rivas*, 312 F.3d 474 (D.C. Cir. 2002).

48.    When the D.C. Circuit selected the cases for mediation during the second appeal, GEICO once again declined to offer anything in the way of settlement.

49.    On August 29, 2003, the Athridges renewed their motion that the Court direct the Rivases to file a third-party complaint against GEICO for indemnity.

50.    Mr. Grimaldi again opposed the Athridges' motion on grounds that related solely to the interests of GEICO and not the interests of the Rivases. At all times, Mr. Grimaldi represented the interests of GEICO over those of the Rivases, in a plain conflict of interest situation.

51.    On December 31, 2003, the Magistrate Judge denied the Athridges' motion. He again asserted that the motion was premature and that he did not need to reach the issue of whether GEICO should be joined prior to adjudication of their liability.

52.    On January 12, 2005, the District Court jury returned a verdict in favor of the Athridges and against the Rivases on the Athridges' claims of statutory liability under the District of Columbia Motor Vehicle Safety Responsibility Act and of negligently allowing Jorge Iglesias access to the keys to the Rivases' car

53.    On August 12, 2005, Magistrate Judge Facciola rejected the Athridges' claim for prejudgment interest against the Rivases and entered a paper entitled judgment in the amount of $5,510,010.78 in favor of the Athridges and against the Rivases ("Judgment"). On August 15, 2005, the Magistrate entered a separate paper entitled "Final Judgment." On March 23, 2006, the District Court denied the Rivases' motion for judgment as a matter of law or for a new trial.

54.     GEICO has never offered the Rivases or the Athridges the full amount of coverage allegedly available under its policy of insurance plus the full amount of interest and costs on the Rivas Judgment.

55.     The Athridges and the Rivases both filed appeals from the Rivas Judgment to the D.C. Circuit.

56.     During the pendency of the appeals, GEICO did not assist the Rivases in obtaining a supersedeas bond, despite the District Court's ruling that it might have a duty to do so.  GEICO also failed to pay for the costs of a supersedeas bond.

**Settlement Agreement**

57.     While the appeals were pending, on September 7, 2007, the Athridges and the Rivases entered into a settlement agreement ("Settlement Agreement") settling all claims between them.

58.     Prior to entering into the Settlement Agreement, on August 28, 2007, the Rivases provided GEICO with a draft of the Settlement Agreement and asked GEICO whether it wanted to participate in any settlement.  GEICO refused.

59.     As part of the Settlement Agreement, the Rivases assigned to the Athridges all their choses of action that they might possess against GEICO, except for Rivases' claim against GEICO for damages for infliction of emotional or mental distress. The Athridges, as judgment creditors of the Rivases, also have independent standing to seek enforcement of the Rivases' rights under any policy of insurance issued by GEICO to the Rivases.

## COUNT ONE

### (Indemnity)

60.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

61.    The Athridges and the Rivases have performed and complied with all the terms, conditions precedent, obligations, and provisions contained in the specimen policy form, except as to that performance that has been excused, waived, or prevented by the representations, misrepresentations, acts, or omissions of GEICO.

62.    Under the specimen policy form, GEICO is liable to indemnify Plaintiffs for the face value of coverage for insureds, plus court costs charged to the Rivases, plus accrued interest on the Rivas Judgment until GEICO has tendered or paid into Court that part of the Judgment not exceeding the full amount of liability coverage provided. GEICO has breached this obligation under the specimen policy form.

63.    Plaintiffs are therefore entitled to the full amount of liability coverage provided, plus court costs charged to the Rivases, plus accrued interest on the Rivas Judgment until the date of any judgment in this action.

## COUNT TWO

### (Indemnity-Res Judicata)

64.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

65.    As a result of dismissing its declaratory judgment action against the Rivases with prejudice, GEICO is barred by res judicata from contesting liability for the Rivas Judgment.

14

66.    Plaintiffs are therefore entitled to the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs.

## COUNT THREE

### (Indemnity - Estoppel)

67.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

68.    GEICO had a duty to defend the Rivases in the lawsuits brought by the Athridges. It controlled the defense of the Athridges' lawsuits without any reservation of rights.

69.    GEICO is estopped from contesting liability for the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs.

## COUNT FOUR

### (Breach of Contract)

70.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

71.    Implied as a matter of law in the Policy is a duty to exercise due care and to abide by a covenant of good faith and fair dealing, by which GEICO necessarily undertook to consider the Rivases' interests equally with its own interests and to do nothing to deny the Rivases the coverage and defense which had been contracted for the Rivases' benefit.

72.    GEICO also owed the Rivases a fiduciary duty of scrupulous good faith and candor requiring that GEICO make full disclosure of all information material to its dealings with them.

73.     GEICO breached its duties of diligence, good faith and conscientious fidelity to safeguard the interests of the Rivases under the Policy and pursued its own interests over those of the Rivases by (a) controlling the defense of the Athridges' lawsuits against the Rivases despite the conflicts between GEICO's and the Rivases' interests; (b) falsely representing that Mr. Grimaldi would do his best to defend the Rivases' interests when in light of the conflict of interest between the Rivases and GEICO, Mr. Grimaldi put GEICO's interests ahead of those of the Rivases; (c) controlling through GEICO appointed and paid counsel both sides of the declaratory judgment action against the Rivases, in effect creating a "sham litigation," in violation of GEICO's fiduciary duty of candor to the Rivases and its litigant's duty of candor to this Court; (d) failing to join the Athridges in the declaratory judgment action, which made the default judgment against Jorge Iglesias worthless as to the Athridges, and then attempting to rely on the worthless default judgment rather than attempting to settle the Athridges' lawsuits; (e) failing to attempt to settle the Athridges' lawsuits against the Rivases in a timely manner; (f) having Mr. Grimaldi oppose joinder of GEICO in the Athridges' lawsuits, thereby causing a delay in any determination of the Rivases' rights against GEICO in the event of a judgment in favor of the Athridges; and (g)  failing to facilitate and pay the costs of the Rivases' posting a bond to stay execution of the Rivas Judgment.

74.     Plaintiffs are therefore entitled to the amount of the Rivas Judgment, plus pre- and post-judgment interest and costs, plus all losses caused by the breach, including but not limited to attorneys' fees.

## COUNT FIVE

### (Tortious Breach of Duty of Good Faith and Fidelity)

75.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 and 71 through 72 as though fully set forth herein.

76.    GEICO tortiously breached its duties of diligence, good faith and conscientious fidelity to safeguard the interests of the Rivases under the Policy and pursued its own interests over those of the Rivases by (a) controlling the defense of the Athridges' lawsuits against the Rivases despite the conflicts between GEICO's and the Rivases' interests; (b) falsely representing that Mr. Grimaldi would do his best to defend the Rivases' interests when in light of the conflict of interest between the Rivases and GEICO, Mr. Grimaldi put GEICO's interests ahead of those of the Rivases; (c) controlling through GEICO appointed and paid counsel both sides of the declaratory judgment action against the Rivases, in effect creating a "sham litigation," in violation of GEICO's fiduciary duty of candor to the Rivases and its litigant's duty of candor to this Court; (d) failing to join the Athridges in the declaratory judgment action, which made the default judgment against Jorge Iglesias worthless as to the Athridges, and then attempting to rely on the worthless default judgment rather than attempting to settle the Athridges' lawsuits; (e) failing to attempt to settle the Athridges' lawsuits against the Rivases in a timely manner; (f) having Mr. Grimaldi oppose joinder of GEICO in the Athridges' lawsuits, thereby causing a delay in any determination of the Rivases' rights against GEICO in the event of a judgment in favor of the Athridges; and (g)  failing to facilitate and pay the costs of the Rivases' posting a bond to stay execution of the Rivas Judgment.

17

77.    Plaintiffs are therefore entitled to the amount of the Rivas Judgment, plus pre- and post-judgment interest and costs, plus all losses caused by the breach, including but not limited to attorneys' fees, plus damages for emotional injury and punitive damages.

## COUNT SIX

### (Breach of Contract-Jorge Iglesias)

78.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

79.    Under the District of Columbia's compulsory no-fault Act and the MVSRA, GEICO owed a duty to defend and indemnify Jorge Iglesias if he had consent, express or implied, under the MVSRA to operate the Rivas' automobile..

80.    The District Court jury's finding, embodied in the Rivas Judgment, that Jorge Iglesias' use of the Rivases' car was consensual within the meaning of the MVSRA means that GEICO had a duty to defend and indemnify Jorge Iglesias as an "insured." As a matter of law, the MVSRA brings Jorge Iglesias within the coverage of any D.C. policy issued by GEICO.

81.    The default summary judgment that GEICO obtained in the declaratory judgment action at most determined only that Jorge Iglesias did not have "permission" (i.e., express consent) to use the Rivases' car.  It did not determine whether his use was consensual within the meaning of the MVSRA, as to which there was neither any declaration nor even mention.

82.    Plaintiffs, as court-ordered assignees of Jorge Iglesias, are therefore entitled to the full amount of damages entered in the federal court tort actions against

Iglesias and the Rivases amount of the Rivas Judgment, plus pre- and post-judgment interest and costs, plus all losses caused by breach or the duty to defend, including but not limited to attorneys' fees.

## COUNT SEVEN

### (Spoliation)

83.     Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through __ as though fully set forth herein.

84.     GEICO had a duty to preserve the Policy after being notified of the Accident.

85.     Despite this duty, GEICO destroyed the cover page of the Policy in accordance with its standard practice.

86.     GEICO's destruction of the cover page was intentional.

87.     GEICO's destruction of the cover page was negligent.

88.     As a result of the destruction of the cover page, it is not possible to determine with certainty the identity of the insureds or the limits of the Policy.

89.     GEICO therefore is barred from contesting liability for the full amount of the Rivas Judgment, plus pre- and post- judgment interest and costs.

90.     Plaintiffs are therefore entitled to the full amount of the Rivas Judgment, plus pre- and post-judgment interest and costs.

## COUNT EIGHT

### (Violation of DC Consumer Protection Procedures Act)

91.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

92.    The Rivases are "consumers," and the insurance services GEICO supplies are "consumer services," within the meaning of the District of Columbia Consumer Protection Procedures Act, D.C. Code §28-3901 et seq.

93.    GEICO misrepresented or failed to disclose material facts that misled or tended to mislead within the meaning of the District of Columbia Consumer Protection Procedures Act including but not limited to: (a) stating that Mr. Grimaldi would do his best to protect the Rivases' interests as well as GEICO's and that the Rivases "need not" hire their own attorney; and (b) failing to disclose to the Rivases the results of its investigation, but instead through Mr. Grimaldi assuring that they faced no liability for the Accident, which negatively impacted the Rivases' willingness to contribute any money to a settlement.

## COUNT NINE

### (Intentional Infliction of Emotional Distress)

94.    Plaintiffs reallege and incorporate by reference each and every allegation of paragraphs 1 through 59 as though fully set forth herein.

95.    GEICO by itself and through Mr. Grimaldi placed its interests above those of the Rivases.

96.    GEICO's acts intentionally inflicted severe emotional distress on those Plaintiffs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that judgment be entered for the following relief:

A.  Compensatory damages in the amount of $5,510,000.78.

B.  Prejudgment interest on that amount from November 8, 1996.

C.  Damages for emotional injury in an amount to be determined at trial.

D.  Treble damages, punitive damages, and reasonable attorneys' fees under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3905(k)(1).

E.  General punitive damages in an amount to be determined at trial.

F.  Reasonable attorneys' fees for advising and representing Plaintiffs in this action.

G.  Costs and post-judgment interest as determined by law.

H.  Any other just and equitable relief the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  November 15, 2007

Respectfully submitted,

Michael H. Selter, #219550
Manelli Denison & Selter, P.L.L.C.
2000 M Street, NW, #700
Washington, D.C.  20036
(202) 261-1000


Attorney for Plaintiffs
Thomas P. Athridge, Thomas P. Athridge,
Jr. and Mary T. Athridge


Patrick A. Malone, # 397142
Patrick Malone & Associates, P.C.
1331 H Street N.W.
Suite 902
Washington, DC 20005
(202) 742-1500


Attorney for Plaintiffs
Francisco and Hilda Rivas

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------X

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

      Plaintiff,

      - against -              No. 1:07-CV-01740-JR

FRANCISCO RIVAS
HILDA RIVAS,

      Defendants.

-------------------------------------------------X

<u>**AFFIDAVIT OF LIBBIE DURST**</u>

I, Libbie Durst, state as follows:

1.     I am a Claims Examiner at Government Employees Insurance Company.

2.     The statements contained in this affidavit are based on my personal knowledge and are true to the best of my knowledge and belief.

3.     Attached as Exhibit 1 to this affidavit is a true and correct copy of a letter dated October 18, 2006 from Patrick Malone to Libbie Durst.

Date:  December 21, 2007

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY,

_Libbie Durst_

Libbie Durst

Exhibit 1

LAW OFFICES

# STEIN, MITCHELL & MEZINES
L.L.P.
1100 CONNECTICUT AVE., NW, STE. 1100
WASHINGTON, D. C. 20036

J335
0
m W

00083209201010 98

SUSAN A. MITCHELL
JACOB A. STEIN
GERARD E. MITCHELL
ROBERT F. MUSE
DAVID U. FIERST
RICHARD A. BUSSEY
PATRICK A. MALONE
ROBERT L. BREDHOFF
CHRISTOPHER H. MITCHELL
ANDREW M. BEATO
LAURIE A. AMELL
DENIS C. MITCHELL
ARI S. CASPER

OF COUNSEL
GEORGE ANTHONY FISHER
RETIRED
BASIL J. MEZINES

October 18, 2006

TELEPHONE: (202) 737-7777
TELECOPIER: (202) 296-8312
www.SteinMitchell.com

Libbie Durst
GEICO Insurance Company
One Geico Boulevard
Fredericksburg, VA 22412-0001

Re:    Athridge v. Rivas

Dear Ms. Durst:

While there is still a chance that the disastrous outcome in the Rivas case will be reversed, nonetheless we want to put GEICO and Mr. Grimaldi on notice of claims that the Rivases intend to pursue against both of you in the event that they have to pay anything to the Athridges.

I would like to discuss with your counsel a potential tolling agreement so that we can give the appellate process a chance to work before having to file any litigation, which if brought prematurely could potentially prejudice the outcome of the appeal. Please have your counsel get in touch with me right away.

In addition, there is a possibility of a settlement mediation occurring sometime during the appellate process. If it does, we will ask GEICO and Mr. Grimaldi's insurance carrier to participate.

Thank you for your consideration.

Sincerely,

Patrick A. Malone

PAM/acc
cc: Francisco and Hilda Rivas

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------X

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

     Plaintiff,

     - against -                No. 1:07-CV-01740-JR

FRANCISCO RIVAS
HILDA RIVAS,

     Defendants.

------------------------------------------------------X

## AFFIDAVIT OF JACI TODD

I, Jaci Todd, state as follows:

1.    I am a Claims Examiner at Government Employees Insurance Company.

2.    The statements contained in this affidavit are based on my personal knowledge and are true to the best of my knowledge and belief.

3.    Attached as Exhibit 1 to this affidavit is a true and correct copy of a letter dated November 13, 2006 from Jaci Todd to Patrick Malone.

Date: December 21, 2007

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY,

_Jaci Todd_
Jaci Todd

Exhibit 1

**GEICO**

- Government Employees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

One GEICO Blvd. ■ Fredericksburg, VA 22412-0001

November 13, 2006

Patrick Malone
Stein, Mitchell & Mezines L.L.P.
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036

Claim No.:    000832092 0101098
Insured:    Francisco Rivas
Date of Loss:    07/29/1987

Dear Mr. Malone,

I write in response to your November 3, 2006 letter.

In your letter, you contend that the Rivases have claims against GEICO that relate to GEICO's supposed failure to protect them from an excess judgment "by not offering to settle the case within the policy limits during a time when settlement might have been accepted." As has been communicated to you before, including by GEICO's letter dated May 9, 2006, GEICO has in the past conveyed settlement authority to David Grimaldi up to the policy limit of $100,000, Mr. Grimaldi has made numerous settlement offers of $100,000 to the Athridges, and GEICO has offered to pay that entire limit to the court and to the Athridges directly in an attempt to resolve the underlying litigation. For example, in his April 18, 2003 letter, David Grimaldi documented that he had settlement authority up to the full policy limit. In addition, in July 2003, the Athridges rejected an offer of policy limits conveyed by Mr. Grimaldi and demanded $2.75 million. By letter dated January 1, 2005, Mr. Grimaldi again conveyed to the Athridges that GEICO's offer of policy limits remained available. This offer remained open after the jury verdict, as communicated to the Athridges by Mr. Grimaldi's October 7, 2005 letter. The Athridges rejected this offer as well and demanded $7.5 million to settle their claims. More recently, after the court denied post-trial motions, GEICO offered to deposit $100,000 with the court without any conditions. The court rejected GEICO's request on April 7, 2006. Shortly thereafter, GEICO sent to the Athridges a check for the amount of $100,000 and the interest that had already accrued at that time since March 23, 2006.

All of the above was explained in GEICO's May 9 letter to you, including the fact that the Athridges never accepted any offers within limits and did not, at any time, offer to settle within policy limits. Nevertheless, and without addressing any of the correspondence described above or in GEICO's May 9 letter, you refer to GEICO supposedly "not offering to settle the case within the policy limits during a time when settlement might have been accepted." Please

identify the time period when you believe "settlement might have been accepted" by the Athridges for an amount within policy limits.

In addition, because the Athridges had repeatedly made clear that they would not settle this case within policy limits, GEICO had advised the Rivases of the risk of an excess judgment. In addition to informing the Rivases that they have the right to personal counsel to protect their interest with respect to a possible excess judgment, GEICO advised the Rivases that they could contribute towards a possible settlement. This was done in GEICO's September 10, 2003 letter to the Rivases, among other times. The Rivases never offered to contribute any funds to attempt to settle this matter. If you are aware of any efforts by the Rivases to participate in negotiations by contributing towards any potential settlement of the Athridges' claim, please advise.

With respect to the tolling agreement that you had initially proposed, given your acknowledgement that the agreement would not modify the viability of claims that may already be barred, GEICO is willing to evaluate a draft agreement. Please provide a draft for GEICO's review.

GEICO reserves any and all of its rights and defenses under the GEICO insurance policy and applicable law, whether stated herein or not and whether known to GEICO or not. This letter should not be construed as a waiver, an estoppel, or forfeiture or any right or defense that GEICO may have under any contract, regulation or law, or otherwise.

Very truly yours,

Jaci Todd
Claims Examiner
1-800-841-1003 (ext. 4381)

cc:    Walter Andrews

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------X
GOVERNMENT EMPLOYEES                    :
INSURANCE COMPANY,                      :
                                        :
        Plaintiff,                      :
                                        :
        - against -                     :        No. 1:07-CV-01740-JR
                                        :
FRANCISCO RIVAS                         :
HILDA RIVAS,                            :
                                        :
        Defendants.                     :
-------------------------------------------------------X
```

### <u>AFFIDAVIT OF WALTER J. ANDREWS</u>

I, Walter J. Andrews, state as follows:

1.      I am counsel for Government Employees Insurance Company in the captioned lawsuit.

2.      The statements contained in this affidavit are based on my personal knowledge and are true to the best of my knowledge and belief.

3.      Attached as Exhibit 1 to this affidavit is a true and correct copy of a letter dated August 23, 2007 from myself to Mr. Malone.

4.      Attached as Exhibit 2 to this affidavit is a true and correct copy of a letter dated August 28, 2007 from Mr. Malone to Mr. Ranck and myself.

5.      Attached as Exhibit 3 to this affidavit is a true and correct copy of the Tolling Agreement, dated January 31, 2007.

Date:  December 21, 2007


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY,


_____
Walter J. Andrews

Exhibit 1



HUNTON & WILLIAMS LLP
1751 PINNACLE DRIVE
SUITE 1700
MCLEAN, VIRGINIA 22102

TEL     703 • 714 • 7400
FAX     703 • 918 • 4050

WALTER J. ANDREWS
DIRECT DIAL: 703-714-7642
EMAIL: wandrews@hunton.com

August 23, 2007

**Via Facsimile & First Class U.S. Mail**

Patrick Malone
Stein, Mitchell & Mezines L.L.P.
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036

Re:     **Claim No.:     000832092 0101098**
        **Insured:      Francisco Rivas**
        **Date of Loss: 07/29/1987**

Dear Mr. Malone,

I write to follow up on our conversations today and on August 16, 2007.

In the August 16 conversation, you advised that the Rivases and the Athridges were in settlement discussions and stated that a settlement was "likely." Prior to August 16, 2007, you, or the Rivases, had not made GEICO aware of those settlement discussions. When we spoke today, you said that the settlement negotiations were still ongoing and that they likely would result in the dismissal of the pending appeal. As I requested in our conversation today, I am writing to confirm our request that GEICO be permitted to participate in the settlement discussions. You said that you would discuss our request with your clients.

Sincerely,

Walter Andrews / asw

Walter Andrews

cc:     Jaci Todd

Exhibit 2

*Law Offices*
# STEIN, MITCHELL & MEZINES LLP
**1100 Connecticut Avenue, N.W.**
**11th Floor**
**Washington, DC 20036**
**Telephone: 202-737-7777**
**Facsimile: 202-296-8312**

# FACSIMILE COVER SHEET

---

TO:     **Walter Andrews, Esq.**

PHONE:  **703-714-7400**

FAX:    **703-918-4050, 703-714-7410**

SUBJECT / CLIENT:  **Athridge v. Rivas: Letter**

DATE:  **August 28, 2007**

FROM:   **Patrick A. Malone, Esq.**

PHONE:  **202-661-0918**

FAX:    **202-296-8312**

NUMBER OF PAGES:   **12**   (Including Cover Sheet)

---

MESSAGE:

**Please give this to Mr. Andrews ASAP. Thanks.**

---

The information contained in this facsimile message is intended only for the use of the individuals to whom it is addressed and may contain information that is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 202-737-7777. Thank you.

---

*If you did not receive all pages, please call Sheila at 202-661-0936.*



LAW OFFICES

# STEIN, MITCHELL & MEZINES
### L.L.P.
1100 CONNECTICUT AVE., N.W., STE. 1100
## WASHINGTON, D. C. 20036

GLENN A. MITCHELL
JACOB A. STEIN
GERARD E. MITCHELL
ROBERT F. MUSE
DAVID U. FIERST
RICHARD A. BUSSEY
PATRICK A. MALONE
ROBERT L. BREDHOFF
CHRISTOPHER H. MITCHELL
ANDREW N. BEATO
LAURIE A. AMELL
DENIS C. MITCHELL
ARI S. CASPER

OF COUNSEL
GEORGE ANTHONY FISHER
RETIRED
BASIL J. MEZINES

August 28, 2007

TELEPHONE: (202) 737-7777
TELECOPIER: (202) 296-8312
www.SteinMitchell.com

*Via Facsimile and U.S. Mail*

Walter Andrews, Esq.
Hunton & Williams, LLP
1751 Pinnacle Drive
Suite 1700
McLean, VA 22101

Matthew A. Ranck, Esq.
Eccleston and Wolf, PC
2001 S Street, NW
Suite 310
Washington, DC 20009-1125

Re:    *Athridge v. Rivas*

Dear Mr. Andrews and Mr. Ranck:

Pursuant to our discussions about your clients, GEICO and Mr. Grimaldi, participating in a possible settlement between the Rivases and the Athridges, I enclose for your information the current draft of a potential settlement agreement between my clients and the Athridges. This is not final but the basic terms of the agreement have been agreed to.

As you can see, the draft agreement provides for a payment of a firm sum by my clients in the near future and then the obligation for both parties to pursue claims against your clients and divide any proceeds. If your clients want to eliminate the contingent liability that this agreement leaves open, by participating now in an overall settlement, my clients would certainly welcome it. They firmly believe that they would not be in this mess if GEICO and Mr. Grimaldi had lived up to their obligations in the first place.

We must report to the Court of Appeals this Friday, August 31, on the status of settlement negotiations. This was originally contemplated as a firm deadline for finalizing the settlement or abandoning it. However, if you need more time to evaluate your position, we might be able to obtain an extension.

Walter Andrews, Esq.
Matthew A. Ranck, Esquire
August 28, 2007
Page 2

STEIN, MITCHELL & MEZINES

     Please contact either me or Michael Selter, the Athridges' attorney, with your positions.

                    Sincerely,

                    Patrick A. Malone

PAM/scc
Enclosure
cc: Nicholas McConnell, Esq. (*via facsimile*)
    Michael H. Selter, Esq. (*via facsimile*)
    Francisco and Hilda Rivas (*via facsimile*)

8-24-07 draft

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and is effective as of this __ day of August 2007, by and between (1) Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, Mary T. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges"); and (2) Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases"). The Athridges and the Rivases individually are referred to as a "Party" and collectively are referred to as the "Parties."

WHEREAS, on July 29, 1987, Thomas P. Athridge was injured when an automobile driven by Jorge Iglesias struck him (the "Accident"). The car was owned by Francisco and Hilda Rivas and their restaurant, Churreria Madrid Restaurant; and

WHEREAS, on May 4, 1989, Thomas P. Athridge, Jr., individually, and as father and next friend of Thomas P. Athridge filed a lawsuit styled Thomas P. Athridge et al., v. Jorge Iglesias et al., in the U.S. District Court for the District of Columbia ("District Court"), Civil Action No. 89-1222, naming Jorge Iglesias, Francisco Rivas, Churreria Madrid Restaurant, and Churreria Madrid Restaurant, Inc. as defendants in connection with the Accident; and

WHEREAS, on August 12, 1992, Thomas P. Athridge, Thomas P. Athridge, Jr., and Mary T. Athridge filed a lawsuit styled Thomas P. Athridge et al., v. Hilda Rivas t/a Churreria Madrid Restaurant in the District Court, Civil Action No. 92-1868, naming Hilda Rivas as a defendant in connection with the Accident; and

WHEREAS, the cases, Nos. 89-1222 and 92-1868, were consolidated for trial; and

WHEREAS, on January 12, 2005, the jury returned a verdict in favor of the Athridges and against the Rivases on the Athridges' claims of statutory liability under the District of Columbia Motor Vehicle Safety Responsibility Act and of negligently allowing Jorge Iglesias access to the keys to the Rivases' car; and

WHEREAS, on August 12, 2005, the District Court rejected the Athridges' claim for prejudgment interest and filed a paper entitled judgment in the amount of Five Million, Five Hundred Ten Thousand and Ten Dollars and Seventy Eight Cents ($5,510,010.78) in favor of the Athridges and against the Rivases ("Judgment"); and

WHEREAS, on March 23, 2006, the District Court denied the Rivases' motion for judgment as a matter of law or for a new trial;

WHEREAS, the Athridges and the Rivases both filed appeals from the Judgment to the U.S. Court of Appeals for the District of Columbia Circuit ("Court of Appeals"),

Nos. 05-7123, 05-7126, 06-7048 and 06-7049 ("Appeals"), which Appeals have been consolidated and are currently pending; and

WHEREAS, the Rivases have posted as security for the Judgment certain real estate holdings ("Posted Real Property") that are the subject of the District Court's Order of December 13, 2006; and

WHEREAS, the Parties now desire to resolve all disputes, demands, claims, judgments and any other controversies between them arising out of the Accident;

**NOW THEREFORE**, in consideration of the payments, undertakings, obligations, and commitments set forth below, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties hereby agree as follows in full and final settlement of all matters between them.

1.      To settle the Athridges' lawsuits arising from the Accident, the Rivases shall dismiss their appeals from the Judgment and satisfy the Judgment as set forth below, which Judgment shall continue earning post-judgment interest in accordance with 28 U.S.C. § 1961;

2. The Rivases shall pay the Athridges One Million Five Hundred Thousand Dollars ($1,500,000.00) for the Athridges to dismiss their appeals from the Judgment, and an additional One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) in partial satisfaction of the Judgment. These sums shall be wired to an escrow account of Manelli Denison & Selter PLLC FBO Thomas Athridge (in the amount of Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000.00)) within 120 days of the effective date of the Agreement; provided that if this date shall fall on a day when banks are closed, payment shall be made on the next business day; and provided further that the Rivases shall use their best efforts to cause payment to be made within a shorter period.

2.      If the payment set forth in Section 2 is not received by Manelli Denison & Selter PLLC by the date set forth in Section 2, except for reasons that are outside of the control of the Rivases, interest shall be due and payable on any overdue amount at the judgment interest rate then in effect under 28 U.S.C. 1961 at the time of any non-payment, and the Athridges shall be entitled to reasonable attorneys fees and expenses incurred to enforce this payment.

3.      The Rivases are expected to secure some or all of the funds for the payment in section 2 through Loans collateralized with one or more parcels of the Posted Real Property, or through sales of such parcels. The Athridges shall provide to the Lender (or, as the case may be, to the Buyer) or to a representative chosen by the Lender/Buyer, releases in the form requested by the Lender/Buyer of the liens on the parcels of the Posted Real Property as requested by the Lender/Buyer and other papers reasonably required by the Lender to make the Loan (collectively, the "Releases") or required by the Buyer to purchase the property. These Releases shall be held in escrow by the Lender/Buyer or its designated representative until the closing of the Loan. Upon

2

the making of the payment set forth in Section 2, the Athridges shall release their liens on all parcels of the Posted Real Property not previously released and, if not previously requested by the Lender/Buyer, will consent to the release of the non-alienation commitments filed on the Posted Real Property in accordance with the Order of the District Court issued on December 13, 2006. Any filing fees shall be paid by the Rivases.

4.    As additional satisfaction of the Judgment, the Rivases shall pursue all choses in action against David F. Grimaldi and his law firm of Martell, Donnelly, Grimaldi & Gallagher (the "Grimaldi Claims"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for omissions or for negligence in connection with Mr. Grimaldi's representation of the Rivases in connection with the Accident. The Rivases shall pay to the Athridges, immediately upon receiving any funds, 40% of the Gross Proceeds of any recovery resulting from the Grimaldi Claims, and the Athridges shall have a lien on any such recovery by the Rivases for this purpose.

5.    The Athridges shall cooperate with the Rivases in their pursuit of the Grimaldi Claims. The Rivases shall consult with the Athridges on major decisions in connection with the Grimaldi Claims, including but not limited to any presentation to the malpractice insurer defending the Grimaldi Claims, drafting any complaint, selection of any expert witnesses, preparing any pretrial statement, witness list and exhibit list, trial of the case, taking an appeal and settlement of the claims. The Rivases shall have the final say on all decisions relating to the Grimaldi Claims, provided that any settlement of the Grimaldi Claims in an amount less than $2.7 million must be approved by the Athridges.

6.    As additional satisfaction of the Judgment, the Rivases hereby assign to the Athridges – and have contemporaneously executed a separate document of assignment -- any and all of their choses of action for only economic damages that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses, except that the Rivases shall reserve to themselves for their own recovery any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress "Emotional Damages Claims"). The choses of action against GEICO assigned by the Rivases to the Athridges shall be referred to as the "GEICO economic damage Claims."

7. The Athridges and the Rivases shall take all necessary steps to pursue the GEICO economic damage Claims and the Emotional Damages Claims, and shall reasonably cooperate with each other in the coordination of such claims in a single legal action.. The Athridges shall pay to the Rivases immediately upon receiving any funds 40% of the Gross Proceeds of any recovery resulting from this assignment of the GEICO economic damage Claims, and the Rivases shall have a lien on any such recovery for this purpose.

8. The Athridges and the Rivases shall cooperate with the other Party in their pursuit of the GEICO economic damage Claims and the Emotional Damages Claims. If it becomes necessary to file suit to pursue the GEICO economic damage Claims and the Emotional Damages Claims, the Parties shall file such suit jointly as co-plaintiffs, and the attorneys for the Athridges shall be lead counsel. The Athridges shall have primary responsibility, after consultation with the Rivases, for major decisions in connection with the GEICO economic damage Claims and the Emotional Damages Claims, including but not limited to any presentation of the GEICO economic damage Claims and the Emotional Damages Claims to GEICO or its representative, drafting any complaint, selection of any expert witnesses, preparing the pretrial statement, witness list and exhibit list, trial of the case, taking an appeal, and settlement of the claims. The Athridges shall have the final say on all decisions relating to the GEICO economic damage Claims, provided that any settlement of the GEICO economic damage Claims in an amount less than $4.0 million must be approved by the Rivases.

9. As used in this Agreement, "Gross proceeds" shall mean all amounts recovered as a result of the Grimaldi Claims, GEICO Claims and/or the Emotional Damages Claims, including but not limited to compensatory damages, exemplary or punitive damages and attorneys' fees (but not including any reimbursement of litigation expenses owed by one side to the other in the ordinary course of the litigation).

10. This Section applies only to the extent any court of competent jurisdiction shall declare the assignment set forth in Section 8 to be invalid, in whole or part. In such event, the Rivases shall pay to the Athridges immediately upon receiving any funds 60% of the Gross Proceeds of any recovery resulting from all or part of the GEICO economic damage Claims as to which the assignment set forth in Section 8 has been declared to be invalid, and the Athridges shall have a lien on any such recovery by the Rivases for this purpose. Also, the Rivases shall take the following steps pursuant to D.C. Superior Court Rule of Civil Procedure 17 or its equivalent:

  a. Ratify the commencement of suit and all steps taken by the Athridges in the prosecution of the GEICO economic damage Claims by the Athridges.

  b. Inform the Court that by this Agreement, the Athridges are the real parties in interest with respect to 60% of the Gross Proceeds of any recovery resulting from the GEICO economic damage Claims.

  c. Agree to be bound by the results of the litigation.

4

Further, the Rivases agree to join, to the extent necessary and to the extent permitted by the civil rules, the Athridges as co-plaintiffs of the GEICO economic damage Claims, and the Parties agree that the lawsuit will continue to be prosecuted in accordance with Section 10.

11.    The Parties shall each bear their own fees and expenses, including attorney's and expert's fees, in connection with the Grimaldi, GEICO economic damage and Emotional Damages Claims. Each party's obligation to pay attorney fees shall be limited to that portion of the gross recovery on any of the claims due to that party. If the same expert is used in connection with the Grimaldi Claims and the GEICO economic damages and the Emotional Damages Claims, the Parties will split the fees and expenses of such expert in proportion to the amount of time the expert spends on each of the Claims.

12.    Without affecting any amounts recovered by the Rivases or the Athridges, and without affecting the attorney's fees set forth in Section 13 above, the attorneys for the Parties shall adjust the combined attorney's fees between themselves in favor of the attorneys in charge of the Grimaldi Claims or the GEICO claims as follows.

a.    The attorneys handling the Grimaldi Claims or the GEICO Claims will receive two-thirds of any fees earned as a result of the Grimaldi Claims or the GEICO Claims, as the case may be, and the other attorneys will receive one-third of any such fees, if a pretrial conference is held in the lawsuit filed in pursuit of such Claims.

b.    The attorneys handling the Grimaldi Claims or the GEICO Claims will receive three-quarters of any fees earned as a result of the Grimaldi Claims or the GEICO Claims, as the case may be, and the other attorneys will receive one-fourth of any such fees, if trial commences and opening statements are begun in the lawsuit filed in pursuit of such Claims.

13.    Promptly after the effective date of the Agreement, the Parties shall take the following steps:

(a)    The Parties shall jointly move in the Court of Appeals to dismiss the pending Appeals, with the Athridges and Rivases each bearing their own costs;

(b)    At the request of the Rivases, the Athridges or their attorneys shall notify the Lender or potential Lender that the Athridges will provide the Releases as set forth in Section 5.

14.
15.
16.    The Athridges covenant that neither they nor their representatives, successors or assigns shall execute on the assets of the Rivases or their representatives,

5

successors or assigns in an effort to satisfy the Judgment and the Athridges further covenant that they shall not otherwise sue the Rivases to enforce the money damages set forth in the Judgment. Upon the payment of the Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000) set forth in Section 2, and the settlement of, or entry of final judgment and completion of all appeals (or lapse of time to take appeals) in, the Grimaldi Claims and the GEICO Claims, the Athridges shall file a satisfaction of the Judgment with the District Court.

17.    Except as expressly stated herein, this Agreement does not affect or waive in any way the Rivases' or the Athridges' rights against any third person, including but not limited to Aetna Casualty and Surety Co., Inc.

18.    This Agreement may not be assigned except by operation of law or with the prior written consent of the non-assigning Parties, which consent may be withheld in the non-assigning Parties' discretion.

19.    This Agreement constitutes the full, entire and complete agreement between the Parties hereto with respect to the subject matter hereof. The recitals and terms of this Agreement are contractual and not mere recitals. No modification or waiver of any of the terms of this Agreement shall be valid unless made in writing and signed by the Parties.

20.    Each Party acknowledges and agrees that he/she has been represented by legal counsel in the negotiation and execution of this Agreement. The Parties hereby represent that they fully understand each term of this Agreement and that they agree to be bound thereby and that they are signing this Agreement knowingly and voluntarily, without coercion or duress.

21.    If for any reason a court of competent jurisdiction finds any provision of the Agreement invalid or unenforceable, that provision of the Agreement shall be enforced to the maximum extent permissible and the other provisions of the Agreement shall remain in full force and effect.

22.    The failure by the Parties to enforce any provision of the Agreement shall not constitute a waiver of future enforcement of that or any other provision.

23.    All notices required or permitted under the Agreement shall be in writing and delivered by courier, overnight delivery service, or by certified mail, and in each instance shall be deemed given upon receipt or rejection. All notices shall be sent to the addresses set forth below or to such other address as may be specified by any Party to the other in accordance with this Section. All notices shall be sent as follows:

To the Athridges:

Michael H. Selter
Manelli Denison & Selter PLLC
2000 M Street, NW, #700

6

Washington, DC 20036
Tel: 202-261-1026
Fax: 202-887-0336

To the Rivases:

Patrick A. Malone
Stein, Mitchell & Mezines
1100 Connecticut Ave.
Suite 1100
Washington, DC 20036
Tel: 202-737-7777
Fax: 202-296-8312

Each Party may change its address for notices under the Agreement by giving written notice to the other Parties by the means specified in this Section.

24.    This Agreement shall be interpreted and enforced in accordance with the laws of the District of Columbia, without reference to its conflict of laws provisions.

25.    The Parties agree to cooperate in the execution of whatever additional documents may be necessary to effectuate the terms and promises of this Agreement.

26.    This Agreement may be signed in counterparts, with each counterpart constituting an original.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound thereby, have affixed their signatures to this Settlement Agreement effective as of the date first above written.

_____
Francisco Rivas

_____
Hilda Rivas

_____
Thomas P. Athridge, Jr.

_____
Mary T. Athridge

_____
Thomas P. Athridge

APPROVED WITH RESPECT TO
SECTIONS 13 and 14

_____
Patrick Malone
Stein, Mitchell & Mezines

_____
Michael H. Selter
Manelli Denison & Selter PLLC

_____
Erik S. Jaffe
Erik S. Jaffe, P.C.

8

## ASSIGNMENT

Francisco and Hilda Rivas, residing at 3739 Cumberland Street NW, Washington, DC 20016 (the "Rivases").hereby assign to Thomas P. Athridge Jr., residing at 6003 Ramsgate Road, Bethesda, MD 20816, and Thomas P. Athridge, residing at 6003 Ramsgate Road, Bethesda, MD 20816 (the "Athridges") any and all of their choses of action for economic damages that they may possess against the Government Employees Insurance Co., its parent company Berkshire Hathaway, Inc., and any subsidiary and affiliated companies, such as GEICO General Insurance Company, GEICO Casualty Company, or GEICO Indemnity Company (collectively "GEICO"), including but not limited to rights, credits, claims, causes of action, or rights of action, in contract or tort, for breach of the covenant of good faith and fair dealing or for breach of fiduciary duty or for omissions or for negligence or for intentional misconduct in connection with GEICO's obligation to investigate the liability of or to indemnify the Rivases for the injuries and expenses suffered by the Athridges as a result of the Accident or in connection with GEICO's undertaking to defend the Rivases against any claim of liability for such personal injuries or expenses, reserving only any claim the Rivases may have against GEICO for damages for infliction of emotional or mental distress "Emotional Damages Claims"). The choses of action against GEICO assigned by the Rivases to the Athridges shall be called the "GEICO economic damage Claims."

IN WITNESS WHEREOF, the Rivases, intending to be legally bound thereby, have affixed their signatures to this Settlement Agreement effective as of this __ day of August, 2007.

_____
Francisco Rivas


_____
Hilda Rivas

Exhibit 3

## **Tolling Agreement**

Any statutes of limitations, statutes of repose or similar limitation periods, and any other defenses relating to the passage of time, including waiver, estoppel, laches, or any contractual limitation period, that Government Employees Insurance Company ("GEICO") on the one hand and Francisco Rivas or Hilda Rivas on the other hand (collectively the "Parties") may have against each other in connection with the claim for insurance coverage under the GEICO policy number 65485241 that resulted from the car accident on July 29, 1987 shall be tolled from November 21, 2006 until this tolling agreement terminates.

The Parties agree that they will not initiate any lawsuit or other form of litigation regarding or relating to the claim referenced above until thirty (30) days after any of the Parties notifies the other Parties in writing that they wish to terminate this tolling agreement.  The date of such notice shall constitute the Termination Date.

No pre-judgment, pre-determination or any other interest, which may otherwise be allowable by law, will accrue from the effective date of this tolling agreement through and including the Termination Date.

Except as expressly stated herein, the parties reserve and do not waive any of the rights they may have under the GEICO policy and applicable law.


_____    Date: 1-24-07
Patrick Malone

*Counsel For Francisco Rivas And Hilda Rivas*


_____    Date: 1/31/07
Walter Andrews

*Counsel For GEICO*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
-----------------------------------------------------------X
GOVERNMENT EMPLOYEES                      :
INSURANCE COMPANY,                        :
                                          :
          Plaintiff,                      :
                                          :
        - against -                       :        No. 1:07-CV-01740-JR
                                          :
FRANCISCO RIVAS                           :
HILDA RIVAS,                              :
                                          :
          Defendants.                     :
-----------------------------------------------------------X
```

## <u>ORDER</u>

Upon consideration of the parties' Memoranda of Points and Authorities regarding

Defendants' Motion to Dismiss or to Stay, it is hereby

ORDERED that Defendants' motion is denied.


Date: _____ _____, 2008          _____

                                                              U.S.D.J.